# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: | ) Case No. 21-00571 |
| | ) |
| **CYCLE FORCE GROUP, LLC** | ) Chapter 11 |
| | ) |
| Debtor and Debtor in Possession. | ) Hon. |
| | ) |
| 2105 SE 5th St. | ) **DEBTOR'S APPLICATION TO** |
| Ames, IA  50010 | ) **EMPLOY CR3 PARTNERS AS ITS** |
| | ) **FINANCIAL ADVISOR** |
| EIN:  26-2671865 | ) |
| | ) No Hearing Set |
| _____ | ) |

Cycle Force Group, L.L.C. (the "Debtor or "CFG"), Debtor and Debtor in Possession in this Chapter 11 case herein, by and through its Proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq. and Krystal R. Mikkilineni, Esq.,  of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., respectfully files this Application to Employ CR3 Partners as its Financial Advisor (the "Application"), pursuant to Bankruptcy Code section 327(a), and would show this Honorable Court as follows:

1.    Debtor herein filed its voluntary petition under Chapter 11 of the Bankruptcy Code (Docket No. 1) on April 22, 2021 (the "Petition Date"), and is duly acting as a Debtor in Possession pursuant to Bankruptcy Code sections 1107 and 1108.

2.    The Debtor is an Iowa corporation engaged in the business of importing bicycles, parts, and accessories.

3.    Debtor wishes to retain and employ CR3 Partners, LLC ("CR3"), as its Financial Advisor in this bankruptcy case, pursuant to Bankruptcy Code section 327(a), at the expense of the estate, effective as of the Petition Date.

4.    It is anticipated that Jeffrey Hyland ("Hyland" and Carmen Barrett ("Barrett") will

– 1 –

be the main contacts and will primarily provide financial advice to the Debtor.  They will be

assisted by Tom O'Donoghue ("O'Donoghue"), Partner at CR3.  CR3 Partners will render

services to the Debtor under the terms as set forth in the Engagement Agreement attached hereto

as Exhibit "A."  Hyland, Barrett, and O'Donoghue understand that their compensation is subject

to approval of this Court and intend to apply in conformity with Bankruptcy Code sections 330

and 331 for compensation and reimbursement for fees incurred and costs advanced.

### Qualifications of Professionals

5.      CR3 possesses the requisite experience and expertise to provide financial advisory

and consulting to the Debtor in its Chapter 11 case.  Hyland, Barrett, and O'Donoghue are familiar

with the Debtor's business, financial affairs, and the circumstances surrounding the Debtor's

Chapter 11 filing.  As a provider of financial advice, CR3's services also include services to assist

in preparing financially for the bankruptcy filing.  In addition, Hyland, Barrett, and O'Donoghue

have extensive experience with respect to business assessment, due-diligence support, performance

improvement, turnaround management, interim management, bankruptcy advisory, and asset

monetization.

6.      Hyland will coordinate representation of the Debtor as Financial Advisor.  Hyland

has several decades of financial advising experience, specializing in business analysis,

turnaround techniques, profitability management, restructuring, strategy, sales, operations,

finance and mergers and acquisitions.

7.      The Debtor believes CR3 is well positioned to provide the Debtor with the type of

advice required to assist the Debtor as debtor in possession, and the Debtor's general

reorganization counsel, in a manner that will be cost effective and efficient for the Debtor's

estate.

**Services to be Rendered**

8.      The employment of CR3 is necessary to assist the Debtor and the Debtor's general

reorganization counsel in implementation of the reorganization of the Debtor's business and

financial affairs through either a true reorganization or other disposition of its assets.  Because

Hyland and Barrett are familiar with the Debtor's capital and organizational structure, they can

provide these services in a more efficient and effective manner than could be provided solely by

the Debtor's general reorganization counsel.  Subject to further order of this Court, the

professional services CR3 may render to the Debtor as its Financial Advisor, as Debtor may

request from time to time, include:

      a.  Review and analyze CFG's current financial, operational, and strategic position, and, if available, make recommendations to improve financial results;

      b.  Evaluate and make recommendations to CFG's plan upon emergence from bankruptcy protection, including CFG's business plan with its forecasted income statements, balance sheets, cash flows, and underlying assumptions;

