**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Case No. 21-00571 |
| | ) | |
| **CYCLE FORCE GROUP, L.L.C.** | ) | Chapter 11 |
| | ) | |
| Debtor and Debtor in Possession. | ) | Hon. |
| | ) | |
| 2105 SE 5th St. | ) | ***FIRST DAY MOTION*** |
| Ames, IA  50010 | ) | **DEBTOR'S MOTION FOR ORDER** |
| | ) | **APPROVING ENGAGEMENT** |
| EIN:  26-2671865 | ) | **AGREEMENT BETWEEN THE** |
| | ) | **DEBTOR AND ITS CHIEF FINANCIAL** |
| | ) | **OFFICER** |
| | ) | [Bankruptcy Code sections. 327(b), 363 & |
| | ) | 365] |
| | ) | |
| _____ | ) | No Hearing Set. |

Cycle Force Group, LLC (the "Debtor" or "CFG"), the Debtor and Debtor in Possession herein, by and through its Proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq., and Krystal R. Mikkilineni, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., respectfully files the instant First Day Motion for Order pursuant to bankruptcy Code sections 327(b), 363 and 365 approving the Engagement Agreement between the Debtor and Ms. Mary Tanner, as its Chief Financial Officer ("CFO"), and would show this Honorable Court as follows:

1. On April 22, 2021 (the "Petition Date"), the Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code (Docket Item 1).  The Debtor is now duly acting as a Debtor in Possession pursuant to Bankruptcy Code sections 1107 and 1108.

2. Since July 2020, Mary Tanner has been engaged and acting as CFG's CFO. On January 8, 2021, Mary Tanner and CFG entered into a formal, written Engagement Agreement that provided for Mary Tanner's continued engagement as CFO.  Mary Tanner, as a corporate officer of CFG, has assisted Debtor's General Reorganization Counsel and Financial Advisors in preparing

CFG for the filing of the instant Chapter 11 reorganization case, in addition to the usual and ordinary duties and job responsibilities of a Chief Financial Officer.

3. The Engagement Agreement provides for Mary Tanner to be compensated on a time and expense basis, with Ms. Tanner's rate at $125.00 per hour. Travel will be billed at 50% of the hourly rate. The Debtor paid a $46,000.00 retainer to Ms. Tanner pre-petition. The Debtor will further be responsible for Mary Tanner's reasonable out-of-pocket expenses. A true and exact copy of CFG's Engagement Agreement with Mary Tanner is attached hereto as Exhibit "A" and is incorporated by reference herein.

4. Mary Tanner is uniquely qualified to assume the responsibility of and act as CFG's Chief Financial Officer. A true and exact copy of Mary Tanner's Curriculum Vitae is attached hereto as Exhibit "B", and incorporated by reference herein.

5. Based on the Debtor being a Debtor in Possession pursuant to Bankruptcy Code section 1108, and based on the terms, conditions and nature of the Engagement Agreement, the Debtor views and asserts that Mary Tanner's engagement as a corporate officer of the Debtor, and not an outside professional, is pursuant to its ordinary course of business under Bankruptcy Code section 363(c)(1).

6. Additionally, based on the terms, conditions and nature of the Engagement Agreement, the Debtor views and asserts that the engagement and employment of Mary Tanner would not come within the purview or requirements of Bankruptcy Code sections 327, 328, 330 or 331. To the extent the Court, creditors, or interested parties believe and assert that Mary Tanner is a professional subject Bankruptcy Code sections 327, 328, 330 and 331, the Debtor would assert that Bankruptcy Code section 327(b) would be applicable, in that the Debtor, as Debtor in Possession, is

authorized to operate the Debtor's business pursuant to Bankruptcy Code section 1108 and the Debtor as Debtor in Possession may retain Mary Tanner as such a professional.

7. Further, to the extent that the Engagement Agreement is deemed an executory contract subject to assumption or rejection, the Debtor hereby moves for assumption of said Engagement Agreement pursuant to Bankruptcy Code section 365(a). The Debtor asserts that the Engagement Agreement is not, and has not, been in default, so therefore there is no need to cure or provide adequate assurances as a condition to such assumption. As a part of this engagement, Mary Tanner agrees to provide a monthly accounting of her fees and expenses to the United States Trustee.

