**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF IOWA**

| | | |
|---|---|---|
| In Re: | ) | Case No. 21-00571 |
| | ) | |
| **CYCLE FORCE GROUP, LLC** | ) | Chapter 11 |
| | ) | |
|     Debtor and Debtor in Possession. | ) | Hon. |
| | ) | |
| 2105 SE 5th St. | ) | ***FIRST DAY MOTION*** |
| Ames, IA 50010 | ) | **DEBTOR'S *EMERGENCY* MOTION** |
| | ) | **FOR ORDER AUTHORIZING** |
| EIN: 26-2671865 | ) | **DEBTOR TO HONOR PRE-PETITION** |
| | ) | **OBLIGATIONS TO EMPLOYEES AND** |
| | ) | **BRIEF IN SUPPORT** |
| | ) | |
| _____ | ) | No Hearing Set |

Cycle Force Group, L.L.C. (the "Debtor" or "CFG"), Debtor and Debtor-in-Possession herein, by and through its Proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq. and Krystal R. Mikkilineni, Esq. of the law firm of Bradshaw, Fowler, Proctor and Fairgrave, P.C., and pursuant to the provisions of Bankruptcy Code sections 105(a), 364(b), 365, 507(a)(4), and 1107 and Bankruptcy Rule 4001, respectfully moves for entry of an Order authorizing the Debtor (i) to pay pre-petition accrued employee wages, salaries, and related taxes; (ii) to honor certain employee benefit obligations; and (iii) to honor all other terms and conditions of its employees' employment obligations (the "Motion"). In support of this Motion, Debtor shows the Court as follows:

    **I.**    **JURISDICTION AND STATUTORY PREDICATE**

1. This Court has jurisdiction of this Motion pursuant to 28 U.S.C. § 157 and § 1334. Venue of this case and Motion in this district is proper pursuant to 28 U.S.C. § 1408 and § 1409. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), and 507.[1]

## II. BACKGROUND

3. On April 22, 2021 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4. The Debtor continues in possession of its property and the management of its business as a Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. Counsel for the Debtor has consulted with counsel for Great Western Bank and is authorized to state that Great Western Bank does not object to the relief requested.

6. Immediately prior to the Petition Date, CFG employed approximately 32 full-time individuals and one part-time individual, including corporate and administrative personnel. CFG also employs two offsite employees in sales who are paid on commission and receive 1099's.

**A.   Employee Pre-Petition Payroll, Retirement, Vacation, Holiday, and Sick Leave Policies.**

7. <u>Payroll</u>. CFG's salaried employees are paid in real time bi-weekly. CFG's hourly employees are paid bi-weekly, one week in arrears. CFG has paid its employees for the last pay period ending on April 16, 2021. There will be accrued but unpaid wages owing for hourly employees from April 12, 2021 through April 23, 2021, in an amount not to exceed $14,000.00 for hourly, and an amount not to exceed $33,0000 for salaried employees to be paid on April 30, 2021.

8. <u>Retirement</u>. CFG contributes an amount for its retirement share each pay period. As such, there will be accrued but unpaid retirement shares due on April 30, 2021 in an amount

---

[1] All references to sections or codes, unless otherwise noted, are made to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and referred to herein as the "Bankruptcy Code".

2

not to exceed $2,000.00.

9. <u>Vacation, Holiday, and Sick Leave</u>. CFG has existing contractual compensation for paid-time-off ("PTO") which includes within it vacation and sick leave, in which employees have accrued rights to time away from work under those policies. CFG pays its employees for accrued PTO (vacation days, holidays, and sick leave days) upon the employee's termination of employment. Retained employees will maintain rights to have time away from work for such purposes that accrued prior to the Petition Date. CFG additionally pays its employees holiday pay. CFG seeks permission to honor those policies.

    **B.**     **Employee Pre-Petition Insurance.**

10. CFG provides health insurance for its employees on a cost-sharing basis, if the employee wishes to enroll in the insurance plans available for a family plan or an individual plan. Dental insurance is paid by the employee.

    **C.**     **Employee Withholding Tax Obligations.**

11. In connection with its business operations, the Debtor withholds certain federal and state income taxes from the wages and the salaries of its employees and also deducts Federal Insurance Contribution Act taxes from the wages and salaries of employees, as well as being required to pay certain taxes and other amounts with respect to its employees (the "Employee Taxes").

