# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: ) | Case No. 21-00571-11 |
| ) | |
| **CYCLE FORCE GROUP, LLC** ) | Chapter 11 |
| ) | |
| Debtor and Debtor in Possession ) | Hon. |
| ) | |
| 2105 SE 5th St. ) | **STIPULATION CONSENTING TO USE** |
| Ames, IA  50010 ) | **OF CASH COLLATERAL AND** |
| ) | **PROVIDING POST-PETITION LIENS** |
| ) | [Bankruptcy Code Section 363, Bankruptcy |
| ) | Rule 4001] |
| EIN: 26-2671865 ) | |
| _____ ) | No Hearing Set |

Cycle Force Group, LLC (the "Debtor" or "CFG"), Debtor and Debtor in Possession herein, by and through its Proposed General Reorganization Counsel, Jeffrey D. Goetz, Esq., and Krystal R. Mikkilineni, Esq. of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., and Great Western Bank ("Bank" or "GWB"), by and through its counsel of record, Jeffrey W. Courter, Esq. of the law firm of Nyemaster Goode, P.C., respectfully file the instant Stipulation Consenting to Use of Cash Collateral and Providing Post-Petition Liens (the "Stipulation") pursuant to section 363 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), consenting to the Debtor's use cash collateral, and providing adequate protection to the Bank.

This Stipulation: (i) will enable the Debtor to continue the operation of its business and avoid immediate and irreparable harm to the Debtor's estate; (ii) will permit the Debtor to acquire needed goods and services, and pay other necessary and ordinary business expenses; and (iii) is in the best interests of the Debtor, its creditors, and its estate.

The parties hereto stipulate and agree the Debtor shall be authorized to use Cash

Collateral on a final basis, for the payment of its usual, ordinary, customary, regular, and necessary post-petition expenses incurred in the ordinary course of Debtor's business, and for payment of those pre-petition claims approved and allowed by Order of the Bankruptcy Court and not otherwise. Any of the following payments shall **not** be considered ordinary and usual expenses necessary to continue the operation of the Debtor's business, unless the Bank consents in writing to any such payment prior to such payments being made: (1) operation of the Debtor's business at any fixed locations other than its pre-petition business premises; (2) payment of trade debt incurred prior to the commencement of this case, unless approved by Order of the Bankruptcy Court; (3) payment of any taxes owed prior to the date the Petition was filed by the Debtor; and (4) payment of any other debt incurred prior to the commencement of this case, except as provided for in Debtor's confirmed Plan or subsequent order of this Court. The foregoing payments due are merely illustrative and not an exclusive list of payments that will not be considered ordinary and usual expenses. Such authorization shall continue for the period beginning on the Petition Date, subject to the following terms and conditions:

    (a)    All proceeds received from the Debtor's operations of its business, in the ordinary course of its business, and the collection of accounts receivable and profits, shall be deposited in the DIP Accounts at the Bank. Only the ordinary and usual expenses necessary to continue operation of the business, incurred after the commencement of the bankruptcy case, shall be paid from the DIP Accounts, and other payments as the Court shall allow from time to time.

    (b)    On or before Thirty (30) days after the Petition Date, the Debtor shall provide to the Bank an initial aging of all accounts receivable, accounts payable, and a list of all inventory,

plus total current operating expenses and total current collections. This report shall be updated and provided to the Bank by the 21st day of each month thereafter (the "Reports").

(c) The Bank shall, at any time, be permitted to conduct a full inspection of the real estate property and accounts of the Debtor by visiting the Debtor's premises to inspect, verify and photocopy all such records and to inspect, appraise and document the Collateral. Debtor proposes to grant the Bank and its agents and employees, a license to enter upon all such premises for such purposes during its regular, customary and ordinary business hours. The Bank shall also have access, within 5 business days of any request, to the Debtor and its management, personnel and advisors.

(d) On or before Thirty (30) days after the Petition Date, the Debtor shall prepare and provide the Bank with a balance sheet and income statement existing as of the filing date of Debtor's Petition. Within twenty-one (21) days of each successive month, Debtor shall provide an updated balance sheet and income statement along with a copy of all monthly reports provided to the Court and/or the United States Trustee.