      c.  In conjunction with counsel, develop strategies and analyses, such as a liquidation analysis, to negotiate with CFG's creditors and participate in those discussions, as directed by CFG and counsel;

      d.  Assist CFG and counsel in preparing for a potential bankruptcy filing, including tasks such as first day motions, critical vendor programs, and employee compensation programs;

      e.  Review CFG's 13-week cash flow forecast, including working capital requirements, and advise on suggested revisions;

      f.  If determined appropriate, work with CFG's personnel to secure debtor-in-possession financing;

      g.  Provide oversight and support to CFG's other professionals in connection with the execution of CFG's business plan, any sales process, and the overall administration of activities within the Chapter 11 proceeding;

      h.  Provide oversight and assistance in connection with the preparation of financial-related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports, and any other disclosures required by CFG in connection with the bankruptcy process;

      i.  Provide oversight and assistance in preparing financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of

various asset and liability accounts, and analysis of proposed transactions;

j.  Participate in meetings and assist any official committee(s) appointed in the case, the U.S. Trustee, other parties in interest, including contractual counterparties, and professionals hired by the same;

k.  Evaluate, make recommendations, and implement strategic alternatives as needed to maximize the value of CFG's assets;

l.  Provide oversight and assistance in connection with the preparation of creditor claims analyses;

m.  Provide oversight and assistance in evaluating and analyzing avoidance actions, including fraudulent conveyances and preferential transfers, and in the defense and prosecution of other litigation, if necessary;

n.  Analyze the impact of the bankruptcy filing on strategic alliances and long-term supply agreements;

o.  Provide testimony in litigation/bankruptcy matters and attend court hearings, as requested by CFG and counsel;

p.  Assist and advise CFG and counsel related to any court motions filed by other parties-in-interest;

q.  Evaluate CFG's cash flow generation capabilities for valuation maximization opportunities;

r.  Provide oversight and assistance in communications and negotiations with constituents, including investors and other critical parties to the successful restructuring;

s.  Assist in developing a plan of reorganization or liquidation and preparing information and analysis necessary for the plan's chapter 11 confirmation;

t.  If determined appropriate, work with CFG personnel to secure exit financing to support the plan; and

u.  Perform other tasks as directed by CFG and agreed to by CR3, including those necessary to facilitate CFG's restructuring.

9.      Subject to the Court's approval of this Application, CR3 is willing to serve as the

Debtor's Financial Advisor and to perform the services described above and as explained in

further detail in the attached Engagement Agreement.  The Debtor does not intend, nor does the

Debtor believe, the services proposed to be rendered by the Financial Advisor will be duplicative

of the services to be rendered by the Debtor's general reorganization counsel.

**Professional Compensation**

10.      The Debtor's retention of CR3 is evidenced by the attached Engagement

Agreement dated January 21, 2021, and incorporated by reference herein, which states CR3 will

provide restructuring/financial advisory services to the Debtor.

11.    Hyland's services, as Partner at CR3, will be charged at the rate of $725 per hour.
O'Donoghue's services, as Partner at CR3, will be charged at the rate of $725 per hour. Barrett's
services, as Director at CR3, will be charged at the rate of $575 per hour. They may be assisted
by other CR3 professionals who have previous experience with companies in similar situations.
Partners at CR3 charge $620 to $850 per hour. Senior Directors and Directors charge $495 to
$765 per hour. Senior associates and managers at CR3 charge $350 to $495 per hour. Rates are
revised annually, around the first of the year. The Engagement Agreement further provides for
reimbursement to CR3 for reasonable out-of-pocket expenses, typically including postage, printing,
telephone, copying, overnight delivery, research, travel, and similar costs.

12.    CR3 has received a pre-petition retainer of $75,000 to guaranty payment of its
services and costs in connection with Debtor's Chapter 11 case as Financial Advisor. The
retainer received by CR3 will be placed in a Client Trust Account, and will be applied to fees and
costs incurred, after application to and upon approval of the Bankruptcy Court.

13.    At the conclusion of Debtor's Chapter 11 case, CR3 will file an appropriate final
application seeking allowance of all fees and costs, regardless of whether interim compensation
has been paid. Upon allowance of such fees and costs, the Debtor will pay the difference
between the amount finally allowed and any interim compensation paid, all in accordance with
applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the orders, local
practice, and custom of this Court.