8. For the sake of complete and adequate disclosure, the Debtor would assert that the terms and conditions of employment, the retainer, and compensation paid and to be paid to Ms. Tanner, are reasonable and necessary under the circumstances. Additionally, the Debtor asserts that Ms. Tanner held no interest pre-petition, and holds no interest post-petition, that is adverse to the Debtor or the Bankruptcy Estate, and that she is a "disinterested person", as that term is defined under Bankruptcy Code section 101(14).

9. To the extent the "Jay Alix Protocols" are applicable in this jurisdiction, and applicable to this case and matter, the Debtor and Mary Tanner agree to the following disclosures and procedures:

a) Ms. Tanner has no connection, relationship or affiliation with secured creditors, any proposed post-petition lenders, significant unsecured lenders, equity holders, current or former officers and directors, prospective buyers, or investors;

b) Ms. Tanner has no involvement as a creditor, service provider or professional with any entity of the Debtor or of any affiliate that might have an alliance agreement, marketing agreement, joint venture, referral arrangement or similar agreement;

c) The Debtor's schedules and statements provide information regarding the size, membership and structure of the Debtor's Board of Directors, so as to enable the Office of the United States Trustee and other interested parties to determine that the Board of Directors is independent;

d) That as of the Petition Date, Ms. Tanner has no accrued and unpaid pre-petition compensation;

e) Ms. Tanner and the Debtor are not aware of the existence of any asserted or threatened claims against Ms. Tanner arising from any act or omission in the course of her pre-petition engagement;

f) Ms. Tanner and the Debtor will supplement these disclosures on a timely basis as needed throughout the engagement and the case;

g) That this Motion adequately discloses the compensation terms, including the hourly rates, and the terms, if any, of any success fee or back-end fee that may be requested;

h) Ms. Tanner and the Debtor will file with the Court, and provide notice to the Office of the United States Trustee and all official committees, reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall summarize the services provided, identify the compensation earned, and itemize the expenses incurred, pursuant to local practice and in conformity with the requirements in the In re Pothoven case. Such notice shall provide a time period for objections, and all compensation shall be subject to review by the Court in the event an objection is filed (*i.e.*, a "negative notice" procedure);

i)  Success fees or other back-end fees, if any, shall be approved by the Court at the conclusion of the case on a reasonableness standard and shall not be pre-approved under Bankruptcy Code section 328(a). No success fee or back-end fee shall be sought upon conversion of the case, dismissal of the case for cause or appointment of a trustee;

j)  The Debtor shall be permitted to indemnify Ms. Tanner in her capacity as an officer of the Debtor on the same terms as provided to the Debtor's other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under the Debtor's D&O policy;

k)  Pursuant to the "one hat" policy, after accepting an engagement in one capacity, Ms. Tanner shall not accept another engagement for the same or any affiliated debtor in another capacity; and

l)  For a period of three years after the conclusion of the engagement, Ms. Tanner shall not make any investments in the Debtor or Reorganized Debtor.

10. Filed contemporaneously with the initial Motion, the Debtor filed a Stipulation for Consensual Use of Cash Collateral. Said Cash Collateral Stipulation contemplates use by the Debtor of the Cash Collateral of its secured creditors for the Debtor's regular, usual, ordinary, customary and necessary expenses, including the compensation to be paid to Ms. Tanner.

11. The Debtor asserts that the engagement and employment of Ms. Tanner as Chief Financial Officer is essential and critical to the Debtor's Chapter 11 case and successful reorganization. Ms. Tanner's experience and expertise will enhance the Debtor's chances for a successful reorganization.

WHEREFORE, the Debtor respectfully requests the Court enter an order approving the instant Motion and approving the terms and conditions of the Engagement Agreement

between the Debtor and Mary Tanner pursuant to Bankruptcy Code sections 327(b), 363(c)(1) and 365, and for such other and further relief as may be just and equitable under the circumstances.