12. Many of such amounts are "trust funds" that the Debtor must hold for the benefit of the relevant federal and state taxing authorities. Failure to report and to remit the Employee Taxes could subject the Debtor to substantial interest and penalties, as well as to criminal charges. In addition, the Debtor's officers may be personally liable for such amounts in some cases.

13. Failure to pay the Employee Taxes could cause the taxing authorities to take aggressive actions to collect the "trust fund" taxes, including attempts to trace the funds and perhaps cause extensive audits that interfere with the Debtor's business. Also, the threat of liability of officers for unpaid "trust fund" taxes would unnecessarily distract officers whose undivided attention is required for the successful outcome of this case. Finally, the failure to pay the Employee Taxes would cause great concern among the work force and disrupt the Debtor's relationship with those employees at a time when it is critical that their focus be upon maintaining the Debtor's community confidence.

14. Therefore, the Debtor requests authority to pay the accrued but unpaid pre-petition Employee Taxes in connection with the Debtor's employee obligations to the extent it is determined that any of such Employee Taxes accrued prior to the Petition Date are in fact unpaid.

15. In addition, from time to time, certain deductions from the employee obligations may be made that principally represent employee earnings that employees or, in the case of garnishments, judicial authorities, have designated for deduction from employee paychecks and paid accordingly (the "Deductions"). The failure to pay these benefits could result in hardship to certain employees. The Debtor may receive inquiries from garnishors regarding the Debtor's failure to submit, among other things, child support and alimony payments, which are not the Debtor's property, but rather have been withheld from employee paychecks.

### III. RELIEF REQUESTED

16. The Debtor requests by this Motion, entry of an order authorizing the Debtor, in accordance with its stated policies, in the ordinary course of its business, and in its sole discretion, to (i) pay or honor certain pre-petition employee wages, salaries, and contractual

compensation including PTO and vacation pay; (ii) make payments on amounts owed under accrued and unpaid medical plans; (iii) pay all costs and expenses incident to the foregoing payments and contributions (including without limitation withholding taxes and processing costs); and (iv) other certain related relief as requested in this Motion. In no event does the relief requested herein contemplate the assumption of, or authority to pay, any obligations in respect of contribution and indemnification claims.

17. Pre-petition, CFG has paid all obligations to its employees on a timely and current basis through direct-deposit of funds into the employees' bank accounts. Therefore, there are no substantial arrearages accrued and the only outstanding amounts owing to or for the benefit of employees are those accruing due to the timing of payments in the ordinary course of business. The Debtor may not pay these employees or reimburse their expenses without prior Court approval.

18. Payment of these amounts is crucial for maintaining employee confidence and morale and will encourage employees to remain in the employ of the Debtor at this critical time. To the extent the pre-petition Employee Claims have been paid with a check that is outstanding and has not yet cleared CFG's payroll account maintained at Great Western Bank or any other CFG account, CFG requests that Great Western Bank or any other bank at which an applicable account is maintained be authorized and directed to clear all such pre-petition checks and to rely on CFG's directions as to the payment of such pre-petition checks. This request would alleviate the need for CFG to reissue payroll and medical benefits checks and would prevent disruption in CFG's relationship with its employees.

19. By this Motion, CFG also seeks authority to honor all other terms and conditions of the employment of its employees as if this chapter 11 case had not been initiated, pending

further orders of this Court.

20. CFG is highly dependent on its trained and experienced workforce and the retention of its current workforce is one of CFG's highest priorities during the continuation of its reorganization. Therefore, CFG's ability to maximize the value of its assets for the benefit of the creditors and other parties-in-interest will be adversely affected if the Debtor is unable to retain the support and loyalty of its employees.

21. If CFG is unable to assure its employees that they will be paid promptly, or if the employees are not immediately assured of uninterrupted, critical benefit payments to which they are entitled, CFG's operations could suffer immediate and irreparable harm due to, at the very least, an undermining of employee morale. Failure to honor any other terms and conditions of their employment would only exacerbate this problem. The relief requested is thus necessary to preserve CFG's operations during its reorganization.