(e) All Collateral shall be insured to its full value, and Debtor shall otherwise comply with the terms and conditions of the Bank with respect to this insurance obligation. Evidence of insurance identifying the Bank as insured mortgagee/loss payee shall be provided within 21 days of the Petition Date.

(f) If at any time the Debtor fails to properly insure the Collateral, fails to pay any local, state or federal taxes as they become due, fails to pay fees required by the U.S. Trustee, or fails to comply with any other term of this Stipulation, the Bank may give the Debtor written notice that the Debtor has twenty-one (21) days to cure such default, after the mailing or transmission of written notice of such default. If the default is not cured, the Bank may file an

Affidavit of Uncured Default to seek entry of an order granting them relief from the automatic stay, subject to the Debtor, the U.S. Trustee, or the Committee of Unsecured Creditors, if one is appointed, having Seventy-Two (72) hours to file an objection alleging there was no uncured default, and requesting the court schedule an emergency or expedited hearing on whether relief from the automatic stay is warranted or necessary.  Upon such termination, the Bank shall be authorized to terminate the use of Cash Collateral, and take such action against the Collateral, as permitted under its respective loan documents, including, without limitation, the Security Agreements, and applicable state law.

(g)     Unless otherwise notified, all notices hereunder to the Debtor, and to the Bank, shall be sent to the Debtor, the Bank, and their respective counsel.

Any termination of the automatic stay under this Stipulation and any Order thereon shall apply to the above Chapter 11 case or any subsequent dismissal.

Debtor and the Bank stipulate and agree that the Debtor's obligations to the Bank constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the various loan documents applicable thereto, including, without limitation, the Security Agreements.  Subject solely to  to any rights granted to an Official Committee of Unsecured Creditors to independenly investigate the nature, extent and priority of the Bank's security documents and interests, the Debtor has no objection, offset, defense or counterclaim of any kind or nature to such obligations, which, together with any amounts previously paid to the Bank on account thereof, are not, and will not be, subject to avoidance, recovery, reduction, disallowance, disgorgement, other non-consensual treatment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

Proceeds from the sale of inventory, collection of accounts and any other sums, cash or

cash equivalents received from any source shall constitute cash collateral pursuant to Bankruptcy Code Section 363(a), which comprises the Collateral of the Bank.  The Bank is entitled to adequate protection of its interests in the pre-petition Collateral (including Cash Collateral) and the Debtor may not use the Cash Collateral for any purpose without the Bank's consent or upon order of the Court, after appropriate notice and hearing, and authorizing such use based on a finding that the Bank's position is adequately protected. The Debtor shall provide adequate protection to the Bank to the extent of its interests under Bankruptcy Code Section 506 in the Cash Collateral heretofore and hereafter used.

In consideration for the Debtor's use of the Cash Collateral, as provided herein and solely as adequate protection for any diminution in the value of the secured creditor's Collateral ("Diminution"), the Debtor shall grant to the Bank:

(a)    A validly perfected first priority lien on, and security interest in, all of Debtor's post-petition property and proceeds thereof (the "Collateral"), subject to existing valid, perfected and superior liens in the Collateral held by other creditors, if any, and the Carve-Out (as defined below).  The rights, liens and interests granted to the Bank hereunder shall be based on the Bank's relative rights, liens and interests in the Debtor's Cash Collateral pre-petition. Upon execution and filing of this Stipulation, the post-petition security interests and liens shall be valid, perfected and enforceable and shall be deemed effective and automatically perfected as of the Petition Date without the necessity of the Bank taking any further action.  The Bank may, however, at its option, file continuation statements, financing statements or such documents as it deems necessary to evidence its security interests in the Collateral.  Upon request by the Bank, the Debtor will execute and deliver any and all such documents, or financing statements, as are necessary to effect and perfect the Bank's security interests as set forth in this paragraph.