14.    CR3 understands that the proposed compensation agreement is subject to
Bankruptcy Code section 328 which authorizes this Court to allow compensation different from
what is here provided, if the fee arrangement appears, in retrospect, to have been improvident in
light of developments unanticipated at the outset. CR3 has agreed to accept as compensation

such amounts as may be allowed by the Court on the basis of the professional time spent, the

rates charged for such services, the necessity of such services to the administration of Debtor's

estate, the reasonableness of the time within which the services were performed in relation to the

results achieved, and the complexity, importance and nature of the problems, issues or tasks

involved or addressed in connection with the representation.  CR3 understands and agrees that if

aggregate interim payments exceed the amount which is ultimately allowed, he will be required

to, and will promptly repay the difference to the estate.

15.     Neither CR3, nor to the best of its knowledge and information, any

shareholder/member, counsel, associate or other representative thereof, has been promised any

compensation for professional services rendered or to be rendered in any capacity in connection

with the Debtor's Chapter 11 case, other than as permitted by the Bankruptcy Code.

16.     CR3 has not agreed to share compensation received in connection with the

Debtor's Chapter 11 case with any other person, except as permitted by section 504(b) of the

Bankruptcy Code and Bankruptcy Rule 2016 in respect of the sharing of compensation among

partners/members of CR3.

**Disinterestedness of Professionals**

17.     CR3 does not represent and generally has not represented any individual or entity,

other than the Debtor, in matters related to the Debtor and its Chapter 11 case.

18.     CR3 has undertaken a detailed search to determine, and to disclose, whether it

represents or has represented any significant creditors or insiders of the Debtor.  In connection

with its proposed retention by the Debtor in this case, CR3 conducted a search of its client

database to determine whether it has any current or past relationships with any of the Debtor's

creditors or insiders.  Except as set forth herein, CR3 does not have any connection with the

Debtor, its affiliates, its creditors or insiders, or any other party in interest, its respective attorneys and accountants, the United States Trustee, or any person employed by the United States Trustee.

Except as otherwise set forth herein, and based on the database search described above, CR3 is not aware of any past or current representation of any other individual or entity which is a creditor or insider of the Debtor.

19.    To the best of its knowledge and information, CR3 does not have any interest "adverse" to the Debtor or its estate as that term is used in Bankruptcy Code section 327(a).

20.    To the best of its knowledge and information, CR3 is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14).

21.    CR3 will conduct a continuing inquiry to ascertain whether there exists any situation that would affect its status as a person having no interest adverse to Debtor or its estate or that would affect CR3's status as a disinterested person.  CR3 will file supplemental disclosures or affidavits with this Court at such time as any such additional disclosures are appropriate or required.

22.    The Debtor requests that this Court enter an order modifying the time limitations of Bankruptcy Code section 331 and permit the submission of CR3's interim fee applications on a 60-day basis rather than on the 120-day basis prescribed by that section.

WHEREFORE, the Debtor prays that it be authorized, pursuant to Bankruptcy Code section 327(a) and Bankruptcy Rule 2014(a), and the terms of the Engagement Agreement, to employ CR3, as its Financial Advisor, effective as of the Petition Date, with the compensation to be at the expense of the estate in such amounts as the Court may hereafter allow in accordance with the law; and that CR3 be permitted to submit interim fee applications every 60 days; and for such other and further relief as the Court deems just and equitable under the circumstances.

Dated:  April 22, 2021

_/s/_    _Krystal R. Mikkilineni_
Jeffrey D. Goetz, Esq., AT0002832
Krystal R. Mikkilineni, Esq. AT0011814
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com


Proposed General Reorganization Counsel
for Cycle Force Group, LLC
Debtor and Debtor in Possession



I declare under penalty of perjury under the laws of the United States and the laws of the

States of Iowa that I have reviewed the attached Debtor's Application to employ CR3 as its

financial advisor, and to the best of my knowledge and information, I believe the statements

therein to be true and correct.

Dated:  April 22, 2021


_/s/_    _Jeff Hyland_
JEFF HYLAND, PARTNER



CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through
CM/ECF as listed on CM/ECF's notice of electronic filing.

_/s/_    _Barbara Warner_



Exhibit A

January 21, 2021

**BY EMAIL**

Mr. Nyle Nims
CEO
Cycle Force Group
2105 SE 5th Street
Ames, Iowa 50010

Dear Nyle:

Thank you for selecting CR3 Partners as the exclusive restructuring/financial advisor to Cycle Force Group ("the Company").