DATED:  April 22, 2021

/s/      *Krystal Mikkilineni*
Jeffrey D. Goetz, Esq., AT0002832
Krystal R. Mikkilineni, Esq. AT0011814
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com

Proposed General Reorganization Counsel for Cycle Force Group, LLC, Debtor & Debtor in Possession

CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/      *Barbara Warner*

1438 Old Lystra Rd Chapel Hill, NC 27517
919.923.8480
Finance Matters LLC

January 8, 2021

**EXHIBIT A**

Nyle Nims
Cycle Force Group, LLC
2105 SE 5th St
Ames, IA 50010

ENGAGEMENT PROPOSAL

Following is an engagement letter for CFO services between Mary Tanner, Principal of Finance Matters LLC ("FM") and Cycle Force Group LLC ("CFG" or the "Company").

Mary Tanner and Finance Matters LLC have been acting in the role of CFO for Cycle Force Group LLC since July of 2020. Below are the duties that we have been performing and will continue to perform under this updated engagement.

- Preparing the financial statements of Cycle Force Group
- Preparing 12-month budget and annual forecasts for 24 and 36 months
- Review and analysis of overhead costs and monitoring vs budget
- Monitoring a 13 week rolling cash forecast
- Advising CFG staff on proper accounting policies and process improvements
- Coordination with outside financial advisor, attorneys, and CFG staff in supplying needed information during the restructuring process

1. <u>Scope of Services and Timing.</u> Cycle Force Group LLC ("Client" or "CFG") engages Finance Matters LLC ("FM") to perform work as outlined in the above proposed deliverables.

2. <u>FM Responsibilities and Limitations.</u> The above engagement proposal outlines and describes the responsibilities and limitations of this engagement. Resulting analysis of financial information is solely for the purposes outlined above and the parties cannot rely upon FM financial assessments, opinions, or analysis except in the context they are presented.

3. <u>Best efforts.</u> While FM will provide its best efforts to move the project to a successful conclusion, there can be no assurance that it will be successful in doing so.

4. <u>No Warranties or Guarantees</u>. You accept and acknowledge that FM has not made any warranties or guarantees of any nature with respect to the results or outcome in this

CFG Finance Matters proposal 0121

matter or with respect to the economic, financial, or other results that you may experience as a result of the provision of services outlined.

5. <u>Termination of Agreement.</u> You or FM may terminate this engagement upon written notice to the other. Upon receipt of such notice from you, FM will stop work. You will be responsible for unpaid fees and expenses incurred through the date of such termination, should it occur.

6. <u>Reliance upon Information and Assistance.</u> The performance of services for this engagement is dependent upon you providing FM with the information, assistance and data as may reasonably be required and on a timely basis.

7. <u>Reports and Advice.</u> Any written reports or other documents that FM prepares are to be used only for the purpose of this matter and may not be published or used for any purpose without written consent. In no event, regardless of whether consent has been provided, shall FM assume any responsibility to any third party to which any advice or report is disclosed or made available.

8. <u>Confidentiality and Record Retention.</u> FM shall treat as confidential any documents or information made available to us in connection with this engagement. Written materials prepared for you and delivered to you during this engagement will be your property. In accordance with current document retention policy, FM may keep one archival set of its working papers and the documentation it provides to you from the engagement for a period of two years from the engagement's completion. Any documents in possession of FM belonging to you will be returned to you upon conclusion of the engagement. After two (2) years, our work papers and files will no longer be available. Physical deterioration or catastrophic events may result in our records being unavailable. FM agrees that if it receives any request for any confidential information through applicable legal processes, it shall immediately notify you of the request. Prior to complying with any request for information, you and your counsel shall be allowed the opportunity to defend against any such requests.

9. <u>Fees for Professional Services and Expenses.</u>

   The project will be billed on a time, materials, and expense basis according to the following fee schedule.

   - Mary Tanner -- $125 per hour

   The Company is required to deposit a retainer of $46,000 on engagement. FM will bill against that retainer. Expenses will be kept to a minimum and billed at cost.

10. <u>Limitation of liability.</u> In no event will FM be liable for any damages, incidental, consequential, or other, in excess of professional fees paid to FM under this engagement, even if FM has been advised of the possibility of such damages, except to the extent finally determined to have resulted from the willful misconduct or fraudulent behavior of FM relating to such services.

We appreciate the opportunity to be of service to you. To initiate this project, please date, sign, and return the enclosed copy of this letter to acknowledge your agreement with the terms of this engagement.