### IV.    BASIS FOR RELIEF REQUESTED

**Payment of Pre-Petition Claims is Authorized by the "Necessity of Payment" Doctrine and the Bankruptcy Code**

22. As a result of this chapter 11 filing, Debtor is prohibited from paying claims that arose prior to the Petition Date without receiving specific authorization. *See* 11 U.S.C. § 549(a)(2)(B) (2021). Each employee of CFG is, however, entitled to a priority claim for compensation earned in the 180-day period preceding the Petition Date in an amount up to $12,475. 11 U.S.C. § 507(a)(4) (2021). Claims on account of employee benefits obligations are also entitled to priority. *See* 11 U.S.C. § 507(a)(5) (2021). Claims for payroll and related taxes are also entitled to priority status. 11 U.S.C. § 507(a)(8) (2021).

23. Because all such administrative expense or priority claims are entitled to be paid in full, accelerated payment of such claims at this time is appropriate, and this Court is

authorized to grant such relief. *See* 11 U.S.C. § 105 (2021). In addition, in order to retain quality, experienced employees, to maintain their morale while this chapter 11 case is pending and to preserve CFG's operations during this critical time period, CFG should be granted the authority to pay its employees' pre-petition wages.

24. Section 105 of the Bankruptcy Code allows the Court to authorize payments on account of certain pre-petition claims when necessary and essential to the continued operation of the debtor. 11 U.S.C. § 105 (2021). This is generally referred to as the "necessity of payment" doctrine. *In re NVR, L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (stating under section 105(a), a court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D. N.Y. 1989) (stating a bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept"); *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity of payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made out of corpus").[2]

25. Similar relief to that requested herein has consistently been granted by other bankruptcy courts pursuant to such doctrine. *In re Certified Air Technologies, Inc.*, 300 B.R. 355 (Bankr. C.D. Cal. 2003); *In re ATP Oil & Gas Corp.*, Case No. 12-36187 (Bankr. S.D. Tex.

---

[2] *See also In re Fin'l News Network, Inc.*, 134 B.R. 732, 736 (Bankr. S.D. N.Y. 1991) (pre-petition claims may be paid when doing so is "critical to the debtor's reorganization"); *In re Eagle-Pitcher Indus.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (payment must be "necessary to avert a serious threat to the Chapter 11 process"); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (payment necessary to "permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately") (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D. N.Y. 1987)).

August 21, 2012); *In re Cano Petroleum, Inc.*, Case No. 12-31549 (Bankr. N.D. Tex. March 16, 2012); *In re Dynegy Holdings, LLC*, Case No. 11-13686 (Bankr. S.D. N.Y. November 9, 2011); *In re Otero Cnty. Hosp. Ass'n, Inc.*, Case No. 11-13686 (Bankr. D. N.M. September 12, 2011); *In re Paul Transp., Inc.*, Case No. 10-13022 (Bankr. W.D. Okla., May 21, 2010); *In re Stallion Oilfield Services, Inc.*, Case No. 09-13562 (Bankr. D. Del. October 20, 2009); *In re Harold's Stores, Inc.*, Case No. 08-15027 (Bankr. W.D. Okla. November 7, 2008); *In re Rocor Int'l, Inc.*, Case No. 02-17658 (Bankr. W.D. Okla., August 7, 2002); *In re Keast Enterprises, Inc., et al.*, Case No. 18-00856-als11 (Bankr. S.D. Iowa 2021); *In re Sivyer Steel Co.*, Case No. 18-00507-als11 (Bankr. S.D. Iowa 2020); *In re Fansteel, Inc.*, Case No. 16-01823-als11 (Bankr. S.D. Iowa 2020); *In re Fansteel Foundry Co.*, Case. No. 16-1825-als11 (Bankr. S.D. Iowa 2020); *In re Foods, Inc., d/b/a Dahl's Foods,* Case. No. 14-02689-als11 (Bankr. S.D. Iowa 2018).

26. To retain quality, experienced workers, to maintain their morale while this chapter 11 case is pending, and to preserve the Debtor's operations during its reorganization, the Debtor should be granted the authority to pay the pre-petition claims of Debtor's employees in the ordinary course of the Debtor's business.

27. The Debtor believes that substantially all of the amounts the Debtor seeks to pay are either entitled to priority claim status under sections 503, 507(a)(4), and 507(a)(5) (with the exceptions cited herein). Thus, granting the relief sought herein only would affect the timing of payment, and not the amount, of these obligations to the Debtor's employees to the extent they constitute priority claims.