(b)    In the event, and only to the extent of Diminution in Collateral, a super-priority claim shall have priority in the Debtor's bankruptcy case over all priority claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to §§ 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726(b), and 1114 of the Bankruptcy Code or otherwise.  This super-priority claim shall be subject and subordinate only to the Carve-Out described below and not to any other unsecured claim (having administrative priority or otherwise).  The Carve-Out shall include (i) amounts paid by the Debtor during the Case, (ii) any unpaid, but accrued fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and (iii) any unpaid, but accrued fees and expenses incurred by each of the Debtor's and Official Committee's professionals (if appointed and duly employed) and approved by the Court in an amount not to exceed $70,000.00 (collectively, the "Carve-Out").  It is the intention of the Debtor to expand upon the rights of the Bank, and to "prime" all administrative expenses except for the Carve-Out described herein.

As further adequate protection, the Debtor shall make post-petition monthly payments to the Bank in an amount equal to the amount paid monthly pre-petition, pursuant to the Debtor's pre-petition loan documents with the Bank, unless the Debtor and the Bank agree to a different or lesser amount ("Debt Service Payments"), which shall be applied by the Bank to the pre-petition senior debt (as permitted under the relevant Security Agreements and applicable law) provided, however, in the event this Court ever determines that the Collateral value of the Bank as of the Petition Date does not exceed the amount of their respective pre-petition senior debt, the Debt Service Payments shall be applied by the Bank as follows: first, on account of any Diminution suffered by the Bank as determined by the Court, or agreed to between the Debtor

and Bank in writing, and second, to outstanding principal and interest on the pre-petition senior debt. In consideration for the foregoing accommodations by the Debtor, the Bank agrees to waive any right to default interest that accrued pre-petition, but does not waive its rights to default interest, if warranted, during the post-petition period of this Case as may be permitted under any applicable Security Agreement.

All rights of the Bank to seek additional adequate protection for Debtor's use of Cash Collateral, to file for relief from the automatic stay, to seek dismissal, to assert any other right or cause of action, or any other matter with respect to the Debtor, (whether in this bankruptcy case, or otherwise), are expressly reserved. The failure or delay by the Bank to seek relief or otherwise exercise its rights and remedies under this Stipulation, or any loan documents shall not constitute a waiver of any of the rights of the Bank.

This Stipulation, the Security Agreements, and any documents and instruments required of Debtor by this Stipulation are or will be (when executed and delivered), valid, binding and enforceable in accordance with their respective terms upon entry of an order approving this Stipulation.

Immediately upon execution and filing of this Stipulation, the provisions thereof shall be valid and binding upon and inure to the benefit of the Bank, all other creditors of the Debtor, and all other parties in interest.

If any provision of this Stipulation is modified, vacated or stayed by order of this or any other Court for any reason, such modification, vacation, or stay, shall not affect the validity of any obligation or liability incurred, pursuant to this Stipulation and prior to the later of (a) the effective date of such modification, vacation, or stay, or (b) the filing of this Stipulation pursuant to which such modification, vacation, or stay was established, nor the validity, priority,

or enforceability of any lien or claim granted by the Debtor to the Bank.  The liens and claims granted to the Bank under this Stipulation, and the priority thereof, and any payments made pursuant to this Stipulation, shall be binding on the Debtor and its bankruptcy estate and all creditors of Debtor.

To be effective, any waiver by the Bank of the provisions of this Stipulation must be in writing, which includes electronic mail.

To the extent that the value of the Collateral as of the Petition Date exceeds the pre-petition senior debt, (which determination may be made by a Court order, or upon written agreement of the Debtor and the Bank), the Debtor shall pay the actual, reasonable and necessary attorney fees incurred by the Bank, as set out in the loan documents, to the extent authorized under Bankruptcy Code Section 506.

IT IS SO STIPULATED AND AGREED

Dated: 4/22/2021

/s/ Jeffrey Goetz
Jeffrey D. Goetz, Esq. AT0002832
Krystal R. Mikkilineni, Esq. AT0011814
Bradshaw Fowler Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8007
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com

Proposed General Reorganization Counsel
for Cycle Force Group, LLC
Debtor and Debtor in Possession

Dated: 4/22/21

/s/ Jeffrey Courter, Esq.
Jeffrey W. Courter, Esq.
Nyemaster Goode, PC