The attached Engagement Agreement and its Exhibits detail the terms and conditions of our agreement. We appreciate the opportunity to present this agreement to you and look forward to working together.

If the Engagement Agreement is acceptable please sign and return at your earliest convenience. If you have any questions or comments, please contact Tom O'Donoghue or Jeff Hyland.

Sincerely,

Jeffrey A. Hyland

CR3 Partners, LLC

**Engagement Agreement**

## CR3 PARTNERS, LLC
### and
### CYCLE FORCE GROUP

The parties to this Engagement Agreement (the "Agreement") are CR3 Partners, LLC ("CR3"), on the one hand, and Cycle Force Group (together with any successor, the "Company"), on the other hand. This Agreement confirms the Company's retention of CR3 as its exclusive restructuring/financial advisor.

1. **CR3's Services.** From the date hereof until this Agreement is terminated pursuant to paragraph 8 (the "Term"), CR3 will provide services to the Company as described in the attached Exhibit A ("Work Authorization"). The Work Authorization may be amended from time to time with the written approval of CR3 and Company. The services CR3 provides pursuant to this Agreement will be limited to those services that the Company may request within the scope of the Work Authorization. Any additional services that CR3 may agree to provide to the Company will be the subject of a separate agreement between CR3 and the Company. CR3 may without the Company's consent provide advisory services for other persons or entities whose interests may be adverse to the Company's or its affiliates in matters not substantially related to our engagement by the Company.

2. **Compensation**. CR3 will be compensated as described in the attached Exhibit A ("Professionals and Rates").

   Company shall deliver to CR3 a retainer of $75,000 which CR3 will hold until the completion or termination of the engagement. This retainer amount will continue through CR3's representation of the Company. If either the Company or CR3 notifies the other in writing of its decision to terminate this representation, the balance of the retainer/case advance may be applied to all accrued but unpaid fees and expenses for the period before the effective date of termination, with the same type of accounting to the client and judicial review as provided for herein. Upon termination, the balance of the retainer/case advance, if any, will be promptly returned to you, the debtors-in-possession, or the trustee, as appropriate. The Company hereby grants a security interest in the retainer to CR3 to secure payment due to CR3 of all amounts due hereunder. The Company expressly authorizes CR3 to pay itself amounts from the retainer. The Company acknowledges and agrees that CR3's security interest in the retainer is perfected by virtue of possession of such funds. The parties agree that the retainer/case advance is deemed a trust fund, to be deposited in our unsegregated trust account, and you will not receive the benefit of interest earned in that account.

3. **Expense Reimbursement**. Consistent with the timing of payment for professional fees, the Company shall reimburse CR3 for all reasonable travel-related expenses incurred in connection with this engagement. All expenses which we incur in the representation CFG's interests will be charged against the retainer as well. These would include, but would not be limited to, any postage or copying charges for any large or out-of-the-ordinary mailings, delivery charges when hand deliveries are necessary, and/or Federal Express charges when overnight delivery is necessary in order to expedite the handling of the case, long-distance telephone charges, mileage for any out-of-town travel, and any and all necessary and related expenses. CR3 shall provide summaries of expenses for which reimbursement is requested.

4.    **Payments Generally**.  No amount payable to any third party, by the Company or any other person or entity in connection with the subject matter of this engagement shall reduce or otherwise affect any amount payable hereunder.  CR3 will submit invoices for fees and expenses to the Company, and the Company will pay such invoices promptly following receipt.

5.    **Indemnification and Related Matters**.  The Company and CR3 agree to the provisions of the attached Exhibit B, which relates to indemnification and related matters.

6.    **Information and Reliance**.  During the Term, the Company will furnish CR3 with such information regarding the business, financial condition and prospects of the Company as CR3 reasonably requests, all of which will be accurate and complete in all material respects at the time furnished, other than projections, which will be prepared in good faith and based upon assumptions which, in light of the circumstances under which they are made, are reasonable.  During the Term, the Company will promptly notify CR3 if it learns of any material misstatement in, or material omission from, any information previously delivered to CR3.  On an ongoing basis during the Term, the Company will inform CR3 of any material developments or matters affecting the business, financial condition and prospects of the Company that occur. In performing its services hereunder, CR3 shall be entitled to rely without investigation upon the accuracy of all information supplied to it by or on behalf of the Company or its advisors, and CR3 shall not in any respect be responsible for independently verifying the accuracy or completeness of any of such information (including by conducting any independent due diligence review).