**Accepted:**

*(signature)*

Nyle Nims
President
**Cycle Force Group, LLC**

Dated: 1/20/21

**EXHIBIT B**

# MARY E. TANNER

Chapel Hill, NC
metannercpa@gmail.com • cell 919-923-8480

---

Experienced CPA with proven leadership and team-building skills.  Strong internal controls experience coupled with flexibility and an orientation towards accomplishing business objectives.  Ability to manage the financial aspects of an organization while adapting to changing market realities.  Strong technology competencies resulting from multiple systems integrations and partnering with other business leaders to design solutions that work for all areas of the organization.

*Core competencies include:*

- Accounting Management
- Audit Management
- Budgeting & Forecasting
- Cash flow management
- Due Diligence
- Efficiency Improvements
- Financial Analysis
- Financial Statement Prep
- Regulatory Compliance
- Risk Mitigation
- Sales Tax Compliance
- Technology Integration

---

## CAREER EXPERIENCE

**FINANCE MATTERS, LLC, Chapel Hill, NC, 2019 – Present**

**Principal (2019-Present)**

Provided financial consulting for clients in the non-profit, retail, wholesale, and fulfillment logistics industries.

**PERFORMANCE, INC, Chapel Hill, NC, 1998 – 2018**

**Director – Accounting (2009-2018)**

**Controller (1998-2009)**

Directed daily financial operations of multi-state, multi-channel retail operation as it evolved into an omni-channel enterprise.  Developed and directly supervised staff of five with six additional indirect reports.  Served as an integral partner on the Corporate and IT Steering committees. Managed financial reporting, sales tax and regulatory reporting, payroll, A/P, A/R, income taxes, insurance, foreign currency transactions, annual financial audits and technology upgrades.  Developed and managed the budgetary process, coordinating resources company-wide.

- ➢ Through technology improvements, leveraged financial department costs allowing headcount to decrease as store and revenue volume more than doubled
- ➢ Improved departmental financial reporting, enabling department heads to better understand and manage their costs
- ➢ Managed user implementation of Lawson/Infor GL and AP upgrades, payroll/HR system conversion to ADP then ECI, implementation of PTMS and License HQ software.
- ➢ Converted fixed asset system to Sage FAS software
- ➢ Implemented Safetech Fraud prevention software, integrated Epicor/Aptos Sales Audit product into financial operations
- ➢ Partnered with other key operational business leaders to design, test, and implement omni-channel retail system based on Epicor/Aptos POS, Sales Audit, CRM and Enterprise Selling

*Mary E. Tanner* • Page 2

## Career Experience Continued

- Founding member of the associate engagement team which promotes associate wellness activities, and which won Performance Gold level Bicycle-Friendly Business status

**MALL ADVOCATE, A division of The Village Companies Chapel Hill, NC, 1993 – 1998**
**Division Controller**

Developed a job costing and forecasting system in order to manage an advertising business which had expanded quickly.  Managed financial reporting for the division and coordinated A/P with the corporate accounting department.  Managed a 2-person staff and established a system of internal controls within the division.

- Improved cash flow and A/R collections by transitioning to a down-payment policy.
- Developed a job costing model to maximize division profits and educate sales staff on pricing
- Developed and maintained a weekly forecasting model for use in corporate financial projections.

**KPMG, Raleigh, NC, 1991 – 1993**
**Audit Staff**

Audited financial statements of public and private companies in the non-profit, insurance and manufacturing sectors.

- Maximized billings by documenting work done outside the scope of the engagement.

## Education

**MBA, Concentration in Finance**
UNIVERSITY OF NORTH CAROLINA – Chapel Hill, NC

**BA**, **French & Biology**
WELLESLEY COLLEGE – Wellesley, MA

**CERTIFICATIONS/MEMBERSHIPS**

**CPA, North Carolina 1992 to present**
**NCACPA, AICPA**
**AICPA Not-for-Profit Certificate I**

**VOLUNTEER INVOLVEMENT**
**Treasurer, Compass Center for Women and Families, 2018-present**
**Treasurer, Wellesley in the NC Piedmont 2012-present**
**Treasurer, Wellesley Class of 1985 2015-2020**
**Financial Consultant, Shakori Hills Community Arts Center 2014-2016**
**Team Captain, Team Performance Bike MS New Bern 2010-2014**

**REFERENCES AVAILABLE ON REQUEST**