28. Many employees live from paycheck to paycheck and rely exclusively on receiving their full compensation in order to continue to pay their daily living expenses. Thus, they will be exposed to significant financial and health-related problems if the Debtor is not

permitted to pay certain of the unpaid employee obligations, particularly wages, salaries, and health insurance benefits. Moreover, the Debtor believes that if it is unable to honor its pre-petition obligations to employees, morale and loyalty will be jeopardized at a time when internal business support is critical.

29. Further, if the Debtor is not authorized to continue to pay its employees' benefits, then many of the Debtor's employees may not be reimbursed nor otherwise have their benefits claims paid. In addition, certain employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed, and may face having their health services terminated.

30. The Debtor believes such uncertainties will cause significant anxiety at precisely the time the Debtor needs its employees to perform their jobs at peak efficiency.

31. The Debtor does not intend by this Motion to assume any executory obligations, and this Motion should not be deemed an assumption or adoption of any agreements or policies providing for coverage or any other executory contracts. Rather, the Debtor simply intends in its discretion and in the exercise of business judgment, subject to this Court's approval, to maintain its current policies pending further business decisions relevant to the maximization of the value of the Debtor's assets in this case.

### V.    **AUTHORITY FOR BANKS TO HONOR CHECKS ISSUED IN PAYMENT OF EMPLOYEE OBLIGATIONS**

32. The Debtor also requests by this Motion that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtor and at the Debtor's sole discretion, to receive, process, honor, and pay all checks presented for payment and to honor all funds transfer requests made by the Debtor related to the aforementioned obligations, whether such checks were presented or funds transfer requests were submitted prior

to or after the Petition Date, to the extent sufficient funds are available in the accounts to make such payments.  The Debtor represents that these checks are drawn on identifiable payroll and disbursement accounts.  Accordingly, checks other than those for employee obligations will not be honored inadvertently.  No prior request for the relief requested herein has been made to this or any other Court.

### VI.   CONCLUSION

WHEREFORE, the Debtor, Cycle Force Group, L.L.C., requests that this Court enter an Order (i) authorizing Debtor to make payments of all amounts due on account of employee obligations that accrued pre-petition; (ii) authorizing Debtor to honor any other terms and conditions of the employment of its employees; (iii) authorizing Debtor's banks to honor such checks and transfers as necessary to effectuate the relief requested herein; and (iv) granting such other relief as this Court may deem just and equitable under the circumstances.

Dated: April 22, 2021

*/s/ Krystal R. Mikkilineni*
Jeffrey D. Goetz, Esq, AT0002832
Krystal R. Mikkilineni, Esq. AT0011814
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand, Suite 3700
Des Moines, IA  50309-8004
515/ 246-5817
515/ 246-5808 fax
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com

Proposed General Reorganization Counsel
for Cycle Force Group, L.L.C.,
Debtor and Debtor in Possession

## VERIFICATION BY COUNSEL FOR DEBTOR

I, Krystal R. Mikkilineni, declare as follows:

1. The matters stated in this Declaration are true and correct and within my own personal knowledge and belief. If called as a witness, I could and would competently testify hereto.

2. I am an attorney licensed to practice law before this court and am the proposed General Reorganization Counsel for the Debtor. I am duly admitted to practice law in the courts of the State of Iowa and in the United States District Court for the Southern District of Iowa.

3. I have personal knowledge of the facts set forth in the foregoing Motion and, if called upon as a witness, I could and would competently testify as to all of the matters stated therein.

I declare under penalty of perjury under the laws of the State of Iowa and the laws of the United States, that the foregoing is true and correct and is executed this 22nd day of April, 2021, at Des Moines, Iowa.

Dated: April 22, 2021                                    /s/ Krystal Mikkilineni
                                                         Krystal R. Mikkilineni

## VERIFICATION BY PRESIDENT, NYLE NIMS

I, Nyle Nims, declare as follows:

1.I am the President and CEO of the Debtor, Cycle Force Group, L.L.C. The matters stated in this Declaration are true and correct and within my own personal knowledge and belief. If called as a witness, I could and would competently testify hereto.

2.I have personal knowledge of the facts set forth in the foregoing Motion and, if called upon as a witness, I could and would competently testify as to all of the matters stated therein.

I declare under penalty of perjury under the laws of the State of Iowa and the laws of the United States that the foregoing is true and correct and is executed this 22nd day of April, 2021, at Ames, Iowa.

Dated: April 22, 2021/s/ Nyle Nims
Nyle Nims

## CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/Barbara Warner