The Company acknowledges that no reliance shall be placed on draft reports, conclusions or advice, whether oral or written, issued by CR3 as the same may be subject to further work, revision and other factors which may result in such drafts being substantially different from any final report or advice issued.

The Company shall retain exclusive rights to ownership of all work output hereunder.  Work output includes reports issued pursuant to any Work Authorization, but excludes, among other things, all working papers of CR3 and any correspondence, memoranda, calculations, notes, etc. that CR3 may have used in the development of the reports above or such working papers or in the performance of any work covered by a Work Authorization.

Upon termination of the engagement, papers and property that you have provided to CR3 will, at your request, be returned to you.  Copies of papers CR3 has created for you, which you may need but no longer have, will be made available to you.  CR3 reserves the right to destroy any items described in this paragraph that CR3 retains.

7.    **Governing Law; Venue; Waiver of Jury Trial**.  This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed and construed in accordance with the laws of the State of Texas (without giving regard to the conflicts of law provisions thereof).  No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of Texas located in the City and County of Dallas or the United States District Court for the Southern District of Iowa, and each of the Company and CR3 hereby submits on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) to the jurisdiction of such courts.  The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) any and all right to argue that this choice of forum provision

is or has become unreasonable. The Company hereby waives on behalf of itself and its successors and assigns (and, to the extent permitted by applicable law, on behalf of its securityholders and creditors) all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of this Agreement or the engagement of CR3 pursuant to, or the performance by CR3 of the services contemplated by, this Agreement.

8.   **Termination**.  This Agreement may be terminated at any time by CR3 or the Company by giving written notice to the other party, which termination will be effective upon the non-terminating party's receipt of such notice.   Upon termination the Company shall pay CR3 all weekly fees and expenses due through the termination date, and any Success Fee which may have been earned.  The provisions of this Section and of Sections 2, 3, 5, 6, 7, 9, 10 and 13 will survive any expiration or termination of this engagement.

9.   **Personnel.** Each party hereto agrees that it will not employ personnel or representatives of the other party hereto during the period of work provided for hereunder and for a period of one (1) year after the termination of this Agreement or completion of the project or work contemplated hereunder without the written agreement of the other party.  In cases where written permission is granted by CR3, a recruiting fee will be billed for an amount mutually agreed upon and not less than 33% of first year expected annual cash compensation including incentive payments.

10.   **Public Announcements**.  Notwithstanding the confidentiality provisions of Section 13, the Company acknowledges and agrees that CR3 may publish an announcement or "tombstone" following the completion of its engagement, either in newspapers, journals, magazines, or other publications or by direct mailings to third parties, whereby CR3 informs the public or such parties of the fact of its engagement by the Company, the general nature of the services provided by CR3, the time period of such engagement, the general nature of the business or industry in which the Company is engaged, the relative size in financial terms of the Company, and similar information that generally describes the nature and extent of CR3's engagement by the Company.

11.   **Relationship of Parties; No Fiduciary Obligation**.  The Company and CR3 acknowledge and agree that CR3 has been retained under this Agreement as an independent contractor to the Company, that their respective rights and obligations are contractual in nature and that nothing herein is intended to confer any rights or remedies upon any person other than the Company (including the management, board of directors (or similar governing body) and securityholders of the Company) as against CR3.  In addition, it is understood and agreed that this Agreement and CR3's engagement do not create a fiduciary relationship between CR3 and any person (including the Company, its management, its board of directors (or similar governing body) and its securityholders), and the Company disclaims any intention to impose any fiduciary or other non-contractual obligations on CR3.  Any advice or opinion, whether written or oral, provided by CR3 is intended solely for the benefit and use of the members of the board of directors (or similar governing body) of the Company (in their capacities as such) in considering the matters to which this Agreement relates.  CR3 will not be responsible for and will not be deemed to have provided the Company with any tax, accounting, actuarial, legal or other specialist advice.  CR3 will not, as part of any aspect of this engagement, undertake any independent valuation or appraisal of, or provide any formal opinion regarding, any assets, liabilities or the solvency of the Company or any other entity.  This Agreement does not constitute a representation, warranty or agreement that a specific outcome or outcomes will be obtained.

12.    **Miscellaneous**.  This Agreement may not be assigned (other than by operation of law) by either party without the prior written consent of the other.  The provisions hereof shall inure to the benefit of and be binding upon the successors, assigns, heirs and personal representatives of the Company, CR3 and any person entitled to indemnity under the terms of Exhibit B.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction. This Agreement, including the Exhibits hereto (which are hereby incorporated by reference in this Agreement), incorporates the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.  This Agreement may be executed in any number of counterparts, each of which may contain one or more signatures and each of which shall be deemed an original, but all of which shall constitute one and the same instrument.  Copies of this Agreement with facsimile or electronic signatures and copies of this Agreement (or pages hereof) that have been transmitted electronically (e.g., by fax or .pdf) shall be deemed to be original signed versions of this Agreement.

13.    **Confidentiality**.  CR3 shall use all confidential information provided to it by or on behalf of the Company in connection with CR3's engagement hereunder (the "Confidential Information") solely for the purpose of providing the services which are the subject of this Agreement, and, except as contemplated in connection with such services and CR3's engagement hereunder, shall keep all Confidential Information confidential; provided, however, that nothing herein shall prevent CR3 or any of its Agents (as defined below) from disclosing any Confidential Information (i) pursuant to the order of any court or administrative agency or in any pending legal or administrative proceeding, or otherwise as required by applicable law, rule or regulation or legal or administrative process, (ii) upon the request or demand of any regulatory authority having jurisdiction over CR3 or any of its Agents, (iii) to CR3's or its affiliates' officers, directors, employees, legal counsel, independent auditors and other experts or agents who need to know such information and are informed of the confidential nature of such information, (iv) to any of its affiliates (any of the persons described in clauses (iii) or (iv) to whom Confidential Information is disclosed, "Agents") or (v) for purposes of establishing a "due diligence" defense. The term Confidential Information does not include information that (A) is or becomes publicly available other than by reason of disclosure by CR3 in violation of this Section 13; (B) was in the possession of CR3 at the time of its disclosure by or on behalf of the Company; (C) is acquired from a third party that is not, to CR3's knowledge, prohibited from disclosing such information by an obligation of confidentiality to the Company; or (D) is developed without reference to the Confidential Information. This Section 13 and the obligations hereunder shall survive the expiration or termination of this engagement for a period of one year and shall then terminate.

*[Signature page follows.]*

Agreed to this 22ND day of January, 2021 by:

**CYCLE FORCE GROUP:**

By: _____
    Name:
    Title:

**CR3 PARTNERS, LLC:**

By: _____
    Name: Jeffrey S. Hyland
    Title: Partner

**EXHIBIT A**
to
**ENGAGEMENT AGREEMENT**

**CR3 PARTNERS, LLC**
and
**CYCLE FORCE GROUP**

**WORK AUTHORIZATION**

## Scope of Work

1. **Bankruptcy Preparation Services** – We will provide the Company with the following services to prepare for its likely bankruptcy filing. Where possible, we will utilize the Company's personnel to limit our time and not duplicate activities.

   a. Review and analyze the Company's current financial, operational, and strategic position, and, if available, make recommendations to improve financial results.

   b. Evaluate and make recommendations to the Company's plan upon emergence from bankruptcy protection, including the Company's business plan with its forecasted income statements, balance sheets, cash flows, and underlying assumptions.

   c. In conjunction with counsel, develop strategies and analyses, such as a liquidation analysis, to negotiate with the Company's creditors and participate in those discussions, as directed by the Company and counsel.

   d. Assist the Company and counsel in preparing for a potential bankruptcy filing, including tasks such as first day motions, critical vendor programs, and employee compensation programs.

   e. Review the Company's 13-week cash flow forecast, including working capital requirements, and advise on suggested revisions.

   f. If determined appropriate, work with Company personnel to secure debtor-in-financing ("DIP") financing.

   g. Perform other tasks as directed by the Company and agreed to by CR3.

2. **Bankruptcy services** – If a bankruptcy petition is filed by or against the Company, we will perform the following additional services. Where possible, we will utilize the Company's personnel to limit our time and not duplicate activities.

a. Provide oversight and support to the Company's other professionals in connection with the execution of the Company's business plan, any sales process, and the overall administration of activities within the chapter 11 proceeding.

b. Provide oversight and assistance in connection with the preparation of financial-related disclosures required by the bankruptcy court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports, and any other disclosures required by the Company in connection with the bankruptcy process.

c. Provide oversight and assistance in preparing financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursements analysis of various asset and liability accounts, and analysis of proposed transactions.

d. Participate in meetings and assist any official committee(s) appointed in the case, the U.S. Trustee, other parties in interest, including contractual counterparties, and professionals hired by the same.

e. Evaluate, make recommendations, and implement strategic alternatives as needed to maximize the value of the Company's assets.

f. Provide oversight and assistance in connection with the preparation of creditor claims analyses.

g. Provide oversight and assistance in evaluating and analyzing avoidance actions, including fraudulent conveyances and preferential transfers, and in the defense and prosecution of other litigation, if necessary.

h. Analyze the impact of the bankruptcy filing on strategic alliances and long-term supply agreements.

i. Provide testimony in litigation/bankruptcy matters and attend court hearings, as requested by the Company and counsel.

j. Assist and advise the Company and counsel related to any court motions filed by other parties-in-interest.

k. Evaluate the Company's cash flow generation capabilities for valuation maximization opportunities.

l. Provide oversight and assistance in communications and negotiations with constituents, including investors and other critical parties to the successful restructuring.

m. Assist in developing a plan of reorganization or liquidation and preparing information and analysis necessary for the plan's chapter 11 confirmation.

n. If determined appropriate, work with Company personnel to secure exit financing to support the plan.

o. Perform other tasks as directed by the Company and agreed to by CR3, including those necessary to facilitate the Company's restructuring.

## Professionals and Rates

The following professionals will be primarily responsible for the successful completion of the engagement. However, during this engagement, we may call upon other CR3 professionals who have had previous experience with companies in similar situations, as needed. Our current hourly rates are as follows:

| | |
|---|---|
| Partner | $620 - $850 |
| Senior Directors and Directors | $495 - $765 |
| Senior Associates and Managers | $350 - $495 |

We base our fees on the actual hours charged at our standard hourly rates in effect when we provide the services. We generally revise our rates annually, around the first of the year. The parties agree that CR3 may, in its discretion, increase the scheduled hourly rates and costs of reimbursable expenses as necessary during the course of the engagement, subject to bankruptcy court approval. The Company shall also reimburse CR3 for reasonable out-of-pocket expenses incurred on your behalf.

Prior to the Company filing for any protection under the U.S. Bankruptcy Code, our engagement fees plus our incurred out-of-pocket expenses will be payable upon receipt of our weekly invoice, which shall reduce the retainer. Upon request from CR3, the Company will immediately replenish the retainer via a wire. Our weekly professional fees will be capped at $24,800 for Jeff Hyland or Tom O'Donoghue, $18,400 for a Director, and $15,840 for a Senior Associate.

If the Company seeks protection under the U.S. Bankruptcy Code, the Company will promptly apply to the Court to obtain approval of CR3's retention nunc pro tunc to the filing date. CR3 acknowledges that our retention and the terms of our retention are subject to Court approval. We will submit to the Bankruptcy Court fee applications for our fees and expenses. Our invoices will be subject to the applicable provisions of any interim compensation orders entered by the Court with jurisdiction, the U.S. Trustee, the Bankruptcy Code, and the Bankruptcy Rules. Billings are made on a monthly basis based on our regular hourly rates. All fees and expenses must be approved by the bankruptcy court based upon fee applications which we will file periodically. Those applications contain a complete description of all the services performed and the time spent performing the same. All items are itemized in the fee application. Once the retainer has been used, we would seek authority under the Bankruptcy Code for payment of additional retainers and/or fees as are necessary to fully compensate our firm for its services in the Chapter 11 case.

**EXHIBIT B**
to
**ENGAGEMENT AGREEMENT**

**CR3 PARTNERS, LLC**
and
**CYCLE FORCE GROUP**

## INDEMNIFICATION AND RELATED MATTERS

The Company agrees to indemnify and hold harmless each of CR3, its affiliates and their respective directors, officers, employees, agents, shareholders, controlling persons, partners, and members and each of their respective successors and assigns (each, an "Indemnified Person") against and from all losses, claims, damages, liabilities or expenses, joint or several, and all actions, claims, proceedings and investigations brought or threatened by or on behalf of any person (including Company Claims (as defined below)) arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Indemnification Claims"), and to promptly reimburse each Indemnified Person for all reasonable legal and other expenses as incurred by such Indemnified Person in connection with investigating, preparing to defend or defending any such Indemnification Claims (including expenses of CR3 personnel required to testify or otherwise assist in any litigation), whether or not such Indemnified Person is named as a party thereto; provided, however, that the Company shall not be liable for Indemnification Claims to the extent that such claims are finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct. The Company also agrees that (a) no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or the Company's securityholders or creditors arising out of, relating to or in connection with this Agreement or CR3's engagement hereunder (collectively, "Company Claims") except to the extent that such liability is finally determined (not subject to judicial review or appeal) to have resulted primarily from such Indemnified Person's gross negligence or willful misconduct, and (b) in no event will any Indemnified Person have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). To the extent permitted by applicable law, CR3's liability with respect to Company Claims shall be limited to the amount of any fees actually received by CR3 pursuant to this Agreement.   THE INDEMNIFICATION PROVISIONS PROVIDED FOR IN THIS AGREEMENT SHALL BE APPLICABLE WHETHER OR NOT THE LOSSES, COSTS, EXPENSES AND DAMAGES IN QUESTION AROSE SOLELY OR IN PART FROM THE ACTIVE, PASSIVE OR CONCURRENT NEGLIGENCE, OR OTHER FAULT OF INDEMNIFIED PARTIES (OTHER THAN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT), AND THE PARTIES ACKNOWLEDGE THAT THIS PARAGRAPH IS CONSPICUOUS.

In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the Company agrees to make contributions to any such Indemnification Claims paid or payable (or proposed to be paid) in such proportion as is appropriate to reflect the relative economic benefits received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to

this Agreement. The "relative economic benefits" received by the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, shall be deemed to be in the same proportion as is appropriate to reflect the relative economic benefits and the relative fault of the Company and its securityholders and creditors, on the one hand, and the Indemnified Persons, on the other hand, as well as other equitable considerations; provided, however, that, to the extent permitted by applicable law, the Company agrees to make contributions to any such Indemnification Claims paid or payable such that in the aggregate the Indemnified Persons will not be liable for more than the fees actually received by CR3 pursuant to this Agreement.

Promptly after receipt by an Indemnified Person under this Agreement of notice of the commencement of any action, such Indemnified Person shall, if a claim in respect thereof is to be made against the Company under these indemnification provisions, notify the Company in writing of the commencement thereof, but the omission so to notify the Company shall not relieve it from any liability which it may have to any Indemnified Person otherwise than under this Agreement unless the Company has been materially prejudiced by the failure to provide such notice. The Company shall promptly pay expenses reasonably incurred by any Indemnified Person in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Person is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under this Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise. Each Indemnified Person hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Person is not entitled to be indemnified therefor. If any such action, proceeding or investigation in which an Indemnified Person is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Person, provide such Indemnified Person with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Person, at no cost to such Indemnified Person; provided however, that if such counsel or counsel to the Indemnified Person shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Person and the Company such counsel is unable to represent both the Indemnified Person and the Company, then the Indemnified Person shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor. Nothing herein shall prevent an Indemnified Person from using separate counsel of its own choice at its own expense. The Company further agrees that, without the prior written consent of CR3 (not to be unreasonably withheld, conditioned or delayed), the Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened action, claim, proceeding or investigation with respect to which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such action, claim, proceeding or investigation) unless such settlement, compromise or judgment includes an unconditional release of all Indemnified Persons from all liability resulting from such action, claim, proceeding or investigation.

The foregoing rights shall be in addition to any other rights any Indemnified Person may have, and shall not limit any other rights that any Indemnified Person may have at law or otherwise. These indemnification provisions will (i) apply to CR3's engagement pursuant to this Agreement, (ii) any activities or actions of CR3 relating to such engagement occurring prior to the date of this Agreement, and any subsequent modification of or amendment of this Agreement, and (iii) shall survive any termination of the engagement or this Agreement.