# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re : | Case No. 21-00571-als11 |
| **CYCLE FORCE GROUP, LLC,** | Chapter 11 |
| Debtor and Debtor in Possession. | Hon. Anita L. Shodeen |
| 2105 SE 5th St.<br>Ames, IA 50010 | |
| EIN: 26-2671865 | |

## FIRST AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH RESPECT TO THE PLAN OF ORDERLY LIQUIDATION OF CYCLE FORCE GROUP, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Jeffrey D. Goetz, Esq.,
Krystal R. Mikkilineni, Esq.
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515-246-5880
515-246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com
**Counsel to the Debtor**

Ronald E. Gold
A.J. Webb
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 651-6800
Facsimile: (513) 651-6981
Email:     rgold@fbtlaw.com
             awebb@fbtlaw.com
-and-
Robert C. Gainer
CUTLER LAW FIRM, P.C.
1307 50th Street West
Des Moines, IA 50266
Tel: 515-223-6600
Fax: 515-223-6787
Email:   rgainer@cutlerfirm.com

**Counsel for the Official Committee of Unsecured Creditors of Cycle Force Group, LLC**

### DISCLAIMER

THIS FIRST AMENDED DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") AND ITS RELATED DOCUMENTS ARE BEING USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN OF ORDERLY LIQUIDATION OF CYCLE FORCE GROUP, LLC (THE "DEBTOR"), UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED MARCH ___, 2022 (AS MAY BE FURTHER AMENDED, THE "PLAN") PROPOSED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "COMMITTEE" AND, TOGETHER WITH THE DEBTOR, THE "PLAN PROPONENTS").

THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OF CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE CHAPTER 11 CASE AND FINANCIAL INFORMATION. THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN OR SUCH STATUTORY PROVISIONS, DOCUMENTS OR FINANCIAL INFORMATION, BUT IS RATHER INTENDED ONLY TO AID AND TO SUPPLEMENT SUCH REVIEW. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED PROVISIONS SET FORTH IN THE PLAN (WHICH IS ATTACHED HERETO AS EXHIBIT A). IN THE EVENT OF A CONFLICT BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN SHALL GOVERN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS IN VOTING CLASSES ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS ATTACHED HERETO, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR TO REJECT THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT, UNDER ANY CIRCUMSTANCES, CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF. THE PLAN PROPONENTS DO NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN, INCLUDING THE FINANCIAL INFORMATION, IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE SOLICITATION PERIOD PURSUANT TO THIS DISCLOSURE STATEMENT WILL EXPIRE AT _____, 2022 (THE "VOTING DEADLINE"). TO BE COUNTED, BALLOTS MUST BE ACTUALLY RECEIVED IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON OR BEFORE THE VOTING DEADLINE. PLEASE SEE SECTION I.B OF THIS DISCLOSURE STATEMENT FOR VOTING INSTRUCTIONS.

THIS DISCLOSURE STATEMENT HAS BEEN CONDITIONALLY APPROVED BY THE BANKRUPTCY COURT BY AN ORDER ENTERED ON _____, 2022; HOWEVER, THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED ON A FINAL BASIS. THE

BANKRUPTCY COURT WILL CONSIDER APPROVAL OF THIS DISCLOSURE STATEMENT ON A FINAL BASIS AT THE CONFIRMATION HEARING.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH THE BANKRUPTCY CODE AND THE BANKRUPTCY RULES AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER NON-BANKRUPTCY LAW.   THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.   PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS OR EQUITY INTERESTS OF THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.   HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.   EACH SUCH HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.   THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING.

IF THE BANKRUPTCY COURT CONFIRMS THE PLAN AND IT BECOMES EFFECTIVE, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS (INCLUDING THOSE WHO REJECTED OR WHO ARE DEEMED TO HAVE REJECTED OR ACCEPTED THE PLAN AND THOSE WHO DID NOT SUBMIT BALLOTS TO ACCEPT OR TO REJECT THE PLAN) SHALL BE BOUND BY THE TERMS OF THE PLAN.

# ARTICLE I
# INTRODUCTION

### A.     General

On April 22, 2021 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its assets as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code, subject to the control and supervision of the Bankruptcy Court.

The Plan Proponents submit this Disclosure Statement in connection with the solicitation of votes on the Plan, a copy of which is attached hereto as <u>Exhibit A</u>. This Disclosure Statement sets forth certain information regarding the Debtor's pre-petition operations and finances and the Debtor's need to seek chapter 11 protection. This Disclosure Statement also describes the terms and conditions of the Plan, potential alternatives to the Plan, certain effects of confirmation of the Plan and a description of the distributions proposed to be made under the Plan. In addition, this Disclosure Statement discusses the confirmation process and the voting procedures that the holders of Claims and Equity Interests entitled to vote must follow for their votes to be counted.

CAPITALIZED TERMS USED AND NOT DEFINED HEREIN SHALL HAVE THE MEANING ASCRIBED TO THEM IN THE PLAN UNLESS THE CONTEXT REQUIRES OTHERWISE.

### B.     Brief Summary of the Plan

The Plan is a plan of liquidation and will be funded by the "Liquidating Trust Assets" consisting of, (a) the Cash held by the Estate after taking into account Distributions made on the Effective Date; (b) all Causes of Action; (c) all Privileged Documents and communications of the Debtor; (d) all other assets of the Debtor or of the Estate existing on the Effective Date after giving effect to all Distributions required to be made as of or prior to the Effective Date, including but not limited to all books, records and files of the Debtor and of the Estate, in all forms, including electronic and hard copy. The Plan also creates a Liquidating Trust, which will be the mechanism through which Claims will be adjudicated and distributions will be made as set forth in the Plan.

### C.     Voting Instructions and Procedures

### 1.     Voting Procedures, Ballots and Voting Deadline

With respect to Classes of Claims and Equity Interests that are Impaired under the Plan, each holder of an Allowed Claim or Equity Interest in such a Class will receive: (i) instructions on obtaining copies, free of charge, of the Disclosure Statement, the order conditionally approving the Disclosure Statement, and the Plan; (ii) the notice of the Confirmation Hearing; and (iii) a Ballot for voting the acceptance or rejection of the Plan (unless deemed to reject the Plan).

Under the Plan, all holders of Claims against the Debtor in Class 1 and Class 3 (collectively, the "Voting Classes") are Impaired and entitled to vote on the Plan. Holders of Claims in Class 2, if any, are Unimpaired under the Plan and are deemed to have accepted the Plan. In addition, Holders of Equity Interests in Class 4 are not receiving or retaining any property under the Plan

on account of such Equity Interests and, therefore, are conclusively deemed to have rejected the Plan. Accordingly, holders of Claims in Class 2 and Equity Interests in Class 4 are not entitled to vote on the Plan. For a description of the Classes of Claims and Equity Interests and their treatment under the Plan, see Article III, "Treatment of Claims and Equity Interests and Summary of Distributions under the Plan."

Only persons who hold Claims or Equity Interests on the Record Date (as defined below) are entitled to receive a copy of this Disclosure Statement. Only persons who hold Claims in the Voting Classes on the Record Date are entitled to vote on whether to accept the Plan.

Ballots may be submitted through mail as further described in this Disclosure Statement. In order for a Ballot to be counted, it must be completed and received by **Jeffrey D. Goetz, Esq., Bradshaw Fowler, Proctor & Fairgrave, P.C., 801 Grand Avenue, Suite 3700, Des Moines, IA 50309 by no later than 4:00 p.m. (Central Standard Time) on a date to be set by the Court by separate notice**.

PLEASE CAREFULLY FOLLOW THE DIRECTIONS CONTAINED ON EACH BALLOT. ALL VOTES TO ACCEPT OR TO REJECT THE PLAN MUST BE CAST BY USING THE BALLOT ENCLOSED WITH THIS DISCLOSURE STATEMENT OR BY COMPLETING A BALLOT THROUGH ONLINE SUBMISSION PROCESS NOTED HEREIN.

By Mail or Electronic Mail:

Separate pre-addressed return envelopes have been supplied for the Ballots. Holders of Allowed Claims in the Voting Class should take care to use the proper pre-addressed envelope to ensure that Ballots are returned to the proper address. PLEASE CAREFULLY FOLLOW THE DIRECTIONS CONTAINED ON EACH ENCLOSED BALLOT. ALL VOTES TO ACCEPT OR TO REJECT THE PLAN MUST BE CAST BY USING THE BALLOT ENCLOSED WITH THIS DISCLOSURE STATEMENT.

| **By first class mail to:** |
|:---:|
| Jeffrey D. Goetz, Esq., AT0002832 |
| Krystal R. Mikkilineni, Esq., AT0011814 |
| Bradshaw, Fowler, Proctor & Fairgrave, P.C. |
| 801 Grand Avenue, Suite 3700 |
| Des Moines, IA  50309-8004 |
| 515/246-5880 |
| 515/246-5808 FAX |
| goetz.jeffrey@bradshawlaw.com |
| mikkilineni.krystal@bradshawlaw.com |
| General Reorganization Counsel for Debtor |
| **By electronic mail to:** |
| goetz.jeffrey@bradshawlaw.com |
| mikkilineni.krystal@bradshawlaw.com |

If you are a holder of a Claim in a Voting Class and (i) did not receive a Ballot, (ii) received a damaged Ballot, (iii) lost your Ballot, (iv) have any question about balloting procedures, or (v) wish to obtain a copy of the Plan or this Disclosure Statement, you may obtain such documents by contacting counsel for the Debtor.

Jeffrey D. Goetz, Esq., AT0002832
Krystal R. Mikkilineni, Esq., AT0011814
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com

General Reorganization Counsel for Debtor

And Debtor in Possession

ONLY PROPERLY COMPLETED AND SIGNED BALLOTS RECEIVED PRIOR TO THE VOTING DEADLINE WILL BE COUNTED FOR PURPOSES OF DETERMINING WHETHER EACH VOTING CLASS HAS ACCEPTED THE PLAN.  ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED ABSENT THE EXPRESS WRITTEN CONSENT OF THE PLAN PROPONENTS.  The Plan Proponents will prepare and file with the Bankruptcy Court a certification of the results of the balloting with respect to the Plan.

**Your vote on the Plan is important.  The Bankruptcy Code requires as a condition to confirmation of a plan that each class that is impaired under such plan vote to accept such plan, unless the "cram down" provisions of the Bankruptcy Code are satisfied.  See Section IV.D.4, "Cram Down -- Unfair Discrimination and Fair & Equitable Tests".**

### 2.      Voting Record Date

The record date is the close of business (Eastern time) on March 1, 2022 (the "Record Date").  Only holders of Claims in the Voting Classes as of the Record Date are entitled to vote to accept or reject the Plan.

### 3.      Incomplete Ballots

Any Ballot received that is not signed or does not indicate either an acceptance or a rejection of the Plan shall be an invalid Ballot and shall not be counted for purposes of determining acceptance or rejection of the Plan.

### 4.      Defects, Irregularities, Etc.

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be

determined by the Plan Proponents in their sole discretion, whose determination will be final and binding. Unless the Ballot being furnished is timely filed by the Voting Deadline, together with any other documents required by such Ballot, the Plan Proponents may reject such Ballot as invalid and, therefore, decline to use it in connection with seeking confirmation of the Plan by the Bankruptcy Court. In the event of a dispute with respect to a Ballot, any vote to accept or reject the Plan cast with respect to such Ballot will not be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise. The Plan Proponents reserve the right to reject any and all Ballots not in proper form. The Plan Proponents further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. The interpretation (including the Ballot and the respective instructions thereto) by the Plan Proponents, unless otherwise directed by the Bankruptcy Court, will be final and binding on all parties. Unless waived, any defects or irregularities in connection with delivery of a Ballot must be cured within such time as the Plan Proponents (or the Bankruptcy Court) determine. Neither the Plan Proponents nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failing to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. The Plan Proponents will state which ballots were rejected and the reasoning for such rejection on the Ballot Report to be filed with the Court prior to the Confirmation Hearing.

### 5.      Withdrawal of Ballot

All properly completed, valid Ballots will be irrevocable upon the Voting Deadline. Prior to the Voting Deadline, any holder of a Claim who has delivered a valid Ballot may withdraw its vote by delivering a written notice to the Plan Proponents so as to be received by the Plan Proponents before the Voting Deadline. To be valid, the notice of withdrawal must (a) describe the Claim to which it relates, (b) be signed by the party who signed the Ballot to be revoked, and (c) be received by the Plan Proponents by the Voting Deadline. Withdrawal of a Ballot can only be accomplished pursuant to the foregoing procedure. Prior to the Voting Deadline, any holder of a Claim who has delivered a valid Ballot may change its vote by delivering to Epiq a properly completed substitute Ballot so as to be received before the Voting Deadline. In the case where more than one timely, properly completed Ballot for the same Claim(s) is received by the Voting Deadline, only the Ballot that bears the latest date will be counted. After the Voting Deadline, a vote of the holder of a Claim may only be changed or withdrawn with the authorization of the Bankruptcy Court upon a showing of "cause" pursuant to Bankruptcy Rule 3018(a).

### D.      Confirmation Hearing

The Court has not yet approved the Disclosure Statement or confirmed the Plan. The Debtor has filed a motion asking the Court to exercise the authority it is given by Bankruptcy Code section 105(d)(2) to authorize the Debtor to submit the Plan to Creditors and interested parties on a conditional basis and to combine the hearing on final approval of the Disclosure Statement with the hearing on confirmation of the Plan.

As of the filing of the Plan, the Bankruptcy Court has not yet scheduled a combined hearing on approval of the Disclosure Statement and confirmation of the Plan. The Debtor has filed a motion asking the court to issue an "Order and Notice of Deadlines and Hearing on the Disclosure

Statement and Plan of Liquidation", a copy of which will be enclosed with the Plan when it is mailed to you.

The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing.   At the Confirmation Hearing, the Bankruptcy Court will (i) determine whether to approve the Disclosure Statement on a final basis, (ii) determine whether the requisite votes have been obtained for each of the Voting Classes, (iii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iv) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (v) determine whether to confirm the Plan.

Any objection to final approval of the Disclosure Statement or confirmation of the Plan must be made in writing and must specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector.   Any such objections must be filed and served upon the persons designated in the notice of the Confirmation Hearing, in the manner and by the deadline described therein.

### E.    Recommendation of Plan Proponents

The Plan Proponents recommend that holders of Claims entitled to vote on the Plan vote to **ACCEPT** the Plan.

## ARTICLE II:

## BACKGROUND OF THE DEBTOR

This section of the Disclosure Statement discusses the significant events in the Chapter 11 Case to date, including those leading up to the bankruptcy filings on the Petition Date.   Factual information contained herein has been obtained from court filings in the Chapter 11 Case. The Plan Proponents do not represent or warrant that the information contained in this Disclosure Statement is free from inaccuracy.   However, the Plan Proponents have attempted to present the information accurately and fairly.   Copies of all relevant court papers are on file with the Bankruptcy Court.

### A.    Description and History of the Debtor's Business

Cycle Force Group ("CFG") was started by its President/CEO, Nyle Nims, as Cycle Source Group in August 1998 in Yaphank, New York. In 2007, Cycle Source Group relocated from Yaphank, New York, to Ames, Iowa. Key staff were relocated from New York to Iowa, allowing the continuation of their employment. The move allowed Cycle Source Group to take advantage of lower costs of doing business, a centralized U.S. location to minimize transportation costs, and a highly desired workforce in a great university town. The recession of 2008 took a toll on business and profits, and in 2009 investors from Great Britain, who were existing customers of Cycle Source Group, invested with the company to reconstitute Cycle Source Group into Cycle Force Group, LLC. Cycle Force Group at its height employed around 50 people and annual sales ranged from 12 to 18 million.

Cycle Force Group is largely an importer of bicycles and accessories from China, Taiwan, and Europe with some domestic purchases. As such, it is subject to fluctuating costs of shipping and currency exchange rates. In 2014, Cycle Force Group, entered into an agreement with Royalbaby Bicycles, Beijing, China, to take over their sales of Royalbaby bicycles to Amazon.com, which were at the level of less than 20,000 per year. To achieve additional sales, Cycle Force Group agreed to warehouse their bicycles in our Ames facility. CFG paid the freight and duty for these bicycles supplied under consignment terms, and payment for these bicycles was made to Royalbaby 60 days after the sale. Over the next several years, CFG grew this brand to over 100,000 bikes on Amazon, resulting in its largest selling child's bike brand.

### B.    Circumstances Giving Rise to The Chapter 11 Case

In 2018, the Trump Administration enacted tariffs against Chinese-made goods, including almost all the bicycles and accessories CFG was importing. In August 2018, the U.S. federal government announced these new tariffs, with the plan for them to escalate to 25% on January 1, 2019. At this time, CFG's consignment supplier, Royalbaby Bicycles, decided to escalate the importation of bicycles to our warehouse to beat the January 1 tariff increase. CFG imported over 112 40' shipping containers during the ensuing short few months, representing over 80,000 bicycles, from Royalbaby at their direction. This volume far exceeded the capacity of CFG's 90,000 square foot facility. CFG located warehousing in the Des Moines area for these bicycles, paying on average nearly $30,000 per month in storage costs. CFG had invested over $1,250,000 in freight, duty, and 10% prevailing tariff, causing us to incur a deep financial strain.

After January 1, 2019, the U.S. government postponed the 25% tariff increase until March. This was in the middle of winter when sales are the slowest and CFG hoped that when the tariff went into effect, it would be in a strong position to raise prices to cover the additional costs and take advantage of the margin increase. Instead, the March increase did not go into effect. CFG was bleeding cash by holding the inventory, so it initiated a program to sell to Amazon.com at approximately the cost to recoup the investment. CFG had to give Amazon extended payment terms, and over time they purchased most of these goods at below cost. Unfortunately, the tariff finally did go into effect around July after CFG had liquidated the goods. CFG's gamble had failed. At this time, CFG owed Royalbaby Bicycles nearly $3 million for these goods and were using the proceeds of the sales to cover overhead with hopes that the 4th quarter sales would enable CFG to chip away at its debt. Royalbaby during this period rescinded CFG's Amazon sales agreement, and CFG lost the resulting profits from these sales. Due to the cash constraints, CFG was also forced to stretch our payments to other significant suppliers.

Covid-19 had also impacted CFG's business both positively and negatively. On the positive side, CFG sold goods it had on hand during the first six months of 2020 with ease. CFG's warehouse had been nearly emptied. On the negative side, CFG was unable to procure enough replacement goods in a timely fashion. Unfortunately, prices rose at a pace never before seen, and freight costs nearly doubled what CFG have paid in past years. Lead time was up to 500 days for products that typically taken 120 days.

8

### C.    Events During the Chapter 11 Case

#### 1.    Relevant Chapter 11 Filings

##### (a)    Retention of Professionals.

The Debtor retained various professionals in the Case with the Bankruptcy Court's approval, including: (i) Bradshaw, Fowler, Proctor, & Fairgrave, P.C. as General Reorganization Counsel; (ii) CR3 Partners as Financial Advisors; and (iii) Ravinia Capital, LLC, as Investment Banker.

##### (b)    Schedules & Statements.

The Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs were submitted and filed with the Bankruptcy Court on the Petition Date (the "Schedules and Statements"). The meeting of creditors under section 341(a) of the Bankruptcy Code was held telephonically on May 27, 2021, at which representatives of the Debtor were questioned by creditors, creditors' representatives and a representative from the Office of the United States Trustee.

Creditors are expressly referred to the Debtor's Schedules and Statements, on file in the Case, as amended, for the purpose of fully informing themselves as to the assets, liabilities and financial affairs of the Debtor as of the Petition Date. The Debtor reserves the right to amend its Schedules and Statements as appropriate and necessary.

##### (c)    Motion to Obtain Post-Petition Financing & to Use Cash Collateral.

On April 22, 2021, the Debtor filed a Motion for Order Approving Stipulation regarding Use of Cash Collateral and Providing Post Petition Liens. (Docket No. 15), and also filed a Stipulation Consenting to Use of Cash Collateral and Providing Post-Petition Liens. (Docket No. 16). On April 27, 2021, the Bankruptcy Court entered an interim order granting the interim use of cash collateral. (Docket No. 57). On June 9, 2021, Debtor, Great Western Bank, and the Official Committee of Unsecured Creditors filed an Amended Stipulation Consenting to Use of Cash Collateral and Providing Post-Petition Liens (Docket No. 120). The Court then entered an order on June 15, 2021, granting the use of cash collateral shall be governed by the Amended Stipulation, cancelling the final hearing on the use of cash collateral (Docket No. 125).

##### (d)    Motions to Sell the Debtor's Assets.

On October 1, 2021, the Debtor filed a Motion for Orders (I) Approving Bidding Procedures; (B) Scheduling the Time, Date, and Form of Notice for the Auction and Sale Hearing and (C) Approving Break-Up Fee; and (II)(A) Approving the Sale Free and Clear of Liens, Claims, Interests, & Encumbrances; and (B) Authorizing Assumption and Assignment or Rejection of Leases and Executory Contracts (the "Sale Motion"). (Docket No. 187). In the Sale Motion, the Debtor sought to sell substantially all of its assets (the "Assets") at Auction, pursuant to Bidding Procedures. On October 22, 2021, the Court entered an Order approving the Debtor's Bidding Procedures in Connection with the Auction and Sale of Assets and Scheduling an Auction and Sale Hearing; (B) Approving Assumption and Assignment Procedures; (C) Approving the Break-Up

Fee; and (D) Granting Other Related Relief (Docket No, 199) which provided for the Auction to be commenced by no later than December 13, 2021.

Other than the Stalking Horse Bid, no Qualified Bids for the Debtor's Assets were received by the Bidding Deadline (as defined in the Bidding Procedures). As such, an auction was not held, and on December 20, 2021, a sale hearing was held to approve the sale of the Assets to the Stalking Horse Bidder, Messingschlager, pursuant to the APA, which included the assumption of certain of the Debtor's consignment agreements. The Sale Order was entered on December 27, 2021 (Docket No. 241).

The Sale Order also approved certain releases and concessions among the Debtor, the Committee, and Great Western Bank. Specifically, the Sale Order approved the Closing Carve Out. The Closing Carve Out is intended to: (i) fully pay any unimpaired Class of Claims on the Effective Date in accordance with the Plan; (ii) fully pay any other unclassified Claims that are entitled to be paid in full on the Effective Date in accordance with the Plan; and (iii) fund the Liquidating Trust with $70,000.00 to provide for the administration of the Liquidating Trust and the pursuit of potential Causes of Action. Specifically, the Sale Order provided that the Closing Carve Out shall be applied in the following amounts for the following purposes:

(i)    $145,477.24 of the Closing Carve Out shall be used to satisfy valid and timely asserted Administrative Claims, but specifically excluding Professional Fee Claims;

(ii)    $12,000 of the Closing Carve Out shall be used to satisfy fees of the United States Trustee arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code with respect to this chapter 11 case; provided, however, if such fees exceed this amount, the excess of such fees shall be paid from the assets of the Liquidating Trust;

(iii)    $70,000.00 of the Closing Carve Out shall be reserved to fund the Liquidating Trust in connection with this Plan; and

(iv) $200,393.00 of the Closing Carve Out shall be used to satisfy the Professional Fee Claims. Such amount includes up to $5,000.00 for the Committee in assisting the Debtor with the confirmation of a Plan of Liquidation.

Additionally, the Sale Order provided that Great Western Bank shall waive and release all debts, obligations, promises, controversies, actions, suits, causes of action, damages, remedies, expenses, demands and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, in law, equity, or otherwise, against the Debtor and/or the Debtor's estate including, without limitation, any secured or unsecured claims, including any unsecured deficiency claims. Such release is a compromise of competing interests and controversies, functioning as a full and final release of all claims relating to the Debtor or its estate.

After entry of the Sale Order and closing of the sale transaction, Great Western Bank does not hold a Claim against the Debtor's estate, and there are no other secured Claims of consignment vendors against the Debtor's estate.

### 2.  Committee Participation in the Case

Under section 1102(a) of the Bankruptcy Code, the U.S. Trustee appointed the Committee on May 7, 2021.  The Committee members are: Sinosure, c/o Creditors Adjustment Bureau.

The Committee retained Frost Brown Todd, LLC as its lead legal counsel, and Cutler Law Firm, P.C. as its local legal counsel.

Since its appointment, the Committee has taken an active role in the Debtor's Case. Consistent with its duties under section 1103 of the Bankruptcy Code, the Committee: (i) consulted with the Debtor on the administration of the Case; (ii) investigated the acts, conduct, assets, liabilities and financial condition of the Debtor, the operation of its business and matters relevant to the Case; and (iii) undertook considerable efforts to ensure a vibrant and successful sale that would allow the Debtor to continue operating and conducting business with its vendors and that provided for the retention of the vast majority of the Debtor's employees.

## ARTICLE III
## <u>OVERVIEW OF THE PLAN</u>

### A.  Introduction

Set forth in this Section is a description of the basic terms of the Plan.  This description is not intended, nor should it be relied upon, as a substitute for a careful review of the actual terms of the Plan, a complete copy of which is attached hereto as <u>Exhibit A</u>.

### B.  Classification of Claims

Section 1122 of the Bankruptcy Code provides that, except for certain claims classified for administrative convenience, a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  The Bankruptcy Code also requires that a plan provide the same treatment for each claim of a particular class unless the holder of a particular claim agrees to a less favorable treatment of its claim.  The Plan Proponents believe that the Plan complies with this standard.  The Plan divides Claims against and Equity Interests in the Debtor into the following Classes:

**Class 1** shall consist of all Other Priority Claims.

**Class 2** shall consist of all Secured Claims.

**Class 3** shall consist of all General Unsecured Claims.

**Class 4** shall consist of all Equity Interests.

For a description of the treatment of Claims and Equity Interests and a summary of distributions under the Plan, see Section III.C, "Treatment of Claims and Equity Interests and Summary of Distributions under the Plan."

A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes. A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Equity Interest in that Class and has not been paid in full, released or otherwise satisfied prior to the Effective Date.

### C.       Treatment of Claims and Equity Interests and Summary of Distributions Under the Plan

The Confirmation Order shall provide for the transfer of the Debtor's assets to the Liquidating Trust. Pursuant to the terms of the Plan, the Liquidating Trustee will, among other things, calculate and pay all distributions or permitted under the Plan.

### 1.       Administrative Claims

In full satisfaction, and settlement of and in exchange for each Allowed Administrative Claim, except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Debtor or the Liquidating Trustee, as applicable, to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of (i) the Effective Date or as soon thereafter as is practicable if due on or before that date and unpaid on the Effective Date, (ii) as soon as practicable after the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Administrative Claim and the Liquidating Trustee.

Any Holder of an Administrative Claim shall File an application by the Administrative Claims Bar Date for allowance of such Administrative Claim. Any Administrative Claim that is not filed by the Administrative Claims Bar Date shall be Disallowed. In addition, any Holder of an Administrative Claim that does not file an application for allowance of such Administrative Claim by the Administrative Claims Bar Date shall be forever barred from pursuing that Administrative Claim against the Debtor, the Estate, the Liquidating Trust or the Liquidating Trust Assets.

### 2.       Professional Fee Claims

Any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim on account of Professional Fees incurred from the Petition Date through and including the Effective Date (i) shall, no later than thirty (30) days after the Effective Date, File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date, and (ii) shall receive, as soon as reasonably practicable after such Claim is Allowed, in full settlement, and satisfaction of, and in exchange for, such Allowed Professional Fee Claims, Cash in the amount of the Allowed Professional Fee Claims.

The Liquidating Trustee may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services rendered to them after the Effective Date.

### 3.    Priority Tax Claims

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed by the Liquidating Trustee and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, as soon as reasonably practicable after such Claim is Allowed, in full settlement, and satisfaction of, and in exchange for, such Priority Tax Claims, Cash in the amount of the Priority Tax Claims

### 4.    Summary of Classification and Treatment of Holders of Allowed Claims and Equity Interests that are Placed in Classes

The following table sets forth a brief summary of the classification and treatment of Claims and Equity Interests and the estimated distributions to the holders of Allowed Claims that are placed in Classes under the Plan.  The information set forth in the tables is for convenience of reference only.  Each holder of a Claim or Equity Interest should refer to Article III of the Plan, "Treatment of Claims and Equity Interests," for a full understanding of the classification and treatment of Claims and Equity Interests provided under the Plan.  The estimates set forth in the table may differ from actual distributions due to, among other things, variations in the amount of Allowed Claims, the existence and resolution of Disputed Claims and certain risk factors potentially impacting recoveries under the Plan, including those described in Article V below. Unless otherwise noted, these estimates are as of January 1, 2022.

| Classification | Impairment/ Voting | Estimated Amount of Claims | Estimated Return | Treatment |
|---|---|---|---|---|
| Class 1 – Other Priority Claims | Impaired/entitled to vote | $0.00 | 100% | Except to the extent that an Allowed Priority Claim has been paid prior to the Effective Date or unless otherwise agreed by the Liquidating Trustee and the Holder of an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full, in Cash, through quarterly installment payments made by the Liquidating Trustee beginning on December 1, 2022 and ending on the earlier of (a) payment in full of the Allowed Other Priority Claim, (b) five years after the date of the order for relief under section 301, 302, or 303 of the Bankruptcy Code. |
| Class 2 – Secured Claims | Unimpaired/deemed to accept/cannot vote | $0.00 | 100% | To the extent of the Debtor's right, title or interest to the Assets securing such Secured Claims, a Holder of an Allowed Secured Claim shall receive, at the election of the Liquidating Trustee (a) Cash in the amount of such Holder's Allowed Secured Claim in one payment on the later of the Effective Date or as soon thereafter as is practicable or the date such Claim becomes an Allowed Claim by Final Order (or as soon as reasonably practicable thereafter) or (b) such Holder shall receive its Collateral on the Effective Date or as soon thereafter as is practicable.   Any deficiency amount related to a Class 2 Claim shall be treated as a Class 3 Allowed General Unsecured Claim. Alternatively, such Holder shall receive such other less favorable treatment as the Debtor and such Holder agree upon in writing. For the avoidance of doubt and for purposes of clarification, Great Western Bank does not hold a Claim |

| | | | | against the Debtor in Class 2 or any other Class of Claims pursuant to the resolutions reached in the Sale Order as described in this Disclosure Statement. Furthermore, no consignment vendor of the Debtor holds any remaining Class 2 Claim against the Debtor. |
|---|---|---|---|---|
| Class 3 – General Unsecured Claims | Impaired/entitled to vote | $6 million | 1%-20%, subject to the outcome of litigation brought by the Liquidating Trustee. | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment and in exchange for each Class 3 Claim, a Holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of any remaining Liquidating Trust Assets after providing for the payment in full of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims. |
| Class 4 – Equity Interests | Impaired/deemed to reject/cannot vote | $0.00 | N/A | Class 4 Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect. |

Under the Bankruptcy Code, only holders of Claims in Classes that are Impaired are entitled to vote to accept or reject the Plan. As noted above, the holders of Claims in Class 3 are Impaired and entitled to vote to accept or reject the Plan.

Holders of Class 1 Claims and Class 2 Claims are Unimpaired by the Plan. Under § 1126(f) of the Bankruptcy Code, Holders of Class 1 Claims and Class 2 Claims are conclusively deemed to have accepted the Plan, and the votes of such holders will not be solicited. Holders of Equity Interests (Class 4) are Impaired but are not entitled to receive or retain any property under the Plan. Accordingly, holders of Equity Interests in Class 4 are deemed to have rejected the Plan and their votes will not be solicited.

### 5.      Reservation of Rights Regarding Claims

Except as otherwise explicitly provided in the Plan, nothing herein shall affect the Debtor's or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

### 6. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents reserve the right to request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

### D. Distribution Provisions

### 1. Calculation of Amounts to be Distributed

Each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtor or the Liquidating Trustee, on behalf of the Debtor or the Liquidating Trust, as applicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VIII of the Plan. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

### 2. Delivery of Distributions and Undeliverable or Unclaimed Distributions

#### (a) Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and the Debtor or the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed: (i) on the Claims Register as of the close of business on the Distribution Record Date; or (ii) on the Debtor's Schedules (as amended) without a designation of contingent, unliquidated, or disputed.

#### (b) Delivery of Distributions in General

##### (1) Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the Liquidating Trustee's reasonable discretion, be deemed to have been made by the Liquidating Trustee on the Effective Date, unless the Liquidating Trustee and the applicable Holder of such Claim agree otherwise.

(2)    Special Rules for Distributions to Holders of Disputed
Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtor or the Liquidating Trustee, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

(3)    Distributions

On and after the Effective Date, the Liquidating Trustee shall make the Distributions required to be made on account of Allowed Claims under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trustee in the Distribution Reserve Account and distributed on the next Distribution Date that occurs after such Claim is Allowed in accordance with the Plan and the Liquidating Trust Agreement.  In accordance with the Plan, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.

(c)    *Minimum; De Minimis Distributions*

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $2,000, in which case such Distributions shall be deferred to the next Distribution date, (ii) if the amount to be distributed to that Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) the amount of the final Distribution to any such Holder is less than $100.00, in which case such Distribution shall revert to the Liquidating Trust for distribution to other Holders of Allowed Claims.

(d)    *Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Debtor or the Liquidating Trustee, as applicable, has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder without accrual of interest during that time; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 120 days from the date the initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in

accordance with the Plan and the Claim of any Holder to such property or interest in property shall be settled, compromised, and forever barred.

### (e)    Charitable Contributions

After the final Distributions have been made in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash is less than $3,000, the Liquidating Trustee may donate such amount to one or more charities or philanthropic endeavors as chosen by the Liquidating Trustee; provided that such philanthropic endeavors shall be non-profit.

### (f)    Manner of Payment Pursuant to the Plan

Cash payments under the Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtor or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtor or the Liquidating Trustee, as applicable. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtor or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

### 3.    Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Debtor, or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtor and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan and Liquidating Trust Agreement shall be subject to any such withholding and reporting requirements. Each Creditor is required to provide the Liquidating Trustee with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution. If an executed Form W-9 is not provided, the Liquidating Trustee shall mail a written notice to such creditor reminding them of the requirement to provide an executed Form W-9 and such written notice shall provide a 90-day deadline to provide the executed Form W-9. If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W-9 or similar form within 90 days of written request, said Creditor shall be deemed to have forfeited their Distribution and the Claim of such Creditor shall be forever barred.

### 4. Claims Paid or Payable to Third Parties

#### (a) *Claims Paid by Third Parties; Recourse to Collateral*

The Debtor or the Liquidating Trustee, as applicable, shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trust, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

#### (b) *Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

#### (c) *Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, and the rights of the Debtor under any such insurance policies shall vest in the Liquidating Trustee as of the Effective Date.

### E. Means for Implementation of the Plan

### 1. Corporate Action

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtor, or any other Entity or Person or further Order of the Bankruptcy Court. All matters provided for in the Plan involving the structure of the Debtor, and any action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Estate.

The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

### 2.      Dissolution and Boards of the Debtor and Officers

As of the Effective Date: (i) the existing boards of directors and/or boards of managers of the Debtor shall be dissolved without any further action required on the part of the Debtor or the Debtor's officers, directors, general partners, limited partners, shareholders, and members and any all remaining officers, managers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the shareholders, general partners, limited partners, or members of such Debtor, or the officers and directors of such Debtor; and (ii) all actions or decisions that would otherwise be made by such directors and/or managers under otherwise applicable law may be taken and made by the Liquidating Trustee. Notwithstanding anything contained in this section, all Claims and Causes of Action against any director or officer of the Debtor, whether current or former, are hereby preserved.

On the Effective Date, all Professionals shall be deemed to have completed their services unless they are expressly retained by the Liquidating Trustee, but they shall be able to file final applications for Professional Fee Claims through the Effective Date as provided for in the Plan.

### 3.      Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments (including deeds, leases, assignments or other instruments of conveyance), applications for permit transfer or renewal or other regulatory authorizations, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any Court Order authorizing the sale or other transfer of the Debtor's assets, including, without limitation, the Sale Order, without the need for any further Bankruptcy Court Order, approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### 4.      Preservation of Rights of Action

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order (including, for the avoidance of doubt, any claims or Causes of Action released pursuant to the Sale Order), the Debtor reserves and, as of the Effective Date, assigns to the Liquidating Trust, any and all Causes of Action, including without limitation any actions specifically enumerated in the Disclosure Statement. On and after the Effective Date, the Liquidating Trustee may pursue such Causes of Action in accordance with the Liquidating Trust Agreement.

Subject in all respects to Article XI of the Plan, the Debtor shall not release any Avoidance Actions, and the Liquidating Trustee shall be authorized and empowered to enforce any such Avoidance Actions on and after the Effective Date in accordance with the terms of the Plan and the Liquidating Trust Agreement.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Liquidating Trustee will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

The Debtor reserves the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. Except as otherwise provided by the Liquidating Trust Agreement, prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court to the fullest extent permitted by section 1123 of the Bankruptcy Code and all other applicable law.

## 5.      Closing of Debtor's Case

When all Assets contributed to the Liquidating Trust in accordance with Section 5.02 above and the Liquidating Trust Agreement have been liquidated and converted into Cash (other than those assets previously abandoned by the Debtor or abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Liquidating Trust Agreement and this Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms of this Plan.

## 6.      Operations of the Debtor Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to manage its estate as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

## 7.      Dissolution of the Creditors' Committee

On the Effective Date the Creditors' Committee shall be deemed dissolved and subject to Section 11.04 of the Plan, its members shall be deemed released of their duties, responsibilities and obligations, provided, however, that the Creditors' Committee shall remain in existence with respect to (a) any Professional Fee Claims; and (b) any appeals of the Confirmation Order or Professional Fee Claims.

## 8.      Destruction of Books and Records

The Liquidating Trustee has the right to seek authority to destroy or abandon any books and records of the Debtor constituting Liquidating Trust Assets. The Liquidating Trustee,

however, shall not destroy or abandon any such books and records without obtaining prior approval of the Bankruptcy Court.

### G.      Conditions Precedent to Effectiveness of Plan

#### 1.      Conditions to Effective Date

##### *(a)      Conditions Precedent to Effective Date of the Plan*

The Plan shall not become effective unless and until the Effective Date occurs.  The Effective Date is subject to the following conditions precedent: (i) the Confirmation Order shall become a Final Order; (ii) all documents useful and necessary to effectuating the Plan are executed and delivered to the parties hereto and all conditions to the effectiveness of such documents have been met; and (iii) the Debtor has received all authorizations, consents, approvals, rulings, opinions, and documents that are necessary to implement the Plan.

##### *(b)      Waiver of Conditions*

The conditions precedent to the Effective Date may be waived, in whole or in part, by the Plan Proponents, at any time, without notice, and without an order from the Bankruptcy Court or any other affirmative action other than proceeding to consummate the Plan.  The failure of the Debtor to exercise any of foregoing rights shall not be deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be asserted at any time.

#### 2.      Notice of Occurrence of the Effective Date

The Debtor or Liquidating Trustee shall file a notice of the occurrence of the Effective Date within five (5) Business Days thereafter; provided, however, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

#### 3.      Consequences of Non-Occurrence of Effective Date

If the Confirmation Order is vacated prior to the Effective Date, (a) the Plan shall be null and void in all respects; and (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; provided, however, that for avoidance of doubt, the Settlement Agreement and the Lender Settlement Order shall not be impacted.

#### 4.      Substantial Consummation

Substantial consummation of the Plan shall be deemed to occur on the Effective Date of the Liquidating Trust Agreement and upon transfer of the Assets to the Liquidating Trust.

### H.      Settlement, Releases, Injunctions and Exculpations

#### 1.      Debtor will not receive Discharge

22

Notwithstanding anything to the contrary in the Plan, the Debtor shall not receive a discharge under the Plan.

### 2.      No Releases by Debtor

Notwithstanding anything to the contrary in the Plan, the Debtor shall not release (a) any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date; or (b) any and all Avoidance Actions against any Person; provided that nothing in the Plan shall limit the releases provided by the Debtor under the Sale Order.

### 3.      Exculpation and Limitation of Liability

Notwithstanding anything to the contrary herein, the Debtor, its Professionals retained in the Chapter 11 Case, its officers, directors, managers, or employees existing as of the Petition Date, the Creditors' Committee, individual members of the Creditors' Committee, and Professionals for the Creditors' Committee shall not have or incur any liability to any holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Case, formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, the Sale Order and the transaction approved thereby, consummating the Plan, the Sale Order and the transaction approved thereby, or the administration of the Plan or the property to be distributed under the Plan, unless it shall be determined in a Final Order to have constituted willful misconduct or gross negligence; provided, however, that for avoidance of doubt, nothing herein shall provide any exculpation or release any holder of an Equity Interest or any other current or former officer, director, manager, or employee of the Debtor for conduct occurring prior to the Petition Date.

### 4.      Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION H.3 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION H); OR (3) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR

IN CONNECTION WITH OR WITH RESPECT TO ANY SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF (UNLESS PREVIOUSLY ASSERTED) OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

### 5.    Setoffs

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may set off against any Allowed Claim or Equity Interest

on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, and Causes of Action of any nature that the Debtor's Estate may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under section 502(d) of the Bankruptcy Code, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtor or the Liquidating Trustee, as applicable, of any such claims, rights, and Causes of Action that the Debtor's Estate may possess against such Holder, provided, further, that the Holder of a Claim or Equity Interest may contest such set off by the Debtor or the Liquidating Trustee, as applicable, in the Bankruptcy Court or any other court of competent jurisdiction. In no event shall any Holder of Claims or Equity Interests be entitled to set off any Claim or Equity Interest against any claim, right, or Cause of Action of the Debtor's Estate unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtor's or the Liquidating Trustee's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

### 8.      Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays provided for in this Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### 9.

### I.      The Liquidating Trust

### 1.      Sources of Consideration for Plan Distributions

Cash and the other Liquidating Trust Assets shall be used to fund the Distributions to Holders of Allowed Claims against the Debtor in accordance with the treatment of such Claims provided in the Plan.

### 2.      The Liquidating Trust

On or prior to the Effective Date, the Debtor, on its own behalf and on the Estate's behalf and on behalf of the Holders of Claims that are to be satisfied with post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement.  On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtor will transfer to the Liquidating Trust all of their rights, title, and interests in all of the Liquidating Trust Assets.

The Liquidating Trust shall be established solely for the purpose of holding and administering the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Liquidating Trustee shall hold the Liquidating Trust Assets pursuant to the terms of the Plan and the Liquidating Trust Agreement by engaging in the following activities: (a) pursuing the Causes of Action retained by the Liquidating Trust; (b) making all required Distributions to the beneficiaries as provided for under the Liquidating Trust Agreement; and (c) taking other actions as may be necessary to effectuate any of the foregoing. The Liquidating Trust will not hold itself out as an investment company and will not conduct a trade or business. At no time shall the Liquidating Trust control or operate the business of the Debtor or any assets of the Debtor other than the Liquidating Trust Assets.

### 3.     Appointment and Termination of the Liquidating Trustee

The Liquidating Trustee shall be Province, LLC. The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective on the Effective Date.

In accordance with the Liquidating Trust Agreement, the Liquidating Trust shall continue for a term terminating on the earlier to occur of (a) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and the Liquidating Trust Agreement, (b) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets or retained Causes of Action are not likely to yield sufficient additional proceeds to justify further pursuit, (c) all Distributions required to be made by the Liquidating Trustee under the Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed two (2) years, together with any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

A party in interest may bring a motion on proper notice to the Liquidating Trustee and its counsel for removal of the Liquidating Trustee for, among other reasons: (1) fraud, gross negligence, or willful misconduct in connection with the affairs of the Liquidating Trust, (2) for such physical or mental disability as substantially prevents the Liquidating Trustee from performing the duties of Liquidating Trustee in accordance with this Plan or the Liquidating Trust Agreement, or (3) for cause, which shall include a breach of fiduciary duty or an unresolved conflict of interest.

### 4.     Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest

The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Liquidating Trust Agreement intend

that the Liquidating Trustee take such action as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company.

For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer by each Debtor of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the beneficiaries in full satisfaction of the beneficiaries' claims against the Debtor and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Distribution Reserve Account (as defined in the Liquidating Trust Agreement), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for such beneficiaries interest in the Liquidating Trust Assets. Accordingly, the Liquidating Trust beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to the Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section of the Plan. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative beneficial interests in the Liquidating Trust.

Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Liquidating Trustee may timely elect to (i) treat any portion of the Liquidating Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties and the Liquidating Trustee shall report for United States federal, state, and local income tax purposes consistently with the foregoing.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trust shall file all income tax returns with respect to any income attributable to the Liquidating Trust Assets and shall pay any federal, state and local income taxes attributable to the Liquidating Trust Assets, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trust may request an expedited determination of Taxes of the Debtor or of the Liquidating Trust, including the Distribution Reserve Account, under Bankruptcy Code

section 505(b) for all returns filed for, or on behalf of, the Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtor and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

## 5.      Responsibilities of Liquidating Trustee

The responsibilities of the Liquidating Trustee, which shall be discharged in accordance with the terms of the Plan and the Liquidating Trust Agreement, shall include, but shall not be limited to, the following:

(a)      Administering, liquidating, and monetizing the Liquidating Trust Assets;

(b)      Objecting to and resolving Claims and Disputed Claims;

(c)      Investigating, pursuing, litigating, settling, or abandoning any Causes of Action which constitute Liquidating Trust Assets, all of which may be done without further approval of the Bankruptcy Court (unless the Liquidating Trustee, in its sole discretion, seeks such approval);

(d)      Making Distributions in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(e)      Preparing and filing post-Effective Date operating reports;

(f)      Filing appropriate tax returns in the exercise of its fiduciary obligations;

(g)      Retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations; and

(h)      Taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust.

To the extent necessary or appropriate, the Liquidating Trustee shall be deemed to be a judicial substitute for Causes of Action assigned to the Liquidating Trust, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

## 6.      Costs and Expenses of the Liquidating Trust

To the extent the Liquidating Trust Assets are insufficient to pay the expenses of the Liquidating Trust and the Liquidating Trustee, then such expenses shall be reimbursed from the

first dollars out of any proceeds that come into the Liquidating Trust before any Distribution to the beneficiaries of the Liquidating Trust; provided, however, the Liquidating Trust expenses shall be subject to the procedures and review set forth in the Liquidating Trust Agreement.

### 7. Fiduciary Duties of the Liquidating Trustee

Pursuant to the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of the beneficiaries of the Liquidating Trust.

### 8. Liability, Indemnification of the Liquidating Trust Protected Parties

The Liquidating Trust Protected Parties shall not be liable for any act or omission of any other Liquidating Trust Protected Parties or the member, designee, agent, or representative of such Liquidating Trust Protected Parties, nor shall such Liquidating Trust Protected Parties be liable for any act or omission taken or not taken in their capacity as Liquidating Trust Parties other than for specific acts or omissions resulting from such Liquidating Trust Protected Parties' willful misconduct, gross negligence or fraud. The Liquidating Trustee may, in connection with the performance of his, her, or its functions, and in his, her, or its sole and absolute discretion, consult with his, her, or its attorneys, accountants, financial advisors, and agents. Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with his, her, or its attorneys, accountants, financial advisors, and agents, and his, her, or its determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Protected Parties, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Protected Parties from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements, and related expenses), which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that such indemnification shall be limited to the Liquidating Trust Assets and provided further that no such indemnification will be made to such Liquidating Trust Protected Parties for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

### 9. Full and Final Satisfaction Against Liquidating Trust

On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Liquidating Trust Agreement. All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in exchange for all Claims or Equity Interests against the Liquidating Trust.

### J. Treatment of Executory Contracts and Unexpired Leases

### 1. Executory Contracts and Unexpired Leases

Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting all Executory Contracts and Unexpired Leases to which the Debtor is a party on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Petition Date; (c) is part of the Acquired Assets, as defined in the Sale Order, or (d) is the subject of a pending motion to assume or reject on the Confirmation Date.  The Confirmation Order shall not be deemed to reject any insurance policy in which the Debtor is a beneficiary.  No order confirming this Plan or any Amendment thereto is intended to or shall constitute a modification of the terms of the Sale Order or any other order of the Bankruptcy Court authorizing the assumption or rejection of Executory Contracts or Unexpired Leases.

**2.      Claims Based on the Rejection of Executory Contracts and Unexpired Leases**

The deadline for filing a Proof of Claim based upon the rejection of any Executory Contract or Unexpired Lease rejected under the Plan shall be 30 days after the Effective Date; provided, however, that nothing in this Section 7.02 shall extend any Bar Date applicable to an Executory Contract or Unexpired Lease that expired before Confirmation.

**K.      Procedures for Resolving Contingent, Unliquidated, and Disputed Claims and Equity Interests**

**1.      Resolution of Disputed Claims**

*(a)      Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

*(b)      Prosecution of Objections to Claims or Equity Interests*

Subject in all respects to the provisions in the Plan, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtor, and on or after the Effective Date, the Liquidating Trustee shall have the authority to File objections to Claims or Equity Interests, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtor's Estate to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise.  For the avoidance of doubt the U.S. Trustee's right to object to Claims, including Professional Fee Claims and Claims asserted under section 503(b)(3) and (b)(4) of the Bankruptcy Code, is reserved.  Any objections to Claims or

Equity Interests shall be Filed on or before the Claims Objection Bar Date, as such date may be extended pursuant to the Plan.

Subject to the foregoing sentence, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement and (b) shall succeed to the Debtor's rights with respect to any objections Filed by the Debtor that remain pending as of the Effective Date. From and after the Effective Date, the Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Claims Estimation*

On and after the Effective Date, the Liquidating Trustee, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Debtor or the Liquidating Trustee, as applicable, may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

(d)    *Expungement or Adjustment to Claims Without Objection*

31

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtor or the Liquidating Trustee, and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtor or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 2. Distribution Reserve Account

Distributions of Liquidating Trust Assets with respect to Disputed Claims shall be deposited into the Distribution Reserve Account in accordance with the terms of the Plan and the Liquidating Trust Agreement. The amount deposited shall be determined by the Liquidating Trustee. The Liquidating Trustee may invest any Cash that is withheld in the Distribution Reserve Account in accordance with the Liquidating Trust Agreement. Notwithstanding any such investment and the addition to Liquidating Trust Assets of any income earned in respect thereof, in the event such Claim ultimately becomes an Allowed Claim, nothing in the Plan or Liquidating Trust Agreement shall be deemed to entitle the holder of a Disputed Claim to postpetition or post-Effective Date interest on such Claim.

### 3. Distributions After Allowance

On the next Distribution Date after the date when the order or judgment of the Bankruptcy Court allowing all or part of a Disputed Claim becomes a Final Order, the Liquidating Trustee, or such other disbursing agent, will (1) distribute to the holder of such Claim any property in the Distribution Reserve Account that would have been distributed to such beneficiary on the Distribution Dates on which distributions previously were made to beneficiaries if the Claim in issue had been an Allowed Claim (in whole or in part, as applicable) on such earlier Distribution Dates; and (2) distribute any remaining property held in the Distribution Reserve Account on account of any resolved Disputed Claim in accordance with the Plan and the Liquidating Trust Agreement.

After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Distribution Reserve Account will be distributed in accordance with the Plan and the Trust Agreement.

### 4. Disallowance of Claims

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtor or the Liquidating Trustee (or the Notice and Claims Agent at, as applicable, the Debtor's or the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtor or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 5. Amendments

After the Bar Date, as applicable, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that, even with such Bankruptcy Court authorization, a Claim may be amended by the Holder of such Claim solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

### 6. No Interest

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed-to by, as applicable, the Debtor or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition Date on account of any Claim. Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.  Notwithstanding the foregoing, if Holders of Allowed General Unsecured Claims receive a distribution of 100%, they shall be paid interest from the Petition Date until the date their Allowed General Unsecured Claims are paid in full at the federal judgment interest rate that was in effect on the Petition Date.

### L. Modifications and Amendments

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, subject to the limitations contained in the Plan, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan; underlined, however, that any provision of the Plan impacting or affecting the DIP Lenders or the Prepetition Lenders other than in accordance with the terms of the Settlement Agreement shall be in form and substance acceptable to the DIP Lenders or Prepetition Lenders, as applicable. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with section 1127 of the Bankruptcy Code and applicable law.

### M. Substitution of the Liquidating Trust for the Debtor

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtor in all pending matters including but not limited to (i) motions, contested matters and adversary proceeding pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court

without the need or requirement for the Liquidating Trustee to file motions or substitutions of parties and counsel.

## ARTICLE IV
## CONFIRMATION OF THE PLAN

### A.    Introduction

The Bankruptcy Code requires a bankruptcy court to determine whether a plan complies with the technical requirements of chapter 11 of the Bankruptcy Code before such plan can be confirmed.  It requires further that a disclosure statement concerning such plan is adequate and includes information concerning all payments made or promised by the plan proponent in connection with the plan.

If the Plan is confirmed, the Plan Proponents expect the Effective Date to occur no more than fifteen (15) days after the Confirmation Date.

To confirm the Plan, the Bankruptcy Court must find that the requirements of the Bankruptcy Code have been met.  Thus, even if the requisite vote is achieved for each of the Classes entitled to vote on the Plan, the Bankruptcy Court must make independent findings respecting the Plan's conformity with the requirements of the Bankruptcy Code before it may confirm the Plan.  Some of these statutory requirements are discussed below.

### B.    Voting

Pursuant to the Bankruptcy Code, only holders of Allowed Claims that are Impaired under the terms and provisions of the Plan and that receive distributions thereunder are entitled to vote for acceptance or rejection of the Plan.  A holder of a Claim or Equity Interest whose legal, equitable, or contractual rights are altered, modified or changed by the proposed treatment under the Plan or whose treatment under the Plan is not provided for in section 1124 of the Bankruptcy Code is considered Impaired.  Pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims that are Unimpaired are conclusively presumed to have accepted the Plan and are not entitled to vote.

Votes on the Plan will be counted only with respect of Allowed Claims that (i) belong to a Class entitled to vote on the Plan, or (ii) are otherwise permitted by the Bankruptcy Code to vote.

### C.    Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of claims of that class that actually vote.  Acceptance of a plan need only be solicited from holders of claims or interests whose claims or interests are impaired and not deemed to have rejected the Plan.  Except in the context of a "cram down" pursuant to section 1129(b) of the Bankruptcy Code, as a condition to confirmation of a plan the Bankruptcy Code requires that, with certain exceptions, each class of impaired claims or interests accepts the plan.

In the event the requisite vote is not obtained as to a particular Class or Classes of Claims or Equity Interests, the Plan Proponents have the right, assuming that at least one Class of Impaired Claims or Equity Interests has accepted the Plan, to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.  Section 1129(b) permits confirmation of a plan notwithstanding rejection by one or more classes of impaired claims or interests if the bankruptcy court finds that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the rejecting class or classes.  This procedure is commonly referred to in bankruptcy parlance as "cram down."  As such, if any Class entitled to vote on the Plan votes to reject the Plan, the Plan Proponents will request confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

### D.    Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied with respect to the Plan.  Section 1129(a) of the Bankruptcy Code requires that, among other things, for a plan to be confirmed:

- The plan satisfies the applicable provisions of the Bankruptcy Code.

- The proponent of the plan has complied with the applicable provisions of the Bankruptcy Code.

- The plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised by the proponent under the plan for services or for costs and expenses in, or in connection with, the chapter 11 case, or in connection with the plan and incident to the case, has been disclosed to the bankruptcy court, and any such payment made before the confirmation of the plan is reasonable, or if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the bankruptcy court as reasonable.

- The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or trustee of the debtor, an affiliate of the debtor participating in the plan with the debtor, or a successor to the debtor under the plan.  The appointment to, or continuance in, such office of such individual must be consistent with the interests of creditors and with public policy and the proponent must have disclosed the identity of any insider that the reorganized debtor will employ or retain, and the nature of any compensation for such insider.

- With respect to each class of impaired claims or interests, either each holder of a claim or interest in such class has accepted the plan, or will receive or retain under the plan on account of such claims or interests, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- Each class of claims has either accepted the plan or is not impaired under the plan, subject to Section VI.D.4, "Cram Down -- Unfair Discrimination and Fair & Equitable Tests."

35

- Except to the extent that the holder of a claim has agreed to a different treatment of such claim, the plan provides that allowed administrative claims and priority claims (other than tax claims) will be paid in full on the effective date and that priority tax claims will receive on account of such claims deferred cash payments, over a period not exceeding five (5) years after the order for relief, of a value, as of the effective date, equal to the allowed amount of such claim.

- If a class of claims is impaired, at least one (1) impaired class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim in such class.

- Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

Subject to receiving the requisite votes in accordance with section 1129(a)(8) of the Bankruptcy Code and the "cram down" of Impaired Classes voting against the Plan or not receiving any distribution under the Plan, the Plan Proponents believe that (i) the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code, (ii) the Plan Proponents have complied or will have complied with all of the requirements of chapter 11, and (iii) the Plan has been proposed in good faith.

## 1.     Best Interests of Holders of Claims and Equity Interests

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each Holder of a Claim in such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor liquidated under chapter 7 of the Bankruptcy Code.

In chapter 7 liquidation case, unsecured creditors and equity interest holders of a debtor are paid from available assets generally in the following order, with no lower class receiving any payments until all amounts due to senior classes have been paid fully or payment has been provided for:

- Secured creditors (to the extent of the value of their collateral).
- Priority creditors.
- Unsecured creditors.
- Debt expressly subordinated by its terms or by order of the Bankruptcy Court.
- Equity interest holders.

The Plan is a liquidating plan.  Thus, whether by the Liquidating Trust, or a Chapter 7 trustee, the Debtor's Estate assets will be liquidated.  Accordingly, there is no reorganization value to be calculated, or distribution scenarios related thereto.  In addition, the activities of the Liquidating Trust and the Liquidating Trustee after the Effective Date are the same ones that would be pursued by a Chapter 7 trustee.  However, a Chapter 7 trustee may seek to charge statutory fees

of up to 3% of disbursements above $1 million (and higher amounts for disbursements below $1 million), resulting in significant fees to a chapter 7 trustee.

Additionally, it is likely that a Chapter 7 trustee will retain counsel who would likely be required to spend a significant amount of time and expense becoming familiar with the case – time and expense that would not be required if the Plan is confirmed. This case has many players and intricacies that can be effectively and efficiently managed by those who already have knowledge of these matters.

After careful review of the estimated recoveries in a chapter 11 liquidation scenario and a chapter 7 liquidation scenario, the Plan Proponents have concluded that the recoveries to Holders of Allowed Claims will be maximized by completing the liquidation of any remaining assets of the Debtor under chapter 11 of the Bankruptcy Code and making distributions pursuant to the Plan. The Debtor believe that the Debtor's Estate has value that would not be fully realized by Holders of Allowed Claims in a chapter 7 liquidation primarily because, among other reasons, (i) additional administrative expenses would be incurred in a chapter 7 liquidation, specifically those of a Chapter 7 trustee charging statutory fees of 3% (or more, for the first $1 million) of disbursements and any costs of counsel to the Chapter 7 trustee to become familiar with the facts and circumstances of this case, (ii) the additional delay in distributions that would occur if the Debtor's Chapter 11 Case was converted to a case under chapter 7; and (iii) the additional administrative burdens that are placed on a Chapter 7 Trustee which are not present in a Chapter 11 case.

## 2. Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan should not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor unless such liquidation or reorganization is proposed in the Plan. The Plan is a liquidating plan, satisfying § 1129(a)(11).

## 3. Acceptance

Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan. Holders of Allowed Claims in Classes 1 and 2 are deemed to accept the Plan and cannot vote. Holders of Equity Interests in Class 4 will receive no distributions under the Plan and therefore are conclusively presumed to have voted to reject the Plan.

The Plan Proponents will request that the Bankruptcy Court confirm the Plan notwithstanding the deemed rejection of the Plan by Class 6 pursuant to section 1129(b) of the Bankruptcy Code. The Plan Proponents also will request that the Bankruptcy Court confirm the Plan over the rejection of the Plan by any Class voting on the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## 4. Cram Down -- Unfair Discrimination and Fair & Equitable Tests

To obtain nonconsensual confirmation of the Plan, it must be demonstrated that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each Impaired, non-accepting class. The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and

equitable." Section 1129(b) of the Bankruptcy Code establishes "cram-down" tests for secured creditors, unsecured creditors, and equity holders, as follows:

*Secured Creditors*. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be provided in clause (i) or (ii).

*Unsecured Creditors*. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

*Equity Interests*. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greater of the fixed liquidation preference to which such holder is entitled, or the fixed redemption price to which such holder is entitled or the value of the interest, or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

A plan does not "discriminate unfairly" with respect to a nonaccepting class if the value of the cash and/or securities to be distributed to the nonaccepting class is equal to, or otherwise fair when compared to, the value of the distributions to other classes whose legal rights are the same as those of the nonaccepting class.

The Plan Proponents believe that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class of Claims or Equity Interests that rejects or is deemed to reject the Plan.

**ARTICLE V**
**RISK ASSOCIATED WITH THE PLAN**

HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**A.      Parties-in-Interest May Object to the Plan's Classification of Claims**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Plan Proponents believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, the

Plan Proponents cannot assure you that parties-in-interest and/or the Bankruptcy Court will reach the same conclusion.

**B.      The Plan Proponents may not be able to Secure Confirmation of the Plan**

Although the Plan Proponents believe that the Plan will satisfy all requirements necessary for confirmation, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of vote

The Bankruptcy Court may confirm the Plan at the Plan Proponents' request if at least one Impaired Class has accepted the Plan (such acceptance being determined without including the vote of an "insider" in such Class), and as to each Impaired Class that has not accepted the Plan, if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Impaired classesThe Plan Proponents believe that the Plan satisfies these requirements.

**C.      The Liquidating Trustee May Object to the Amount or Classification of Your Claim**

The Liquidating Trustee, as of the Effective Date, has the right to object to the amount or classification of any ClaimThe estimates set forth in this Disclosure Statement cannot be relied on by any creditor whose Claim is subject to an objection or may be objected to prior to the Claims Objection Deadline. Any such Holder of a Claim may not receive its specified share of the estimated Distributions described in this Disclosure Statement.

This risk is also present in a chapter 7 case.

**D.       The Liquidating Trustee May File a Lawsuit against you**

Upon the Effective Date, all Causes of Action vest with the Liquidating Trust to be pursued by the Liquidating Trustee.  The Liquidating Trustee may identify and initiate a Cause of Action against you.  This risk is also present in a chapter 7 case.

**E.      The Liquidating Trustee may determine that the Liquidating Trust has Insufficient Assets to Prosecute Claims or Causes of Action**

The Liquidating Trust will be funded with the Liquidating Trust Assets.  The Liquidating Trustee may determine at any time after the Effective Date that the Liquidating Trust has insufficient assets to identify, initiate or prosecute Causes of Action and may abandon such Causes of Action.  Such Causes of Action are anticipated to be the main source of recovery for Creditors.

**F.      The Information in this Disclosure Statement is Based on Estimates, which may turn out to be Incorrect**

The information in this Disclosure Statement is based upon Claims reflected in the Schedules and a preliminary review of the Claims filed as of the date of this Disclosure Statement. Upon the completion of a detailed analysis of the proofs of claim, the actual amount of Claims

may differ from current estimates. Further, the amounts of Disputed Claims that ultimately are Allowed by the Bankruptcy Court may be significantly more or less than the estimated amounts of such Claims. The actual aggregate amount of Allowed Claims may differ significantly from the estimates set forth in this Disclosure Statement. Accordingly, the amount of the Distributions that ultimately will be received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims ultimately Allowed.

## ARTICLE VI
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The following discussion summarizes some of the more significant United States federal income tax consequences of the Plan to certain holders of Allowed Claims and Equity Interests. The analysis contained herein is based upon the Internal Revenue Code of 1986, as amended (the "IRC" or "Tax Code"), the Treasury Regulations promulgated and proposed thereunder (the "Regulations"), judicial decisions, and published administrative rulings and pronouncements of the Internal Revenue Service (the "IRS") as in effect on the date hereof.

Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analysis and conclusions set forth below. Any such changes or interpretations may be retroactive and could affect significantly the federal income tax consequences discussed below. This summary does not address foreign, state, or local income tax, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, broker/dealers, and tax-exempt organizations). Accordingly, it should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of an Allowed Claim or Interest.

Due to the complexity of certain aspects of the Plan, some of which are discussed below, the lack of applicable legal precedent and the possibility of changes in the law, the differences in the nature of various Allowed Claims, the differences in the methods of accounting of holders of Allowed Claims or Interests, and the potential for disputes as to legal and factual matters, the federal income tax consequences described herein are subject to significant uncertainties.

THE TAX CONSEQUENCES TO HOLDERS OF ALLOWED CLAIMS OR INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER. MOREOVER, THE TAX CONSEQUENCES OF CERTAIN ASPECTS OF THE PLAN ARE UNCERTAIN DUE TO THE LACK OF APPLICABLE LEGAL PRECEDENT AND THE POSSIBILITY OF CHANGES IN THE LAW. NO RULING HAS BEEN OR WILL BE APPLIED FOR OR OBTAINED FROM THE INTERNAL REVENUE SERVICE WITH

RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN OR WILL BE REQUESTED OR OBTAINED BY THE PLAN PROPONENTS WITH RESPECT THERETO. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE INTERNAL REVENUE SERVICE WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE UPHELD. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN, OR OTHER TAX CONSEQUENCES OF THE PLAN.

### A.    Federal Income Tax Consequences to the Debtor

Debtor are corporations or limited liability companies for U.S. federal income tax purposes, and according to Debtor's accountants, the Plan will have no federal income tax consequences for the Debtor.

### B.    Federal Income Tax Consequences to the Holders of Equity Interests

Under the Plan, the holders of Equity Interests in the Debtor will have the Equity Interests cancelled and will not receive any payment with respect to such cancellation. Holders of Equity Interests in the Debtor generally will recognize loss in the amount of the holder's adjusted tax basis in its Equity Interest. The character of any recognized loss will depend upon several factors including, but not limited to, the status of the holder, the nature of the Equity Interest in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period, and the extent to which the holder had previously claimed a deduction for the worthlessness of all or a portion of the Interest. A loss generally is treated as sustained in the taxable year for which there has been a closed and completed transaction, and no portion of a loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered. **HOLDERS OF EQUITY INTERESTS IN THE DEBTOR SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF LOSS FOR FEDERAL INCOME TAX PURPOSES.**

Holders of Equity Interests may be allocated income, gain, loss, and deductions recognized by the Debtor as a result of the implementation of the Plan. See, above, "Federal Income Tax Consequences to the Debtor." The tax consequences to a Holder of an Equity Interest from such allocation will vary from Holder to Holder based on the individual circumstances of that Holder. Accordingly, this summary does not further address the U.S. federal income tax consequences applicable to a holder of an Equity Interest who is allocated income, gain, loss, or deductions by the Debtor. **EACH HOLDER OF AN EQUITY INTEREST IN THE DEBTOR SHOULD CONSULT ITS OWN TAX ADVISOR WITH RESPECT TO THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO IT OF THE IMPLEMENTATION OF THE PLAN.**

### C.    Federal Income Tax Consequences to Holders of Allowed Claims

The federal income tax consequences of the Plan to a holder of an Allowed Claim will depend upon several factors, including but not limited to: (i) whether the Holder's Allowed Claim (or a portion thereof) constitutes a payment for principal or interest, (ii) the origin of the Holder's Allowed Claim, (iii) the type of consideration given by the Holder in exchange for the Allowed Claim, (iv) whether the holder is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above), (v) whether the Holder reports income on the accrual or cash basis method, (vi) whether the Holder has taken a bad debt deduction or worthless security deduction with respect to the Allowed Claim, and (vii) whether the holder receives Distributions under the Plan in more than one taxable year. **HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF DISTRIBUTIONS ON ACCOUNT OF THEIR PARTICULAR ALLOWED CLAIMS**. Generally, a Holder of an Allowed Claim will recognize gain or loss equal to the difference between the "amount realized" by such holder and such Holder's adjusted tax basis in the Allowed Claim. The "amount realized" is equal to the fair market value of such Holder's proportionate share of the assets transferred to the Liquidating Trust on the behalf of and for the benefit of such holder (to the extent that such assets are not allocable to any portion of the Allowed Claim representing accrued but unpaid interest (see discussion below)).

If the Liquidating Trust qualifies as a liquidating trust as defined in Treasury Regulation section 301.7701-4(d), the transfer of the Liquidating Trust Assets to the Liquidating Trust by the Debtor will be treated for federal income tax purposes as a transfer of such Liquidating Trust Assets to the Holders of Allowed Claims to the extent they are creditor-beneficiaries, followed by a deemed transfer of such assets by such beneficiaries to the Liquidating Trust. As a result of such treatment, Holders of Allowed Claims will have to consider the fair market value of their Pro Rata share, if any, of the Liquidating Trust Assets transferred on their behalf to the Liquidating Trust in determining the amount of gain (or loss) realized and required to be recognized upon consummation of the Plan. In addition, since a Holder's share of the assets held in the Liquidating Trust may change depending upon the resolution of Disputed Claims, the Holder may be prevented from recognizing any loss in connection with consummation of the Plan until the time that all such Disputed Claims have been resolved. The Liquidating Trustee will provide the holders of Allowed Claims with valuations of the assets transferred to the Liquidating Trust and such valuations will be used consistently by the Liquidating Trust and such holders for all federal income tax purposes.

The character of any recognized gain or loss (e.g., ordinary income or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Allowed Claim in its hands, the purpose and circumstances of its acquisition, the Holder's holding period of the Allowed Claim, and the extent to which the Holder previously claimed a deduction for the worthlessness of all or a portion of the Allowed Claim. **HOLDERS OF ALLOWED CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.**

In addition, holders of Allowed Claims will be taxed on their allocable shares of the Liquidating Trust's income and gain in each taxable year, whether or not they receive any Distributions from the Liquidating Trust in such taxable year. **HOLDERS OF ALLOWED CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE**

**POSSIBILITY OF RECOGNIZING INCOME FOR FEDERAL INCOME TAX PURPOSES WITHOUT THE RECEIPT OF CASH TO PAY THE TAXES ON SUCH INCOME.**

### D.    Allocation of Consideration to Interest

A portion of the consideration received by a Holder in satisfaction of an Allowed Claim pursuant to the Plan may be allocated to the portion of such Allowed Claim (if any) that represents accrued but unpaid interest. Unless otherwise provided by applicable statute or rule, distributions under the Plan are allocated first to the principal of an Allowed Claim, then to any accrued interest. If any portion of the Distribution were required to be allocated to accrued interest, such portion would be taxable to the Holder as interest income, except to the extent the holder has previously reported such interest as income.

In that event, only the balance of the distribution would be considered received by the Holder in respect of the principal amount of the Allowed Claim. Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the holder with respect to the Allowed Claim. If any such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

To the extent that any portion of the distribution is treated as interest, Holders may be required to provide certain tax information in order to avoid the withholding of taxes. **HOLDERS OF ALLOWED CLAIMS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL INCOME TAX TREATMENT OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS.**

### ARTICLE VII
### ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.    Liquidation Pursuant to Chapter 7 of the Bankruptcy Code

If no Chapter 11 plan can be confirmed, the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code, in which case a trustee will be appointed to liquidate the assets of the Debtor. It is impossible to predict precisely how the proceeds of a liquidation of the Debtor's assets under Chapter 7 of the Bankruptcy Code would be distributed to the respective holders of Claims against or Interests in the Debtor. However, the Plan Proponents believe that liquidation under Chapter 7 would result in, among other things, (i) smaller distributions being made to creditors than those provided for in the Plan because of additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals; (ii) additional expenses and Claims, some of which may be entitled to priority, as discussed more fully in Article IV of this Disclosure Statement; and, (iii) extensive delays in Distributions to Holders of Administrative Claims, Priority Tax Claims and Other Priority Claims.

### B.    Alternative Plan of Liquidation

If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different plan with respect to the Debtor. Such a plan would necessarily involve the

orderly liquidation of the Debtor's assets.  The Plan Proponents have concluded that the Plan represents the best alternative to protect the interests of creditors and other parties-in-interest.

Further, the Plan Proponents believe that the Plan enables the Liquidating Trustee to maximize the value realized from the Debtor's assets and to streamline the process of distributing the proceeds of the Debtor's assets, allowing creditors to realize the highest recoveries under the circumstances.  Accordingly, the Plan Proponents believe that the Creditors of the Debtor will receive greater recoveries through the Plan than in a Chapter 7 liquidation.

## ARTICLE VII
## CONCLUSION AND RECOMMENDATION

The Plan Proponents believe that confirmation and implementation of the Plan is preferable to any of the alternatives described above because it will provide the greatest recoveries to Holders of Allowed Claims.  Other alternatives would involve delay, uncertainty, and substantial administrative costs.

**THE PLAN PROPONENTS URGE HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO ACCEPT THE PLAN.**

Dated:  April 19, 2022

**CYCLE FORCE GROUP, LLC, as Debtor and Debtor-in-Possession**

By: */s/ Nyle H. Nims*
Nyle H. Nims, Chief Executive Officer

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CYCLE FORCE GROUP, LLC**

*/s/ Brian Mitteldorf*
By: Brian Mitteldorf, Chairperson

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re : | Case No. 21-00571-als11 |
| **CYCLE FORCE GROUP, LLC,** | Chapter 11 |
| Debtor and Debtor in Possession. | Hon. Anita L. Shodeen |
| 2105 SE 5th St.<br>Ames, IA 50010 | |
| EIN: 26-2671865 | |

## FIRST AMENDED PLAN OF ORDERLY LIQUIDATION OF CYCLE FORCE GROUP, LLC

## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Jeffrey D. Goetz, Esq.,
Krystal R. Mikkilineni, Esq.
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
mikkilineni.krystal@bradshawlaw.com
**Counsel to the Debtor**

Ronald E. Gold
A.J. Webb
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone:  (513) 651-6800
Facsimile:   (513) 651-6981
rgold@fbtlaw.com
awebb@fbtlaw.com
-and-
Robert C. Gainer
CUTLER LAW FIRM, P.C.
1307 50th Street West
Des Moines, IA 50266
Tel: 515-223-6600
Fax: 515-223-6787
Email:   rgainer@cutlerfirm.com
**Counsel for the Official Committee of Unsecured Creditors of Cycle Force Group, LLC**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARTICLE I: DEFINED TERMS AND RULES OF INTERPRETATION .....................................1

ARTICLE II: CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS...........................10

| Section 2.01 | Classification............................................................................................10 |

ARTICLE III: TREATMENT OF CLAIMS AND EQUITY INTERESTS ...............................10

| Section 3.01 | General .....................................................................................................10 |
| Section 3.02 | Unclassified Claims ................................................................................11 |
| Section 3.03 | Impaired/Voting Classes of Claims against and Equity Interests in the Debtor ................................................................................................12 |
| Section 3.04 | Impaired/Non-Voting Classes of Claims against and Equity Interests in the Debtor ...........................................................................13 |

ARTICLE IV: ACCEPTANCE OR REJECTION OF THE PLAN ...........................................13

| Section 4.01 | Impaired Classes of Claims and Equity Interests Entitled to Vote............13 |
| Section 4.02 | Acceptance by an Impaired Class ...............................................................13 |
| Section 4.03 | Presumed Acceptance by Unimpaired Class ...............................................14 |
| Section 4.04 | Presumed Rejection by Impaired Classes ...................................................14 |
| Section 4.05 | Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.........14 |
| Section 4.06 | Elimination of Vacant Classes ...................................................................14 |

ARTICLE V: THE LIQUIDATING TRUST ..........................................................................14

| Section 5.01 | Sources of Consideration for Plan Distributions .......................................14 |
| Section 5.02 | The Liquidating Trust ................................................................................14 |
| Section 5.03 | Appointment and Termination of the Liquidating Trustee .........................15 |
| Section 5.04 | Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest ............................................................................15 |
| Section 5.05 | Responsibilities of Liquidating Trustee .....................................................17 |
| Section 5.06 | Costs and Expenses of the Liquidating Trust .............................................17 |
| Section 5.07 | Fiduciary Duties of the Liquidating Trustee ...............................................18 |
| Section 5.08 | Liability, Indemnification of the Liquidating Trust Protected Parties........................................................................................................18 |
| Section 5.09 | Full and Final Satisfaction Against Liquidating Trust...............................18 |

ARTICLE VI: MEANS FOR IMPLEMENTATION OF THE PLAN .......................................18

| Section 6.01 | Corporate Action........................................................................................18 |
| Section 6.02 | Dissolution and Boards of the Debtor and Officers....................................19 |
| Section 6.03 | Effectuating Documents; Further Transactions ..........................................19 |
| Section 6.04 | Preservation of Rights of Action.................................................................19 |
| Section 6.05 | Closing of Debtor's Case ............................................................................20 |
| Section 6.06 | Operations of the Debtor Between the Confirmation Date and the Effective Date ............................................................................................20 |
| Section 6.07 | Dissolution of the Creditors' Committee....................................................20 |

i

Section 6.08        Destruction of Books and Records ........................................................21

ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES ..............................................................................................21
Section 7.01        Executory Contracts and Unexpired Leases .............................................21
Section 7.02        Claims Based on the Rejection of Executory Contracts and
                    Unexpired Leases ....................................................................................21

ARTICLE VIII: PROVISIONS GOVERNING DISTRIBUTIONS ............................................21
Section 8.01        Calculation of Amounts to be Distributed .................................................21
Section 8.02        Delivery of Distributions and Undeliverable or Unclaimed
                    Distributions............................................................................................22
Section 8.03        Compliance with Tax Requirements/Allocations .....................................24
Section 8.04        Claims Paid or Payable to Third Parties ....................................................24

ARTICLE IX: PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED,
            AND DISPUTED CLAIMS AND EQUITY INTERESTS.................................25
Section 9.01        Resolution of Disputed Claims .................................................................25
Section 9.02        Distribution Reserve Account ..................................................................26
Section 9.03        Distributions After Allowance ..................................................................27
Section 9.04        Disallowance of Claims ...........................................................................27
Section 9.05        Amendments ............................................................................................27
Section 9.06        No Interest................................................................................................27

ARTICLE X: RETENTION OF JURISDICTION .................................................................28
Section 10.01       Retention of Jurisdiction ..........................................................................28
Section 10.02       Failure of the Bankruptcy Court to Exercise Jurisdiction.........................29

ARTICLE XI: SETTLEMENT, RELEASES, INJUNCTIONS AND EXCULPATIONS ...........30
Section 11.01       Debtor Will Not Receive Discharge .........................................................30
Section 11.02       No Releases by Debtor..............................................................................30
Section 11.03       Exculpation and Limitation of Liability ...................................................30
Section 11.04       Injunction ................................................................................................31
Section 11.05       Setoffs .....................................................................................................32
Section 11.06       Term of Injunctions or Stays....................................................................33

ARTICLE XII: ...............................................................................................................33

CONDITIONS PRECEDENT TO CONFIRMATION  AND CONSUMMATION OF
            THE PLAN ..........................................................................................33
Section 12.01       Conditions to Effective Date.....................................................................33
Section 12.02       Notice of Occurrence of the Effective Date..............................................33
Section 12.03       Consequences of Non-Occurrence of Effective Date ...............................33
Section 12.04       Substantial Consummation .......................................................................34

ARTICLE XIII: MISCELLANEOUS PROVISIONS ...........................................................34
Section 13.01       Liquidating Trustee Professionals.............................................................34
Section 13.02       Modifications and Amendments ................................................................34

ii

Section 13.03      Continuing Exclusivity and Solicitation Period.........................................34
Section 13.04      Severability of Plan Provisions...................................................................34
Section 13.05      Successors and Assigns and Binding Effect ..............................................35
Section 13.06      Revocation, Withdrawal or Non-Consummation .....................................35
Section 13.07      Notices .......................................................................................................35
Section 13.08      Computation of Time..................................................................................36
Section 13.09      Governing Law ...........................................................................................36
Section 13.10      Exhibits ......................................................................................................36
Section 13.11      Conflicts......................................................................................................37
Section 13.12      Exemption...................................................................................................37
Section 13.13      Substitution of the Liquidating Trust for the Debtor ................................37

## INTRODUCTION

Cycle Force Group, LLC ("Cycle Force" or the "Debtor"), along with the Official Committee of Unsecured Creditors of Cycle Force Group, LLC (the "Creditors' Committee" and, collectively with the Debtor, the "Plan Proponents") hereby propose the following chapter 11 plan of liquidation. The Plan Proponents are the proponent of the Plan within the meaning of section 1129 of title 11 of the United States Code (the "Bankruptcy Code"). This Plan contemplates the distribution of the proceeds of the liquidation of the Debtor's Assets and the resolution of the outstanding Claims against and Equity Interests in the Debtor. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtor's history, business and operations, (ii) a summary of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and the accompanying Disclosure Statement (including all exhibits thereto) in their entirety before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 of the Bankruptcy Code and Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior as provided herein.

The Plan is a liquidating plan. Pursuant to prior orders of the Bankruptcy Court, the Debtor sold substantially all of its operating Assets in one transaction. (*See* Docket No. 241). The Plan provides for the creation of a Liquidating Trust that will administer and liquidate all remaining Assets of the Debtor, including certain proceeds from the sale of the Debtor's Assets and Causes of Action not sold, transferred or otherwise waived or released on or before the Effective Date of the Plan. The Plan also provides for Distributions to certain Holders of Administrative Claims and Priority Claims and to other Holders of Allowed Claims and the funding of the Liquidating Trust. The Plan further provides for the transfer of any remaining Assets to the Liquidating Trust.

No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith have been conditionally approved for use in soliciting acceptances and rejections of the Plan.

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR THAT ARE ENTITLED TO VOTE ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND THE PLAN, THE PLAN PROPONENTS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN AS PROVIDED HEREIN.**

## ARTICLE I:
## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined, including those capitalized terms used in the preceding Introduction, shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code

or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. To the extent that there is an inconsistency between a definition in this Plan and a definition set forth in the Bankruptcy Code, the definition set forth herein shall control. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.  In addition to the foregoing, any defined terms used in the Exhibits shall have the meaning ascribed to them in either the applicable Exhibit or in Article I of this Plan.

"**Administrative Claim**" means a Claim for costs and expenses of administration of this Chapter 11 Case allowed under sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred between the Petition Date and Confirmation Date of preserving the Debtor's estate and operating the businesses of the Debtor (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims in respect of taxes that accrued after the Petition Date, but excluding Claims in respect of taxes that accrued on or before the Petition Date unless such taxes are entitled to be treated as administrative claims under the Bankruptcy Code); and for which an application was previously filed with the Bankruptcy Court prior to the Administrative Claims Bar Date; (b) Professional Fee Claims, and (c) all fees and charges assessed against the Debtor's estate under section 1930, chapter 123 of title 28 of the United States Code.

"**Administrative Claims Bar Date**" means the date that is thirty (30) days after the Effective Date, which is the date by which Holders of Administrative Claims must file with the Bankruptcy Court and serve on the Liquidating Trustee requests for payment of Administrative Claims in writing together with supporting documents substantially complying with the Bankruptcy Code and the Bankruptcy Rules.

"**Allowed**" means, with respect to any Claim (including any Administrative Claim) or portion thereof (to the extent such Claim is not Disputed or Disallowed) or any Equity Interest, (a) any Claim, proof of which (i) was Filed with the Bankruptcy Court, (ii) was deemed Filed pursuant to section 1111(a) of the Bankruptcy Code, or (iii) by a Final Order, was not required to be Filed; (b) any Claim or Equity Interest that has been, or hereafter is, listed in the Schedules as liquidated in an amount other than zero or unknown and which is not Disputed or contingent (or as to which the applicable Proof of Claim has not been withdrawn or Disallowed); (c) any Claim or Equity Interest which has been allowed (whether in whole or in part) by a Final Order (but only to the extent so allowed), and, in the case of (b) and (c) above, as to which no objection to the allowance thereof, or action to subordinate, avoid, classify, reclassify, expunge, estimate or otherwise limit recovery with respect thereto, has been Filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order; (d) any Claim or Equity Interest allowed under or pursuant to the terms of the Plan; (e) any Claim arising from the recovery of property under sections 550 or 553 of the Bankruptcy Code which has been allowed in accordance with section 503(h) of the Bankruptcy Code; or (f) which is a Professional Fee Claim for which a fee award amount has been approved by order of the Bankruptcy Court; provided, however, that Claims or Equity Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

"**Assets**" means any and all assets of the Debtor, including, but not limited to: (a) the Cash held by the Estate on the Effective Date; (b) all Causes of Action; (c) all Privileged Documents; (d) all other assets of the Debtor or of the Estate existing on the Effective Date after giving effect to all Distributions required to be made as of or prior to the Effective Date, including but not limited to all books, records and files of the Debtor and of the Estate, in all forms, including electronic and hard copy.

"**Avoidance Actions**" means any and all Causes of Action and the proceeds thereof which a trustee, debtor-in-possession, the estate or other appropriate party in interest may assert under sections 502(d), 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws (whether or not litigation is commenced to prosecute such Causes of Action) and including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted; provided, however, that Avoidance Actions shall not include any claims or causes of action that are released in connection with the Sale Order.

"**Ballot**" means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect on the Petition Date, together with all amendments and modifications thereto that are subsequently made applicable to this Chapter 11 Case.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Iowa.

"**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of Title 28 of the United States Code, (ii) the applicable Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of Title 28 of the United States Code, (iii) the applicable Local Bankruptcy Rules, Forms and Procedures the Bankruptcy Court, and (iv) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to this Chapter 11 Case or proceedings therein, as the case may be.

"**Bar Date**" means the following dates, including those established by the Bankruptcy Court for which the Holders of Claims were to file with the Bankruptcy Court and serve on the Debtor requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code and the Bankruptcy Rules: (i) July 1, 2021 for Holders of General Unsecured Claims; and (ii) the Administrative Claims Bar Date.

"**Business Day**" means any day, excluding Saturdays, Sundays, or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business.

"**Cash or $**" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

"**Causes of Action**" means any and all actions, causes of action, claims, rights, defenses, liabilities, obligations, executions, choses in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of this Chapter 11 Case through the Effective Date including, without limitation, Avoidance Actions; provided, however, that Causes of Action shall not include any claims or causes of action that are released under the Sale Order.

"**Chapter 11 Case**" means the chapter 11 case commenced by the Debtor under case number 21-00571 in the Bankruptcy Court.

"**Claim**" or "**Claims**" means a claim or claims against any of the Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

"**Claims Objection Bar Date**" means the first Business Day that is 150 days after the Effective Date or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court upon a motion Filed by the Liquidating Trustee served only on the Bankruptcy Rule 2002 service list (which motion to extend the objection deadline shall not be deemed a modification of the Plan).

"**Claims Register**" means the official register of Claims maintained by the Bankruptcy Court.

"**Class**" means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code, as described in Article III of the Plan.

"**Closing Carve Out**" means the amount of $427,870.24, set aside as proceeds of the sale of the Debtor's assets and currently held in an escrow account of Cutler Law Firm, P.C., to be distributed in accordance with the Sale Order.

"**Confirmation**" means the entry of the Confirmation Order on the docket of this Chapter 11 Case, subject to all conditions specified having been (a) satisfied, or (b) waived.

"**Confirmation Date**" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of this Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

4

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

"**Creditor**" means any Holder of a Claim against the Debtor or its Estate.

"**Creditors' Committee**" means the official committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102(a) of the Bankruptcy Code appointed by the Office of the United States Trustee in this Chapter 11 Case on May 7, 2021 [Docket No 77], as such committee may be reconstituted from time to time.

"**Cure**" means the Distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such Executory Contract or Unexpired Lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

"**Debtor**" has the meaning ascribed to it in the Introduction to this Plan.

"**Disallowed**" means, with respect to any Claim, Equity Interest or portion thereof, any Claim against or Equity Interest in the Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn by agreement of the Holder thereof and the applicable Debtor, in whole or in part; (iii) has been withdrawn, in whole or in part, by the Holder thereof; (iv) if listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been Filed or deemed Filed or Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law in a liquidated non-contingent amount; (v) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim; (vi) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim was not properly Filed; (vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; (viii) where the holder of a Claim or Equity Interest is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such property, for which such Person, Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code; or (ix) is for reimbursement or contribution that is contingent as of the time of allowance or disallowance of such Claim or Equity Interest. In each case, a Disallowed Claim or Equity Interest is Disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

 "**Disclosure Statement**" means the disclosure statement for the Plan, as amended, supplemented or modified from time to time, describing the Plan, that is prepared and distributed in accordance with, among others, sections 1125, 1126(b) and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and other applicable law.

"**Disputed**" means with respect to any Claim or any portion thereof (a) as to which the Debtor or any other party in interest, has Filed an objection, and such objection has not been withdrawn or overruled by a Final Order; (b) that is listed on the Debtor's Schedules as disputed (unless and to the extent such Claim has been deemed Allowed or deemed Allowed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law); or (c) a tort claim.

"**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in a Proof of Claim relating to a Disputed Claim, (i) the liquidated amount or any portion thereof set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor or Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Disputed Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in a Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor or Liquidating Trustee and the Holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) zero, if the Disputed Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was Filed, or deemed to have been Filed, as applicable, and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court.

"**Distribution**" means any Distribution pursuant to the Plan to the Holders of Allowed Claims or Equity Interests.

"**Distribution Date**" means the date on which a Distribution is made pursuant to this Plan.

"**Distribution Record Date**" means (i) the Administrative Claims Bar Date as to the Holders of Allowed Administrative Claims entitled to Distributions pursuant to the Plan and (ii) any such date established by the Liquidating Trustee as to Holders of Allowed Other Secured Claims, Allowed Other Priority Claims and Allowed General Unsecured Claims.

"**Distribution Reserve Account**" means an account established by the Liquidating Trustee on or prior to the initial Distribution Date into which the Liquidating Trustee shall deposit that portion of Liquidating Trust Assets that would otherwise be distributable in respect of such Disputed Claims, if such Disputed Claims had then constituted Allowed Claims entitled to receive Liquidating Trust Assets.

"**Effective Date**" means the first Business Day following the date on which all conditions to confirmation set forth in Section 12.01 of the Plan have been satisfied or, if capable of being duly and expressly waived, as provided in Section 12.01 of the Plan, any conditions to the occurrence of confirmation set forth in the Plan has been satisfied or waived.

"**Entity**" shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Person in any of the Debtor including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtor,

membership interests, partnership interests in the Debtor's stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtor or obligating the Debtor to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

"**Estate**" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of this Chapter 11 Case on the Petition Date.

"**Executory Contract**" means a contract to which any of the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**File, Filed or Filing**" means, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in this Chapter 11 Case.

"**Final Order**" means an order, ruling, judgment, the operation or effect of a judgment or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other court of competent jurisdiction which has not been reversed, vacated, stayed, modified or amended and as to which (i) the time to appeal or petition for review, rehearing, certiorari, re-argument or retrial has expired and as to which no appeal or petition for review, rehearing, certiorari, reargument or retrial is pending or (ii) any appeal or petition for review, rehearing, certiorari, reargument or retrial has been finally decided and no further appeal or petition for review, rehearing, certiorari, reargument or retrial can be taken or granted.

"**General Unsecured Claim**" means an unsecured Claim against a Debtor, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease, but excluding any Administrative Claims, Priority Tax Claims, and Other Priority Claims; provided, however, that any deficiency claim asserted by a holder of a Secured Claim shall be deemed a General Unsecured Claim.

"**Governmental Unit**" means all governmental units, which shall include all entities defined in section 101 (27) of the Bankruptcy Code, including such entities that hold a Claim arising from prepetition tax years or periods or prepetition transactions to which a Debtor was a party.

"**Holder**" or "**Holders**" means the legal or beneficial holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

"**Impaired**" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Class**" means a Class or Claims or Equity Interests that are Impaired.

"**Initial Distribution Date**" means the date on which the Debtor or the Liquidating Trustee, as applicable, makes initial distributions to Holders of Allowed Claims pursuant to the Plan.

7

"**Lien**" means, with respect to any asset or property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise:  (a) any and all mortgages or hypothecation to secure payment of a debt or performance of an obligation, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of holders of General Unsecured Claims; provided, however, that a lien that has or may be avoided pursuant to any Avoidance Action shall not constitute a lien hereunder.

"**Liquidating Trust**" means the trust to be established on the Effective Date in accordance with this Plan.

"**Liquidating Trust Agreement**" means the agreement to be executed as of the Effective Date establishing the Liquidating Trust pursuant to the Plan, substantially in the form filed as a supplement to this Plan.

"**Liquidating Trust Assets**" means: (a) the Cash held by the Estate, including the Closing Carve Out, after taking into account Distributions made on the Effective Date; (b) all Causes of Action; (c) all Privileged Documents and communications of the Debtor; (d) all other assets of the Debtor or of the Estate existing on the Effective Date after giving effect to all Distributions required to be made as of or prior to the Effective Date, including but not limited to all books, records and files of the Debtor and of the Estate, in all forms, including electronic and hard copy.

"**Liquidating Trust Protected Parties**" means the Liquidating Trust, the Liquidating Trustee, and the members, designees, agents, professionals, employees, managers, partners, actuaries, financial advisors, and attorneys and each of the foregoing.

"**Liquidating Trustee**" means Province, LLC.

"**Order(s)**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any case or the docket of any other court of competent jurisdiction.

"**Other Priority Claims**" means any and all Allowed Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"**Person**" shall have the meaning provided in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means the date on which the Debtor Filed its petition for relief commencing a Chapter 11 Case.

"**Plan**" means this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with its terms and the Bankruptcy Code or the Bankruptcy Rules.

"**Priority Tax Claim**" means any and all Claims of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"**Privileged Documents**" means all documents and communications maintained by the Debtor subject to attorney-client, work product, or common interest privilege claims.

"**Professional**" means any professional employed in this Chapter 11 Case pursuant to Bankruptcy Code sections 327, 328, 1103, 105(a), 363(c) or other order of the Bankruptcy Court.

"**Professional Fee Claims**" means compensation for legal, financial, advisory, accounting and other services by Professionals and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the extent incurred on or prior to the Effective Date.

"**Proof of Claim**" means a proof of claim Filed with the Bankruptcy Court in this Chapter 11 Case.

"**Pro Rata Share**" means with respect to any Distribution to a Class under the Plan, the ratio (expressed as a percentage) of the amount of an Allowed Claim or Equity Interest in such Class to the aggregate amount of all Allowed Claims or Equity Interests in such Class plus the Disputed Claim Amount of all Disputed Claims or the amount of Equity Interests that are Disputed in the same Class; provided that, to the extent any Disputed Claims or Equity Interests are not Allowed by the Bankruptcy Court in whole or in part, the Pro Rata Share of all Allowed Claims in such Class shall be adjusted to take into account the Disputed Claim amounts that are Disputed (or portion thereof) associated with the Disputed Claim that was not Allowed.

"**Sale Order**" means the December 27, 2021 *Order Authorizing: (I) The Sale of the Debtor's Assets Free and Clear of Liens, Claims, and Encumbrances; and (II) The Assumption and Assignment of Certain Executory Contracts and Expired Leases* (Docket No. 241).

"**Schedules**" means the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

"**Secured Claim**" means a Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor or the Liquidating Trustee, as applicable, and the Holder of such Claim.

If the amount of any Claim exceeds the value of the Holder's interest in the Estate's interest in property or the amount subject to setoff, such excess shall be treated as a General Unsecured Claim.

"**Unexpired Lease**" means a lease of personal or real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

"**Unimpaired**" means Claims in an Unimpaired Class.

"**Unimpaired Class**" means an unimpaired Class within the meaning of section 1124 of the Bankruptcy Code.

"**Unsecured Claim**" means a Claim arising prior to the Petition Date against the Debtor that is neither a Secured Claim nor entitled to priority under section 507 of the Bankruptcy Code or any order of the Bankruptcy Court, which Claim may be a General Unsecured Claim.

"**U.S. Trustee**" means the Office of the United States Trustee for Region 12.

"**U.S. Trustee Fee Claims**" means fees arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code with respect to this Chapter 11 Case.

## ARTICLE II:
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 2.01    Classification**

Claims against the Debtor, other than Administrative Claims and Priority Tax Claims are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|-----------|-----------------|----------------|----------------------|
| 1 | Other Priority Claims | Impaired | Yes |
| 2 | Secured Claims | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE III:
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**Section 3.01    General**

Pursuant to section 1122 of the Bankruptcy Code, a Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of the Class and is classified in a different class to the extent that the Claim or Equity Interest qualifies within the description of that different Class.  A Claim or Equity Interest is placed in a particular Class for the purposes of receiving Distributions pursuant to the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or an Allowed Equity Interest in

that Class and such Claim or Equity Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

**Section 3.02    Unclassified Claims**

*(a)    Administrative Claims*

In full satisfaction, and settlement of and in exchange for each Allowed Administrative Claim, except to the extent that any Holder of an Allowed Administrative Claim has received payment prior to the Effective Date, agrees with the Debtor or the Liquidating Trustee, as applicable, to different treatment or as otherwise provided for in the Plan, each Holder of an Allowed Administrative Claim shall receive payment in full, in Cash, on the later of (i) the Effective Date or as soon thereafter as is practicable if due on or before that date and unpaid on the Effective Date, (ii) as soon as practicable after the date upon which such Administrative Claim becomes an Allowed Claim, or (iii) such other date as may be agreed upon between the Holder of such Allowed Administrative Claim and the Liquidating Trustee.

Any Holder of an Administrative Claim shall File an application by the Administrative Claims Bar Date for allowance of such Administrative Claim.  Any Administrative Claim that is not filed by the Administrative Claims Bar Date shall be Disallowed.  In addition, any Holder of an Administrative Claim that does not file an application for allowance of such Administrative Claim by the Administrative Claims Bar Date shall be forever barred from pursuing that Administrative Claim against the Debtor, the Estate, the Liquidating Trust or the Liquidating Trust Assets.

*(b)    Professional Fee Claims*

Any Professional seeking an award by the Bankruptcy Court of an Allowed Professional Fee Claim on account of Professional Fees incurred from the Petition Date through and including the Effective Date (i) shall, no later than thirty (30) days after the Effective Date, File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date, and (ii) shall receive, as soon as reasonably practicable after such Claim is Allowed, in full settlement, and satisfaction of, and in exchange for, such Allowed Professional Fee Claims, Cash in the amount of the Allowed Professional Fee Claims.

*(c)    Priority Tax Claims*

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date or unless otherwise agreed by the Liquidating Trustee and the Holder of an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive, as soon as reasonably practicable after such Claim is Allowed, in full settlement, and satisfaction of, and in exchange for, such Allowed Priority Tax Claims, Cash in the amount of the Allowed Priority Tax Claims.

(d)    *U.S. Trustee Fee Claims*

The Debtor or the Liquidating Trustee, as applicable, shall pay all U.S. Trustee Fees for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  The U.S. Trustee shall not be required to file any proof(s) of claim regarding quarterly fees.

**Section 3.03    Impaired/Voting Classes of Claims against and Equity Interests in the Debtor**

(a)    **Other Priority Claims (collectively, "Class 1 Claims").**

Classification:  Class 1 Claims consist of all Other Priority Claims against the Debtor.

Treatment:  Except to the extent that an Allowed Priority Claim has been paid prior to the Effective Date or unless otherwise agreed by the Liquidating Trustee and the Holder of an Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full, in Cash, through quarterly installment payments made by the Liquidating Trustee beginning on December 1, 2022 and ending on the earlier of (i) payment in full of the Allowed Other Priority Claim, (b) five years after the date of the order for relief under section 301, 302, or 303 of the Bankruptcy Code.

Voting:  Class 1 Claims are Impaired by the Plan. Each Holder of an Allowed Class 1 Claim is entitled to vote to accept or reject the Plan.

(b)    **Secured Claims (collectively, "Class 2 Claims").**

Classification:  Class 2 Claims consist of all Secured Claims against the Debtor.

Treatment:  To the extent of the Debtor's right, title or interest to the Assets securing such Secured Claims, a Holder of an Allowed Secured Claim shall receive, at the election of the Liquidating Trustee (a) Cash in the amount of such Holder's Allowed Secured Claim in one payment on the later of the Effective Date or as soon thereafter as is practicable or the date such Claim becomes an Allowed Claim by Final Order (or as soon as reasonably practicable thereafter) or (b) such Holder shall receive its Collateral on the Effective Date or as soon thereafter as is practicable.  Any deficiency amount related to a Class 2 Claim shall be treated as a Class 3 Allowed General Unsecured Claim.  Alternatively, such Holder shall receive such other less favorable treatment as the Debtor and such Holder agree upon in writing. For the avoidance of doubt and for purposes of clarification, Great Western Bank does not hold a Claim against the Debtor in Class 2 or any other Class of Claims pursuant to the resolutions reached in the Sale Order as described in the Disclosure Statement. Furthermore, no consignment vendor of the Debtor holds any remaining Class 2 Claim against the Debtor.

Voting:  Class 2 Claims are Unimpaired by the Plan and are deemed to accept the Plan.

(b)    **General Unsecured Claims (collectively, "Class 3 Claims").**

Classification:  Class 3 Claims consist of all General Unsecured Claims against the Debtor.

12

Treatment:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment and in exchange for each Class 3 Claim, a Holder of an Allowed General Unsecured Claim shall receive its Pro Rata Share of any remaining Liquidating Trust Assets after providing for the payment in full of all Allowed Secured Claims, Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims.

Voting:  Class 3 Claims are Impaired by the Plan.  Each Holder of an Allowed Class 3 Claim is entitled to vote to accept or reject the Plan.

**Section 3.04   Impaired/Non-Voting Classes of Claims against and Equity Interests in the Debtor**

(a)     **Equity Interests (collectively, "Class 4 Equity Interests").**

Classification:  Class 4 Equity Interests consist of all Equity Interests in the Debtor.

Treatment:  Class 4 Equity Interests will be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.

Voting:  The Holders of Class 4 Equity Interests are deemed to have rejected the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

(b)     **Reservation of Rights Regarding Claims and Equity Interests**

Except as otherwise explicitly provided in the Plan, nothing herein shall affect the Debtor's or the Liquidating Trustee's rights and defenses, both legal and equitable, with respect to any Claims or Equity Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

**ARTICLE IV:
ACCEPTANCE OR REJECTION OF THE PLAN**

**Section 4.01   Impaired Classes of Claims and Equity Interests Entitled to Vote**

Only Holders of Allowed Claims in each Impaired Class of Claims receiving a Distribution under the Plan are entitled to vote as a Class to accept or reject the Plan.  Accordingly, only the votes of Holders of Claims in Class 1 and Class 3 shall be solicited with respect to the Plan.

**Section 4.02   Acceptance by an Impaired Class**

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims or Equity Interests in such Class that have timely and properly voted to accept or reject the Plan.

13

**Section 4.03 Presumed Acceptance by Unimpaired Class**

Holders of Class 1 Claims and Class 2 Claims are Unimpaired under the Plan. Under Section 1126(f) of the Bankruptcy Code, Holders of Class 2 Claims are deemed to have accepted the Plan, and the votes of such Holders shall not be solicited.

**Section 4.04 Presumed Rejection by Impaired Classes**

Holders of Class 4 Equity Interests are Impaired under the Plan. Under section 1126(g) of the Bankruptcy Code, Holders of such Impaired Claims and Equity Interests are conclusively presumed to have rejected the Plan, and the votes of Holders of such Impaired Claims and Equity Interests shall not be solicited.

**Section 4.05 Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponents reserve the right to request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any schedule or exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**Section 4.06 Elimination of Vacant Classes**

Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Equity Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V:
## THE LIQUIDATING TRUST

**Section 5.01 Sources of Consideration for Plan Distributions**

Cash and the other Liquidating Trust Assets shall be used to fund the Distributions to Holders of Allowed Claims against the Debtor in accordance with the treatment of such Claims provided herein.

**Section 5.02 The Liquidating Trust**

On or prior to the Effective Date, the Debtor, on its own behalf and on the Estate's behalf and on behalf of the Holders of Claims that are to be satisfied with post-Effective Date Distributions from the Liquidating Trust Assets, will execute the Liquidating Trust Agreement and will take all other steps necessary to establish the Liquidating Trust pursuant to the Liquidating Trust Agreement. On the Effective Date, and in accordance with and pursuant to the terms of the Plan, the Debtor will transfer to the Liquidating Trust all of its rights, title, and interests in all of the Liquidating Trust Assets.

14

The Liquidating Trust shall be established solely for the purpose of holding and administering the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Liquidating Trustee shall hold the Liquidating Trust Assets pursuant to the terms of this Plan and the Liquidating Trust Agreement by engaging in the following activities: (a) pursuing the Causes of Action retained by the Liquidating Trust; (b) making all required Distributions to the beneficiaries as provided for under the Liquidating Trust Agreement; and (c) taking other actions as may be necessary to effectuate any of the foregoing. The Liquidating Trust will not hold itself out as an investment company and will not conduct a trade or business. At no time shall the Liquidating Trust control or operate the business of the Debtor or any assets of the Debtor other than the Liquidating Trust Assets.

### Section 5.03   Appointment and Termination of the Liquidating Trustee

The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective on the Effective Date.

In accordance with the Liquidating Trust Agreement, the Liquidating Trust shall continue for a term terminating on the earlier to occur of (a) all of the Liquidating Trust Assets have been distributed pursuant to this Plan and the Liquidating Trust Agreement, (b) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets or retained Causes of Action are not likely to yield sufficient additional proceeds to justify further pursuit, (c) all Distributions required to be made by the Liquidating Trustee under this Plan and the Liquidating Trust Agreement have been made; provided, however, in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed two (2) years, together with any prior extensions) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

A party in interest may bring a motion on proper notice to the Liquidating Trustee and its counsel for removal of the Liquidating Trustee for, among other reasons: (1) fraud, gross negligence, or willful misconduct in connection with the affairs of the Liquidating Trust, (2) for such physical or mental disability as substantially prevents the Liquidating Trustee from performing the duties of Liquidating Trustee in accordance with this Plan or the Liquidating Trust Agreement, or (3) for cause, which shall include a breach of fiduciary duty or an unresolved conflict of interest.

### Section 5.04   Treatment of Liquidating Trust for Federal Income Tax Purposes; No Successor-in-Interest

The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), with no objective to continue or engage in the conduct of a trade or business. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to the Liquidating Trust Agreement intend that the Liquidating Trustee take such action as it shall deem appropriate to have the Liquidating

Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Code Section 7704), including, if necessary, creating or converting it into a Delaware limited liability partnership or limited liability company.

For all United States federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee, and the beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (1) a transfer by each Debtor of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to the beneficiaries in full satisfaction of the beneficiaries' claims against the Debtor and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Distribution Reserve Account (as defined in the Liquidating Trust Agreement), followed by (2) the transfer by such beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for such beneficiaries interest in the Liquidating Trust Assets. Accordingly, the Liquidating Trust beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes

The Liquidating Trust shall file returns for the Liquidating Trust, except with respect to the Disputed Claims Reserve, as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and in accordance with this Section of the Plan. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated to each holder in accordance with their relative beneficial interests in the Liquidating Trust.

Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary, the Liquidating Trustee may timely elect to (i) treat any portion of the Liquidating Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections) and (ii) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties and the Liquidating Trustee shall report for United States federal, state, and local income tax purposes consistently with the foregoing.

As soon as possible after the Effective Date, the Liquidating Trust shall make a good faith valuation of assets of the Liquidating Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any Governmental Unit for taxing purposes.

The Liquidating Trust shall file all income tax returns with respect to any income attributable to the Liquidating Trust Assets and shall pay any federal, state and local income taxes attributable to the Liquidating Trust Assets, based on the items of income, deduction, credit or loss allocable thereto.

The Liquidating Trust may request an expedited determination of Taxes of the Debtor or of the Liquidating Trust, including the Distribution Reserve Account, under Bankruptcy Code

16

section 505(b) for all returns filed for, or on behalf of, the Debtor and the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

The Liquidating Trustee shall be responsible for filing all federal, state, local and foreign tax returns for the Debtor and the Liquidating Trust. The Liquidating Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trust shall be subject to any such withholding and reporting requirements.

## Section 5.05    Responsibilities of Liquidating Trustee

The responsibilities of the Liquidating Trustee, which shall be discharged in accordance with the terms of the Plan and the Liquidating Trust Agreement, shall include, but shall not be limited to, the following:

(a)    Administering, liquidating, and monetizing the Liquidating Trust Assets;

(b)    Objecting to and resolving Claims and Disputed Claims;

(c)    Investigating, pursuing, litigating, settling, or abandoning any Causes of Action which constitute Liquidating Trust Assets;

(d)    Making Distributions in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(e)    Preparing and filing post-Effective Date operating reports;

(f)    Filing appropriate tax returns in the exercise of its fiduciary obligations;

(g)    Retaining such professionals as are necessary and appropriate in furtherance of its fiduciary obligations; and

(h)    Taking such actions as are necessary and reasonable to carry out the purposes of the Liquidating Trust.

To the extent necessary or appropriate, the Liquidating Trustee shall be deemed to be a judicial substitute for Causes of Action assigned to the Liquidating Trust, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

## Section 5.06    Costs and Expenses of the Liquidating Trust

To the extent the Liquidating Trust Assets are insufficient to pay the expenses of the Liquidating Trust and the Liquidating Trustee, then such expenses shall be reimbursed from the first dollars out of any proceeds that come into the Liquidating Trust before any Distribution to the beneficiaries of the Liquidating Trust; provided, however, the Liquidating Trust expenses shall be subject to the procedures and review set forth in the Liquidating Trust Agreement.

17

**Section 5.07    Fiduciary Duties of the Liquidating Trustee**

Pursuant to the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of the beneficiaries of the Liquidating Trust.

**Section 5.08    Liability, Indemnification of the Liquidating Trust Protected Parties**

The Liquidating Trust Protected Parties shall not be liable for any act or omission of any other Liquidating Trust Protected Parties or the member, designee, agent, or representative of such Liquidating Trust Protected Parties, nor shall such Liquidating Trust Protected Parties be liable for any act or omission taken or not taken in their capacity as Liquidating Trust Parties other than for specific acts or omissions resulting from such Liquidating Trust Protected Parties' willful misconduct, gross negligence or fraud.  The Liquidating Trustee may, in connection with the performance of his, her, or its functions, and in his, her, or its sole and absolute discretion, consult with his, her, or its attorneys, accountants, financial advisors, and agents.  Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with his, her, or its attorneys, accountants, financial advisors, and agents, and his, her, or its determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Protected Parties, unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Protected Parties from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's fees, disbursements, and related expenses), which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties hereunder; provided, however, that such indemnification shall be limited to the Liquidating Trust Assets and provided further that no such indemnification will be made to such Liquidating Trust Protected Parties for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

**Section 5.09    Full and Final Satisfaction Against Liquidating Trust**

On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Liquidating Trust Agreement.  All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in exchange for all Claims or Equity Interests against the Liquidating Trust.

**ARTICLE VI:**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**Section 6.01    Corporate Action**

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent

taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Equity Interests, the Debtor, or any other Entity or Person or further Order of the Bankruptcy Court. All matters provided for in the Plan involving the corporate structure of the Debtor, and any corporate action required by the Debtor in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtor or the Estate.

The authorizations and approvals contemplated by this Plan shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

**Section 6.02   Dissolution and Boards of the Debtor and Officers**

As of the Effective Date: (i) the existing board of directors and/or board of managers of the Debtor shall be dissolved without any further action required on the part of the Debtor or the Debtor's officers, directors, general partners, limited partners, shareholders, and members and any all remaining officers, managers or directors of each Debtor shall be dismissed without any further action required on the part of any such Debtor, the general partners, limited partners, shareholders or members of such Debtor, or the officers and directors of such Debtor; and (ii) all actions or decisions that would otherwise be made by such directors and/or managers under otherwise applicable law may be taken and made by the Liquidating Trustee.  Notwithstanding anything contained in this section, all Claims and Causes of Action against any director or officer of the Debtor, whether current or former, are hereby preserved.

On the Effective Date, all Professionals shall be deemed to have completed their services unless they are expressly retained by the Liquidating Trustee, but they shall be able to file final applications for Professional Fee Claims through the Effective Date as provided for in this Plan.

**Section 6.03   Effectuating Documents; Further Transactions**

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments (including deeds, leases, assignments or other instruments of conveyance), applications for permit transfer or renewal or other regulatory authorizations, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any Court Order authorizing the sale or other transfer of the Debtor's assets, including, without limitation, the Sale Order, without the need for any further Bankruptcy Court Order, approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**Section 6.04   Preservation of Rights of Action**

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order (including, for the avoidance of doubt, any claims or Causes of Action released pursuant to Article XI hereof and the Sale Order), the Debtor reserves and, as of the Effective Date, assigns to the Liquidating Trust, any and all Causes of Action, including without limitation any actions specifically enumerated in the Disclosure Statement.  On and after the Effective Date, the

19

Liquidating Trustee may pursue such Causes of Action in accordance with the Liquidating Trust Agreement.

Subject in all respects to Article XI of this Plan, the Debtor shall not release any Avoidance Actions, and the Liquidating Trustee shall be authorized and empowered to enforce any such Avoidance Actions on and after the Effective Date in accordance with the terms of the Plan and the Liquidating Trust Agreement.

No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Liquidating Trustee will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date.

The Debtor reserves the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. Except as otherwise provided by the Liquidating Trust Agreement, prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court to the fullest extent permitted by section 1123 of the Bankruptcy Code and all other applicable law.

## Section 6.05   Closing of Debtor's Case

When all Assets contributed to the Liquidating Trust in accordance with Section 5.02 above and the Liquidating Trust Agreement have been liquidated and converted into Cash (other than those assets previously abandoned by the Debtor or abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Liquidating Trust Agreement and this Plan, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code, the Bankruptcy Rules and the terms of this Plan.

## Section 6.06   Operations of the Debtor Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to manage its estate as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

## Section 6.07   Dissolution of the Creditors' Committee

On the Effective Date the Creditors' Committee shall be deemed dissolved and subject to Section 11.03 of this Plan, its members shall be deemed released of their duties, responsibilities and obligations, provided, however, that the Creditors' Committee shall remain in existence with

respect to (a) any Professional Fee Claims; and (b) any appeals of the Confirmation Order or Professional Fee Claims.

## Section 6.08    Destruction of Books and Records

The Liquidating Trustee has the right to seek authority to destroy or abandon any books and records of the Debtor constituting Liquidating Trust Assets. The Liquidating Trustee, however, shall not destroy or abandon any such books and records without obtaining prior approval of the Bankruptcy Court.

## ARTICLE VII:
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## Section 7.01    Executory Contracts and Unexpired Leases

Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under section 365 of the Bankruptcy Code rejecting all Executory Contracts and Unexpired Leases to which the Debtor is a party on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Petition Date; (c) is part of the Acquired Assets, as defined in the Sale Order, or (d) is the subject of a pending motion to assume or reject on the Confirmation Date. The Confirmation Order shall not be deemed to reject any insurance policy in which the Debtor is a beneficiary. No order confirming this Plan or any Amendment thereto is intended to or shall constitute a modification of the terms of the Sale Order or any other order of the Bankruptcy Court authorizing the assumption or rejection of Executory Contracts or Unexpired Leases.

## Section 7.02    Claims Based on the Rejection of Executory Contracts and Unexpired Leases

The deadline for filing a Proof of Claim based upon the rejection of any Executory Contract or Unexpired Lease rejected under the Plan shall be 30 days after the Effective Date; provided, however, that nothing in this Section 7.02 shall extend any Bar Date applicable to an Executory Contract or Unexpired Lease that expired before Confirmation.

## ARTICLE VIII:
## PROVISIONS GOVERNING DISTRIBUTIONS

## Section 8.01    Calculation of Amounts to be Distributed

Each Holder of an Allowed Claim against the Debtor shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class from the Debtor or the Liquidating Trustee, on behalf of the Debtor or the Liquidating Trust, as applicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in this Article VIII. Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim

21

shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

## Section 8.02   Delivery of Distributions and Undeliverable or Unclaimed Distributions

(a)   *Record Date for Distribution*

On the Distribution Record Date, the Claims Register shall be closed and the Debtor or the Liquidating Trustee or any other party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

(b)   *Delivery of Distributions in General*

1.   Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall, in the Liquidating Trustee's reasonable discretion, be deemed to have been made by the Liquidating Trustee on the Effective Date, unless the Liquidating Trustee and the applicable Holder of such Claim agree otherwise.

2.   Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtor or the Liquidating Trustee, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim, other than with respect to Professional Fee Claims, until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

3.   Distributions

On and after the Effective Date, the Liquidating Trustee shall make the Distributions required to be made on account of Allowed Claims under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified in the Plan because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be held by the Liquidating Trustee in the Distribution Reserve Account and distributed on the next Distribution Date that occurs after such Claim is Allowed in accordance with this Plan and the Liquidating Trust Agreement. In accordance with the Plan, no interest shall accrue or be paid on the unpaid amount of any Distribution paid pursuant to the Plan.

(c)   *Minimum; De Minimis Distributions*

Notwithstanding any other provision of the Plan to the contrary (including the treatment of any Claims or Classes), (a) the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the

22

Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down, and (b) the Liquidating Trustee shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $2,000, in which case such Distributions shall be deferred to the next Distribution date, (ii) if the amount to be distributed to that Holder on the particular Distribution date is less than $100.00, unless such Distribution constitutes the final Distribution to such Holder, or (iii) the amount of the final Distribution to any such Holder is less than $100.00, in which case such Distribution shall revert to the Liquidating Trust for distribution to other Holders of Allowed Claims.

> (d)    *Undeliverable Distributions and Unclaimed Property*

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Debtor or the Liquidating Trustee, as applicable, has determined the then current address of such Holder, at which time such Distribution shall be made to such Holder without accrual of interest during that time; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 120 days from the date the initial Distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan and the Claim of any Holder to such property or interest in property shall be settled, compromised, and forever barred.

> (e)    *Charitable Contributions*

After the final Distributions have been made in accordance with the terms of the Plan and the Liquidating Trust Agreement, if the amount of remaining Cash is less than $3,000, the Liquidating Trustee may donate such amount to one or more charities or philanthropic endeavors as chosen by the Liquidating Trustee; provided that such philanthropic endeavors shall be non-profit.

> (f)    *Manner of Payment Pursuant to the Plan*

Cash payments under this Plan shall be in U.S. funds, and shall be made, at the option, and in the sole discretion, of the Debtor or the Liquidating Trustee, as applicable, by (i) checks drawn on or (ii) wire transfers from a domestic bank selected by the Debtor or the Liquidating Trustee, as applicable. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Debtor or the Liquidating Trustee, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks issued by the Liquidating Trustee shall be null and void if not cashed within 120 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly to the Liquidating Trustee.

**Section 8.03    Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Debtor, or the Liquidating Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtor and the Liquidating Trustee are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan and Liquidating Trust Agreement shall be subject to any such withholding and reporting requirements. Each Creditor is required to provide the Liquidating Trustee with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution. If a Holder of an Allowed Claim does not provide the Liquidating Trustee with an executed Form W-9 or similar form within 90 days of written request, said Creditor shall be deemed to have forfeited their Distribution and the Claim of such Creditor shall be forever barred.

**Section 8.04    Claims Paid or Payable to Third Parties**

*(a)    Claims Paid by Third Parties; Recourse to Collateral*

The Debtor or the Liquidating Trustee, as applicable, shall be authorized to reduce in whole or in part a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidating Trust, including on account of recourse to collateral held by third parties that secure such Claim. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment, in whole or in part, from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

*(b)    Claims Payable by Insurance, Third Parties; Recourse to Collateral*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies, surety agreements, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, surety agreement, other non-Debtor payment agreement, or collateral, as applicable. To the extent that one or more of the Debtor's insurers, sureties, or non-Debtor payors pays or satisfies in full or in part a Claim (if and

to the extent adjudicated by a court of competent jurisdiction), or such collateral or proceeds from such collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

(c)    *Applicability of Insurance Policies*

Notwithstanding anything to the contrary in the Plan or Confirmation Order, Confirmation and consummation of the Plan shall not limit or affect the rights of any third-party beneficiary of any of the Debtor's insurance policies with respect to such policies, and the rights of the Debtor under any such insurance policies shall vest in the Liquidating Trustee as of the Effective Date.

**ARTICLE IX:**
**PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND EQUITY INTERESTS**

**Section 9.01    Resolution of Disputed Claims**

(a)    *Allowance of Claims and Equity Interests*

Prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee, shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim or Equity Interest, except with respect to any Claim or Equity Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim or Equity Interest shall become an Allowed Claim or Equity Interest unless and until such Claim or Equity Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim or Equity Interest.

(b)    *Prosecution of Objections to Claims or Equity Interests*

Subject in all respects to the provisions hereof, other than with respect to Professional Fee Claims, prior to the Effective Date, the Debtor, and on or after the Effective Date, the Liquidating Trustee, shall have the authority to File objections to Claims or Equity Interests, and the exclusive authority to settle, compromise, withdraw, or litigate to judgment objections on behalf of the Debtor's Estate to any and all Claims or Equity Interests, regardless of whether such Claims or Equity Interests are in a Class or otherwise. For the avoidance of doubt the U.S. Trustee's right to object to Claims, including Professional Fee Claims and Claims asserted under section 503(b)(3) and (b)(4) of the Bankruptcy Code, is reserved. Any objections to Claims or Equity Interests shall be Filed on or before the Claims Objection Bar Date, as such date may be extended pursuant to the Plan.

Subject to the foregoing sentence, from and after the Effective Date, the Liquidating Trustee (a) may settle or compromise any Disputed Claim in accordance with the Liquidating Trust Agreement and (b) shall succeed to the Debtor's rights with respect to any objections Filed by the Debtor that remain pending as of the Effective Date. From and after the Effective Date, the

25

Liquidating Trustee shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

      *(c)*      *Claims Estimation*

On and after the Effective Date, the Liquidating Trustee, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Liquidating Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan to the contrary, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.

In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, and the Debtor or the Liquidating Trustee, as applicable, may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

      *(d)*      *Expungement or Adjustment to Claims Without Objection*

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtor or the Liquidating Trustee, and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtor or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**Section 9.02    Distribution Reserve Account**

Distributions of Liquidating Trust Assets with respect to Disputed Claims shall be deposited into the Distribution Reserve Account in accordance with the terms of this Plan and the

Liquidating Trust Agreement. The amount deposited shall be determined by the Liquidating Trustee. The Liquidating Trustee may invest any Cash that is withheld in the Distribution Reserve Account in accordance with the Liquidating Trust Agreement. Notwithstanding any such investment and the addition to Liquidating Trust Assets of any income earned in respect thereof, in the event such Claim ultimately becomes an Allowed Claim, nothing in this Plan or Liquidating Trust Agreement shall be deemed to entitle the holder of a Disputed Claim to postpetition or post-Effective Date interest on such Claim.

## Section 9.03   Distributions After Allowance

On the next Distribution Date after the date when the order or judgment of the Bankruptcy Court allowing all or part of a Disputed Claim becomes a Final Order, the Liquidating Trustee, or such other disbursing agent, will (1) distribute to the holder of such Claim any property in the Distribution Reserve Account that would have been distributed to such beneficiary on the Distribution Dates on which distributions previously were made to beneficiaries if the Claim in issue had been an Allowed Claim (in whole or in part, as applicable) on such earlier Distribution Dates; and (2) distribute any remaining property held in the Distribution Reserve Account on account of any resolved Disputed Claim in accordance with this Plan and the Liquidating Trust Agreement.

After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Distribution Reserve Account will be distributed in accordance with this Plan and the Trust Agreement.

## Section 9.04   Disallowance of Claims

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by, as applicable, the Debtor or the Liquidating Trustee (or the Notice and Claims Agent at, as applicable, the Debtor's or the Liquidating Trustee's direction), and any Claim that has been amended may be adjusted thereon by, as applicable, the Debtor or the Liquidating Trustee without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## Section 9.05   Amendments

After the Bar Date, as applicable, a Claim may not be filed or amended without the authorization of the Bankruptcy Court and any such new or amended Claim Filed shall be deemed Disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court; provided that a Claim may be amended by the Holder of such Claim without authority from the Bankruptcy Court solely to decrease, but not to increase, unless otherwise provided by the Bankruptcy Court, the amount, number or priority.

## Section 9.06   No Interest

Unless otherwise specifically provided for in the Plan, by applicable law, or agreed-to by, as applicable, the Debtor or the Liquidating Trustee, interest shall not accrue or be paid on any Claim, and no Holder of any Claim shall be entitled to interest accruing on and after the Petition

Date on account of any Claim.  Without limiting the foregoing, interest shall not accrue or be paid on any Claim after the Effective Date to the extent the final Distribution paid on account of such Claim occurs after the Effective Date.  Notwithstanding the foregoing, if Holders of Allowed General Unsecured Claims receive a distribution of 100%, they shall be paid interest from the Petition Date until the date their Allowed General Unsecured Claims are paid in full at the federal judgment interest rate that was in effect on the Petition Date.

**ARTICLE X:**
**RETENTION OF JURISDICTION**

**Section 10.01 Retention of Jurisdiction**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Chapter 11 Case and the Plan to the fullest extent permitted by law (provided, however, that notwithstanding the foregoing, with respect to all civil proceedings arising under the Bankruptcy Code or arising in or related to this Chapter 11 Case and the Plan, the Bankruptcy Court shall have original but not exclusive jurisdiction, in accordance with section 1334(b) of Title 28 of the United States Code), including, among other things, jurisdiction to:

    (a)    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim or Equity Interest not otherwise Allowed under the Plan (other than personal injury or wrongful death Claims, unless agreed by the Holder), including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Equity Interests;

    (b)    hear and determine all applications for compensation and reimbursement of Professional Fee Claims; provided, however, that the payment of the fees and expenses of the Professionals of the Liquidating Trust incurred from and after the Effective Date shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

    (c)    hear and determine all matters with respect to the assumption or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

    (d)    effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

    (e)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, this Chapter 11 Case, any Causes of Action or the Plan;

    (f)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments,

releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(g)    hear and determine any and all disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(h)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)    hear and determine any matters arising in connection with or relating to the Plan, the schedules to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the schedules to the Plan, the Disclosure Statement, or the Confirmation Order;

(l)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with this Chapter 11 Case;

(m)    except as otherwise limited herein, recover all Assets, wherever located;

(n)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(p)    enter a final decree closing this Chapter 11 Case.

**Section 10.02  Failure of the Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to this Chapter 11 Case, including the matters set forth in Section 10.01 of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter

29

## ARTICLE XI:
## SETTLEMENT, RELEASES, INJUNCTIONS AND EXCULPATIONS

**Section 11.01  Debtor Will Not Receive Discharge**

Notwithstanding anything to the contrary herein, the Debtor shall not receive a discharge under the Plan.

**Section 11.02  No Releases by Debtor**

**SUBJECT TO SECTION 11.03 AND 11.04 BELOW, NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, THE DEBTOR SHALL NOT RELEASE:**

**(A)   ANY AND ALL CAUSES OF ACTION AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, DERIVATIVE CLAIMS, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE, IN LAW, AT EQUITY, OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE; OR**

**(B)   ANY AND ALL AVOIDANCE ACTIONS AGAINST ANY PERSON.**

**PROVIDED THAT NOTHING HEREIN SHALL LIMIT THE RELEASES PROVIDED BY THE DEBTOR UNDER THE SALE ORDER.**

**Section 11.03  Exculpation and Limitation of Liability**

**Notwithstanding anything to the contrary herein, the Debtor, its Professionals retained in the Chapter 11 Case, its officers, directors, managers, or employees existing as of the Petition Date, the Creditors' Committee, individual members of the Creditors' Committee, and Professionals for the Creditors' Committee shall not have or incur any liability to any holder of a Claim or Equity Interest for any act, event, or omission in connection with, or arising out of, the Chapter 11 Case, formulating, negotiating, soliciting, preparing, disseminating, confirming, or implementing the Plan, the Sale Order and the transaction approved thereby, consummating the Plan, the Sale Order and the transaction approved thereby, or the administration of the Plan or the property to be distributed under the Plan, unless it shall be determined in a Final Order to have constituted willful misconduct or gross negligence; provided, however, that for avoidance of doubt, nothing herein shall provide any exculpation or release any holder of an Equity Interest or any other current or**

former officer, director, manager, or employee of the Debtor for conduct occurring prior to the Petition Date.

**Section 11.04  Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) ARE SUBJECT TO EXCULPATION PURSUANT TO SECTION 11.03 HEREOF (BUT ONLY TO THE EXTENT OF THE EXCULPATION PROVIDED IN SECTION 11.03); OR (3) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, EQUITY INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO EXCULPATED, INCLUDING THE LIQUIDATING TRUST AND THE LIQUIDATING TRUST ASSETS) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF (UNLESS PREVIOUSLY ASSERTED) OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR

31

**INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR SUBROGATION PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTOR, THE LIQUIDATING TRUST, OR ANY ENTITY SO EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, EQUITY INTERESTS, CAUSES OF ACTION, OR LIABILITIES SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED IN THE PLAN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED, FURTHER, THAT NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.**

**Section 11.05  Setoffs**

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtor, and on and after the Effective Date, the Liquidating Trustee, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Equity Interest, may set off against any Allowed Claim or Equity Interest on account of any Proof of Claim or other pleading Filed with respect thereto prior to the Confirmation Hearing and the Distributions to be made pursuant to the Plan on account of such Allowed Claim or Equity Interest (before any Distribution is made on account of such Allowed Claim or Equity Interest), any claims, rights, and Causes of Action of any nature that the Debtor's Estate may hold against the Holder of such Allowed Claim or Equity Interest, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), including any rights under section 502(d) of the Bankruptcy Code, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Equity Interest pursuant to the Plan shall constitute a waiver or release by the Debtor or the Liquidating Trustee, as applicable, of any such claims, rights, and Causes of Action that the Debtor's Estate may possess against such Holder, provided, further, that the Holder of a Claim or Equity Interest may contest such set off by the Debtor or the Liquidating Trustee, as applicable, in the Bankruptcy Court or any other court of competent jurisdiction. In no event shall any Holder of Claims or Equity Interests be entitled to set off any Claim or Equity Interest against any claim, right, or Cause of Action of the Debtor's Estate unless such Holder has timely Filed a Proof of Claim with the Bankruptcy Court preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtor's or the Liquidating Trustee's right to assert that any Holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

**Section 11.06  Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in this Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

**ARTICLE XII:**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

**Section 12.01  Conditions to Effective Date**

(a)         Conditions Precedent to Effective Date of the Plan.  The Plan shall not become effective unless and until the Effective Date occurs.  The Effective Date is subject to the following conditions precedent: (i) the Confirmation Order shall become a Final Order; (ii) all documents useful and necessary to effectuating the Plan are executed and delivered to the parties hereto and all conditions to the effectiveness of such documents have been met; and (iii) the Debtor has received all authorizations, consents, approvals, rulings, opinions, and documents that are necessary to implement the Plan.

(b)         Waiver of Conditions.  The conditions precedent to the Effective Date may be waived, in whole or in part, by the Debtor, with the consent of the Creditors' Committee, at any time, without notice, and without an order from the Bankruptcy Court or any other affirmative action other than proceeding to consummate the Plan.  The failure of the Debtor to exercise any of foregoing rights shall not be deemed a waiver of any other rights and each right shall be deemed an ongoing right that may be asserted at any time.

**Section 12.02  Notice of Occurrence of the Effective Date**

The Debtor or Liquidating Trustee shall file a notice of the occurrence of the Effective Date within five (5) Business Days thereafter; provided, however, that failure to timely File such notice shall not affect the occurrence of the Effective Date.

**Section 12.03  Consequences of Non-Occurrence of Effective Date**

If the Confirmation Order is vacated prior to the Effective Date, (a) the Plan shall be null and void in all respects; and (b) any settlement of Claims or Equity Interests provided for hereby shall be null and void without further order of the Bankruptcy Court; provided, however, that for avoidance of doubt, the Settlement Agreement and the Lender Settlement Order shall not be impacted.

**Section 12.04 Substantial Consummation**

Substantial consummation of the Plan shall be deemed to occur on the Effective Date.

### ARTICLE XIII:
### MISCELLANEOUS PROVISIONS

**Section 13.01 Liquidating Trustee Professionals**

The Liquidating Trustee may, without application to or approval by the Bankruptcy Court, retain professionals and pay reasonable professional fees and expenses in connection with services rendered to them after the Effective Date.

**Section 13.02 Modifications and Amendments**

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, subject to the limitations contained in the Plan, the Plan Proponents reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Proponents expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtor, one or more times, after Confirmation, but only until the Effective Date and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII hereof.

After the Effective Date, the Liquidating Trustee can modify the Plan only in accordance with section 1127 of the Bankruptcy Code and applicable law.

**Section 13.03 Continuing Exclusivity and Solicitation Period**

Subject to further order of the Bankruptcy Court, until the Effective Date, the Debtor and the Creditors' Committee shall, pursuant to section 1121 of the Bankruptcy Code, retain the exclusive right to amend the Plan and to solicit acceptances thereof.

**Section 13.04 Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The

Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 13.05  Successors and Assigns and Binding Effect**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Entity, including, but not limited to, the Liquidating Trustee and all other parties-in-interest in this Chapter 11 Case such as Holders of Claims and Equity Interests.

**Section 13.06  Revocation, Withdrawal or Non-Consummation**

The Plan Proponents reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of (x) any Claims against, or any Equity Interests in, the Debtor, or (y) any Avoidance Action or other Causes of Action by or against the Debtor, the Creditors' Committee or any Entity, (ii) prejudice in any manner the rights of the Debtor, the Creditors' Committee, or any Entity in any further proceedings involving the Debtor, or (iii) constitute an admission of any sort by the Debtor, the Creditors' Committee, or any other Entity; provided, however, that the Settlement Agreement and the Lender Settlement Order shall not be impacted.

**Section 13.07  Notices**

Any notice, request, or demand required or permitted to be made or provided under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:

Jeffrey D. Goetz, Esq.,
Krystal R. Mikkilineni, Esq.
Bradshaw Fowler Proctor & Fairgrave P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5880
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

mikkilineni.krystal@bradshawlaw.com

If to the Creditors' Committee:

Ronald E. Gold
A.J. Webb
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone:  (513) 651-6800
Facsimile:  (513) 651-6981
Email:     rgold@fbtlaw.com
               awebb@fbtlaw.com
-and-

Robert C. Gainer
CUTLER LAW FIRM, P.C.
1307 50th Street West
Des Moines, IA 50266
Tel: 515-223-6600
Fax: 515-223-6787
Email:  rgainer@cutlerfirm.com

## Section 13.08  Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## Section 13.09  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Iowa shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation of the Debtor shall govern corporate governance matters with respect to the Debtor; in each case without giving effect to the principles of conflicts of law thereof.

## Section 13.10  Exhibits

All exhibits are incorporated into and are a part of this Plan as if set forth in full herein. Holders of Claims or Equity Interests may also obtain a copy of any exhibit upon written request to the Debtor in accordance with Section 13.07 of the Plan.  To the extent any exhibit is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit portion of the Plan shall control.

**Section 13.11 Conflicts**

To the extent any provision of the Disclosure Statement or any instrument, document or agreement executed in connection with the Plan or any exhibits, schedules, appendices, supplements or amendments to the foregoing conflicts with or is in any way inconsistent with the terms of the Plan, the terms and provisions of the Plan shall govern and control. To the extent of any inconsistency between the Plan and the Confirmation Order, the terms of the Confirmation Order shall govern and control.

**Section 13.12 Exemption**

Under section 1145 of the Bankruptcy Code, the issuance of the beneficial interests in Liquidating Trust under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

**Section 13.13 Substitution of the Liquidating Trust for the Debtor**

On the Effective Date, the Liquidating Trust shall be deemed to be substituted as the party in lieu of the Debtor in all pending matters including but not limited to (i) motions, contested matters and adversary proceeding pending in the Bankruptcy Court, and (ii) all matters pending in any courts, tribunals, forums or administrative proceedings outside of the Bankruptcy Court without the need or requirement for the Liquidating Trustee to file motions or substitutions of parties and counsel.

Dated:  April 19, 2022                    **CYCLE FORCE GROUP, LLC, as Debtor and Debtor-in-Possession**


By: */s/ Nyle H. Nims*
Nyle H. Nims, Chief Executive Officer


**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CYCLE FORCE GROUP, LLC**

*/s/ Brian Mitteldorf*
By: Brian Mitteldorf, Chairperson

**EXHIBIT B**

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "Liquidating Trust Agreement") is being entered into as of _____, 2022, by and between Cycle Force Group, LLC (the "Debtor"), as debtor and debtor-in-possession in the chapter 11 case pending in the United States Bankruptcy Court for the Southern District of Iowa (the "Bankruptcy Court"), Case No. 21-00571, and Province, LLC ("Province"), solely in its capacity as trustee under this Liquidating Trust Agreement (the "Liquidating Trustee"). The Plan of Orderly Liquidation of Cycle Force Group, LLC, under Chapter 11 of the Bankruptcy Code (the "Plan")[1] was confirmed by the Bankruptcy Court's order, entered on the docket on _____, 2022 (Docket No. ____) (the "Confirmation Order") and provides for, among other things:

        (a)     The transfer (the "Transfer") of all right, title and interest of the Debtor in the Assets (the "Liquidating Trust Assets") to Creditors Trust (the "Liquidating Trust") on the Effective Date for distribution to the holders of Allowed Claims of the Debtor (the "Beneficiaries") pursuant to and in accordance with this Liquidating Trust Agreement, the Plan and the Confirmation Order;

        (b)     The treatment of the Transfer for federal income tax purposes as the transfer of the Liquidating Trust Assets by the Debtor to the Beneficiaries followed by the transfer of such assets by the Beneficiaries to the Liquidating Trust in exchange for their respective beneficial interests therein;

        (c)     The treatment for all purposes, including federal income tax purposes, of the Beneficiaries as the deemed owners of their respective Liquidating Trust Assets and as the grantors of the Liquidating Trust;

        (d)     The treatment of the Liquidating Trust as a grantor trust for federal income tax purposes;

        (e)     The valuation of the Liquidating Trust Assets by the Liquidating Trustee and the use of such valuations by the Liquidating Trustee and the Beneficiaries for all federal income tax purposes;

        (f)     The management of the Liquidating Trust Assets by the Liquidating Trustee; and

        (g)     The distribution of the Liquidating Trust Assets or the proceeds thereof to the Beneficiaries as set forth in the Plan, the Confirmation Order and this Liquidating Trust Agreement.

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order and in consideration of the mutual agreements of the parties contained herein and other good and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

Section 1.1        Purpose of the Liquidating Trust.  The Debtor and the Liquidating Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Liquidating Trust Agreement, hereby settle the Liquidating Trust on behalf of and for the sole benefit of the Beneficiaries and for the sole purpose of liquidating the Liquidating Trust Assets and distributing the Liquidating Trust Assets or proceeds thereof to the Beneficiaries pursuant to the Plan and in accordance with Treas. Reg. § 301.7701-4(d).   The Liquidating Trust has no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the sole purpose of the Liquidating Trust.  It shall not be the objective or purpose of this Liquidating Trust to, and the Liquidating Trustee shall have no authority to, conduct a trade or business except as reasonable and necessary to, and consistent with, the liquidation of the Liquidating Trust Assets.  In particular, the Liquidating Trust, through the Liquidating Trustee, will do the following: (a) accept and place all Liquidating Trust Assets into the Liquidating Trust; (b) litigate, settle and enforce all Causes of Action, claims and interests belonging to the Debtor, Debtor in Possession and/or the Estate in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, including without limitation, Avoidance Actions, (c) administer the estate and Assets, (d) object to and resolve all Disputed Claims, (e) make all distributions in accordance with the Plan to the extent such distributions are to be made from the Liquidating Trust Assets including the payment of United States Trustee fees accruing in the Chapter 11 Cases after the Effective Date until the termination of the Liquidating Trust, (f) take all actions and executing all agreements, instruments, and other documents necessary to implement the provisions of the Plan, (g) retain professionals and other agents, and (h) take such steps as are reasonable and necessary to accomplish the Liquidating Trust's purpose, all as provided in, and subject to the terms and provisions of, the Plan, the Confirmation Order and this Liquidating Trust Agreement.  The Liquidating Trust Assets shall be held for the exclusive and sole benefit of the Beneficiaries and shall only be used to fund distributions to such Beneficiaries in accordance with the Plan and to fund payment of costs, fees, and expenses incurred in connection with the administration of the Liquidating Trust or the Plan.

Section 1.2        Rights of Debtor.  The Debtor shall have no claim to or right or interest in, whether direct, residual, contingent or otherwise, in the Liquidating Trust Assets once such assets have been transferred to the Liquidating Trust.

Section 1.3        Name of the Liquidating Trust.  The Liquidating Trust established hereby shall be known as the "Cycle Force Creditors' Trust."  In connection with the exercise of its powers, the Liquidating Trustee may use the name or such variation thereof as it sees fit, and may transact the affairs of the Liquidating Trust in such name.

Section 1.4        Transfer of Assets to Create Liquidating Trust.  Effective as of the Effective Date, the Debtor hereby grants, releases, transfers, conveys and delivers to the Liquidating Trustee and its successors the Debtor's Assets, to be held in trust and to be applied

as specified in the Plan, the Confirmation Order, and this Liquidating Trust Agreement, the Liquidating Trust Assets. Through the transfer of the Estate's assets and except as otherwise provided herein or in the Plan, such assets are Liquidating Trust Assets and the Liquidating Trust has the sole and exclusive right, title and interest in and possession of the Liquidating Trust Assets.

Section 1.5    Acceptance by Liquidating Trustee. The Liquidating Trustee hereby accepts and confirms the following: (a) the appointment to serve as Liquidating Trustee; (b) the Transfer of the Liquidating Trust Assets, and all right, title and interest therein, to the Liquidating Trust; and (c) the obligations and duties imposed on it by this Liquidating Trust Agreement. The Liquidating Trustee agrees to receive, hold, administer and distribute the Liquidating Trust Assets and the income derived therefrom, and to reconcile, administer and satisfy Claims pursuant to the terms of the Plan, the Confirmation Order and this Liquidating Trust Agreement.

## ARTICLE II
## TERMINATION OF TRUST

Section 2.1    Maximum Term. The Liquidating Trust shall terminate its existence upon the occurrence of the complete liquidation, administration and distribution of its assets in accordance with the Plan and the full performance of all other duties and functions set forth in the Plan and this Liquidating Trust Agreement. Notwithstanding the foregoing, the Liquidating Trust shall terminate no later than the fifth anniversary of the Effective Date (the "Initial Liquidating Trust Term"); provided, however, that, if necessary to accomplish the liquidating purpose of the Liquidating Trust, the Liquidating Trustee may extend the term of the Liquidating Trust for up to an additional two years (the "Supplemental Liquidating Trust Term") by (a) filing a notice of its intent to extend the term of the Liquidating Trust with the Bankruptcy Court, (b) serving such notice on the United States Trustee and the Beneficiaries, (c) providing the United States Trustee and the Beneficiaries at least twenty-one days to object to the requested extension prior to the termination of the Initial Liquidating Trust Term, and (d) receiving approval for the Supplemental Liquidating Trust Term by an order of the Bankruptcy Court within six months of the beginning of the Supplemental Liquidating Trust Term. The Liquidating Trustee may, if the Initial Liquidating Trust Term has expired, seek entry of an order from the Bankruptcy Court providing for a reinstatement and implementation of the Supplemental Liquidating Trust Term.

Section 2.2    Winding Up and Discharge of the Liquidating Trustee. For purposes of winding up the affairs of the Liquidating Trust at its termination, the Liquidating Trustee shall continue to act as Liquidating Trustee until its duties have been fully discharged. After doing so, the Liquidating Trustee, its agents, professionals and employees, if any, shall have no further duties or obligations hereunder, except as required by this Liquidating Trust Agreement, the Plan, the Confirmation Order or applicable law concerning the termination of a trust.

Section 2.3    Unclaimed Distributions.    All unclaimed payments or distributions made to any Creditor under the Plan on behalf of the Debtor, including but not limited to, unnegotiated checks or drafts, shall revert, after four months, to the Liquidating Trustee to be redistributed pursuant to the Plan, and shall be forfeited as to the affected Creditors. Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a

Disallowed Claim.  At such time as the Liquidating Trustee has declared and made the final distribution to allowed beneficial interests in the Liquidating Trust, and when six months from that final distribution is made, any unclaimed funds shall be deemed forfeited by the creditor not claiming such funds.  Thereafter, the Liquidating Trustee shall be authorized to distribute any such remaining unclaimed funds to any not-for-profit tax-exempt institution of the Liquidating Trustee's choice, so long as it complies with 11 U.S.C. §347.

## ARTICLE III
## OBLIGATIONS OF THE LIQUIDATING TRUSTEE

Section 3.1     Establishment and Maintenance of Accounts and Reserves.  On the Effective Date, or as soon thereafter as practicable, the Liquidating Trustee shall establish accounts and reserves at an institution(s) approved by the United States Trustee, with notification to the United States Trustee of each account and each institution where such account is held.  In addition, as soon as practicable after the Effective Date, the Debtor shall close all of its operating accounts and transfer the proceeds to the Liquidating Trustee to fund distributions, expenses and reserves required by the Plan, the Liquidating Trust and/or by Court Order.  Changes in the amounts maintained in any account or reserve may be made at any time thereafter in the discretion of the Liquidating Trustee.

Section 3.2     Disputed Claims Reserve.

(a)     Prior to making each of the distributions under the Plan, the Liquidating Trustee shall create and fund an account or accounts, to the extent that sufficient assets are available, with an amount of cash equal to the distributions to which holders of Disputed Claims would be entitled under the Plan as of such date if such Disputed Claims were Allowed Claims (the "Disputed Claims Reserves"); provided, however, that the Liquidating Trustee may at any time file a motion(s) pursuant to section 502(c) of the Bankruptcy Code for an order(s) estimating and limiting the amount of cash which shall be deposited in any Disputed Claims Reserves in respect of any Disputed Claims, with notice and an opportunity to be heard to the affected holders of such Disputed Claims.

(b)     After a Final Order has been entered or other final resolution has been reached with respect to any given Disputed Claim for which cash was reserved in a Disputed Claims Reserve, the balance, if any, of cash remaining in such Disputed Claims Reserve on account of such Disputed Claim, after making any distribution to which the holder of such Claims may have become entitled by virtue of such Final Order or other final resolution, shall be transferred to any other account established by the Liquidating Trustee.

Section 3.3     Use of Assets.  All cash or other property held or collected by the Liquidating Trustee shall be used solely for the purposes contemplated by the Plan or this Liquidating Trust Agreement.

Section 3.4     Distributions.  The Liquidating Trustee will distribute at least annually to the Beneficiaries the net income of the Liquidating Trust plus all net proceeds from the liquidation of the Liquidating Trust Assets in excess of the amounts reasonably necessary to

maintain the value of the Liquidating Trust Assets or to meet claims or contingent liabilities (including Disputed Claims).

## ARTICLE IV
## POWERS AND DUTIES OF THE LIQUIDATING TRUSTEE

Section 4.1      Duties of Liquidating Trustee.   The Liquidating Trustee shall have such duties and responsibilities as are specified in the Plan, the Confirmation Order and this Liquidating Trust Agreement.

Section 4.2      Authority of Liquidating Trustee.   The Liquidating Trust and the Liquidating Trustee shall be vested with the property, rights, interests, and powers of the Debtor transferred to the Liquidating Trust, as specified in the Plan or the Confirmation Order.   The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust Assets, make timely distributions and not unduly prolong the duration of the Liquidating Trust.   The Liquidating Trustee's rights and authority include, without limitation, all of the following:

(a)      to hold legal title to any and all rights of the holders of Liquidation Trust Interests in or arising from the Liquidation Trust Assets, including, without limitation, collecting and receiving any and all money and other property belonging to the Liquidation Trust (including, without limitation, any Liquidation Trust Proceeds) and the right to vote any claim or interest relating to a Liquidation Trust Claim in a case under the Bankruptcy Code and receive any distribution thereon;

(b)      to perform the duties, exercise the powers, and assert the rights of a trustee under sections 704 and 1106 of the Bankruptcy Code, including, without limitation, (i) commencing, prosecuting or settling causes of action, (ii) enforcing contracts, (iii) asserting claims, defenses, offsets and privileges, (iv) interposing and prosecuting objections to Claims and (v) asserting rights which may run with the land, or otherwise affect the rights, obligations, or property of the Debtor;

(c)      receive and hold any and all the right, title and interest in and to any and all papers, documents, maps, records, files, or other communications, whether in paper of electronic format, in the Debtor's possession or in the possession of the Debtor's professionals or custodians;

(d)      receive, control, manage and dispose of all Liquidating Trust Assets for the benefit of the Beneficiaries who may receive distributions under the Plan;

(e)      act as custodian of the Liquidating Trust Assets and liquidate and reduce such assets to cash at such time as the Liquidating Trustee deems appropriate to accomplish the purpose of the Liquidating Trust, in accordance with the terms of the Plan and the Liquidating Trust Agreement;

(f)      calculate and pay all distributions required or permitted to be made from the Liquidating Trust Assets under the Plan, this Liquidating Trust Agreement and/or orders of the Bankruptcy Court;

(g)     subject to the provisions of the Plan and this Liquidating Trust Agreement, establish, fund, and/or administer the Disputed Claims Reserve and such other reserves and accounts as may be authorized by this Liquidating Trust Agreement, the Plan, or order of the Bankruptcy Court;

(h)     employ, supervise and compensate attorneys, accountants, financial advisors and other professionals or other persons retained to represent the interests of and serve on behalf of the Liquidating Trust (the "Trust Professionals") and waive any conflicts of interest as deemed necessary or appropriate in its discretion.  The Liquidating Trustee may commit the Liquidating Trust to and shall pay such Trust Professionals reasonable compensation for services rendered and expenses incurred.  A law firm or other professional shall not be disqualified from being employed by the Liquidating Trustee solely because of its current or prior retention as counsel or professional to the Debtor or the Committee in the Chapter 11 Cases;

(i)     preparing and filing the tax returns described in Section 7.4 in the manner described therein including, but not limited to, by preparing and filing any tax and information returns required with respect to the Trust, making any tax elections for the Trust, managing any tax audits or controversies relating to the Trust, paying taxes on behalf of the Trust, and causing the Trust to withhold from the amount distributable to any person to the extent required by law to do so;

(j)     object to, assert counterclaims to, or seek to recharacterize, reclassify or subordinate Claims or interest filed against any of the Debtor and compromise and settle, abandon or dismiss any and all Disputed Claims in accordance with the terms of the Plan;

(k)     seek estimation of contingent or unliquidated Claims under section 502(c) of the Bankruptcy Code;

(l)     seek determination of tax liability under section 505 of the Bankruptcy Code;

(m)     prosecute, settle, dismiss, abandon or otherwise dispose of any and all Causes of Action of the Debtor or its Estate constituting Assets, including, without limitation, all Causes of Action arising under sections 510, 542 through 551 and 553 of the Bankruptcy Code in accordance with section 1123(b)(3)(B) of the Bankruptcy Code;

(n)     pay all expenses and make other necessary payments relating to the Liquidating Trust Assets, including United States Trustee fees arising under 28 U.S.C. § 1930(a)(6) of Title 28 of the United States Code;

(o)     assert or waive any privilege or defense of the Debtor related to the Liquidating Trust Assets;

(p)     seek the examination of any entity under Bankruptcy Rule 2004;

(q)     perform any and all acts necessary or appropriate for the conservation and protection of the Liquidating Trust Assets;

(r)     exercise all powers and rights, and take all actions contemplated by or provided for under this Liquidating Trust Agreement;

(s)     take any and all other actions necessary or appropriate to implement or consummate the Plan and the provisions of this Liquidating Trust Agreement; and

(t)     preparing and filing required post-Effective Date operating reports/confirmation reports.

Section 4.3     Limitations on the Liquidating Trustee.  Notwithstanding anything in this Liquidating Trust Agreement to the contrary, the Liquidating Trustee, in its capacity as such, shall not do or undertake any of the following:  (i) guaranty any debt; (ii) loan Liquidating Trust Assets; (iii) purchase Liquidating Trust Assets from the Liquidating Trust; (iv) transfer Liquidating Trust Assets to another trust with respect to which the Liquidating Trustee serves as trustee; or (v) take, or fail to take, any action that would jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes; (vi) except as otherwise reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, invest Liquidating Trust Assets other than in short-term, liquid investments, such as bank demand and time deposits, short-term bank or saving institution certificates of deposit or Treasury Bills.

Section 4.4     Liquidating Trustee and Conflicts of Interest.  If the Liquidating Trustee determines, in the exercise of its reasonable discretion, that it has a material conflict of interest with respect to the settlement of a Claim, the resolution or prosecution of a Cause of Action, or any other matter, the Liquidating Trustee may select a designee to act on behalf of the Liquidating Trust solely with respect to such matter (the "Designee"), with such Designee's authority to act on behalf of the Liquidating Trust to terminate upon the matter's conclusion.  If the Designee files a pleading, motion or other filing with a court or tribunal on behalf of the Liquidating Trust, it shall do so in its own name as "Designee of the Cycle Force Creditors Trust."

Section 4.5     Register of Beneficiaries.  The Debtor shall provide the Liquidating Trustee with a register of the names, addresses and amounts of Allowed Claims of the Beneficiaries (the "Register") as of the close of business on the Effective Date.  Thereafter, the Register will be maintained by the Liquidating Trustee, and changes thereto will be made upon notification proper under this Liquidating Trust Agreement submitted to the Liquidating Trustee. The Liquidating Trustee shall not be liable for relying on the accuracy of the Register, provided that he has properly maintained the Register in accordance with this Liquidating Trust Agreement.

Section 4.6     Books and Records.  The Liquidating Trustee also shall maintain in respect of the Liquidating Trust and the Beneficiaries, books and records relating to the Liquidating Trust Assets and income realized therefrom and the payment of expenses of and claims against or assumed by the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.  Such books and records shall be maintained in a manner consistent with the Plan and this Liquidating Trust Agreement.  Except as expressly provided in this Liquidating Trust Agreement, the Plan or the

Confirmation Order, nothing in the Liquidating Trust Agreement is intended to require the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets.

Section 4.7    Final Accounting of Liquidating Trustee.  The Liquidating Trustee shall within ninety days after the termination of the Liquidating Trust or its resignation, removal, or liquidation (in which case, the obligation contained in this Section shall pass to the Successor Liquidating Trustee), render a final accounting containing at least the following information:

(a)    A description of the Liquidating Trust Assets and their disposition;

(b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidating Trust and the Liquidating Trust Assets during the Liquidating Trustee's term of service, including their source and nature;

(c)    Separate entries for all receipts of principal and income;

(d)    The ending balance of all Liquidating Trust Assets as of the date of the Liquidating Trustee's accounting, including the cash balance on hand and the name and location of the depository where it is kept;

(e)    All known liabilities owed by the Liquidating Trust; and

(f)    The then current Register of Allowed and Disputed Claims.

The final accounting shall be filed with the Bankruptcy Court.

**ARTICLE V**
**LIABILITY OF LIQUIDATING TRUSTEE**

Section 5.1    Appointment.  The Liquidating Trustee is Province serving solely in the capacity as Liquidating Trustee of the Cycle Force Creditors Trust and not otherwise. The principal individuals from Province in connection with the Cycle Force Creditors Trust shall be Peter Kravitz and Amanda (Demby) Swift.

Section 5.2    Resignation.  The Liquidating Trustee may resign by giving not less than sixty (60) days' prior written notice thereof to the United States Trustee; provided, however, that such resignation shall not become effective until the appointment and Bankruptcy Court approval of a successor Liquidating Trustee in accordance with Section 5.4 hereof.  If a Liquidating Trustee resigns from its position hereunder, subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation to the extent incurred, arising or relating to events occurring before such resignation, and any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties to the successor Liquidating Trustee.

Section 5.3       Removal.  At any time upon the request of a party in interest through a motion filed in the Bankruptcy Court, the Bankruptcy Court may remove the Liquidating Trustee, including any successor Liquidating Trustee or Designee, for cause.  For purposes of this Section 5.3, "cause" shall mean:  (a) an act of fraud, embezzlement, or theft in connection with the Liquidating Trustee's duties or in the course of its employment in such capacity, (b) the intentional wrongful damage to the Liquidating Trust Assets, (c) the intentional wrongful disclosure of confidential information of the Liquidating Trust resulting in material harm to the Liquidating Trust, or (d) gross negligence by the Liquidating Trustee in connection with the performance of its duties under this Liquidating Trust Agreement.  Unless the Bankruptcy Court orders immediate removal, the Liquidating Trustee shall continue to serve until a successor Liquidating Trustee is appointed, and such appointment becomes effective, in accordance with Section 5.4 hereof.  If the Liquidating Trustee is removed for cause, such Liquidating Trustee shall not be entitled to any accrued but unpaid fees, expenses or other compensation under this Liquidating Trust Agreement or otherwise.  If the Liquidating Trustee is unwilling or unable to serve for any other reason whatsoever other than for "cause," subject to a final accounting, such Liquidating Trustee shall be entitled to all accrued but unpaid fees, expenses, and other compensation, to the extent incurred, arising or relating to events occurring before its removal or resignation, and to any out-of-pocket expenses reasonably incurred in connection with the transfer of all powers and duties and all rights to any successor Liquidating Trustee.

Section 5.4       Appointment of Successor Liquidating Trustee.  In the event of a vacancy by reason of the closure or immediate removal of the Liquidating Trustee or prospective vacancy by reason of resignation or removal, the United States Trustee shall have the right to nominate the successor Liquidating Trustee, but the Bankruptcy Court shall be vested with final authority to appoint the successor Liquidating Trustee consistent with the best interests of the Beneficiaries of the Liquidating Trust.  Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and the retiring Liquidating Trustee, if any, an instrument accepting such appointment subject to the terms and provisions hereof.  The successor Liquidating Trustee, without any further act, shall become vested with all the rights, powers and duties of the Liquidating Trustee; provided, however, that no Liquidating Trustee shall be liable for the acts or omissions of any prior or later Liquidating Trustee.

Section 5.5       Continuity.  The resignation or removal of the Liquidating Trustee shall not terminate the Liquidating Trust or revoke any existing agency (other than any agency of such Liquidating Trustee as a Liquidating Trustee) created pursuant to the Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee, and the successor Liquidating Trustee agrees that the provisions of the Liquidating Trust Agreement shall be binding on and inure to the benefit of each successor Liquidating Trustee and all its heirs and legal and personal representatives, successors or assigns.  In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall (a) execute and deliver by the effective date of its resignation or removal such documents, instruments and other writings as may be reasonably required to effect the termination of such Liquidating Trustee's capacity under this Liquidating Trust Agreement and (b) assist and cooperate in effecting the assumption of such Liquidating Trustee's obligations and functions by the successor Liquidating Trustee.  If, for any reason, the Liquidating Trustee fails to execute the documents described in clause (a) of the preceding sentence, the Bankruptcy Court may enter such orders as are necessary to effect termination of such Liquidating Trustee's capacity under this Liquidating Trust Agreement.

Section 5.6      <u>Compensation</u>.  The Liquidating Trustee shall be compensated at a rate of 10% of any gross litigation recoveries, and the Liquidating Trustee shall provide financial advisory services (if any) at a blended rate of $300.00 an hour.  The Liquidating Trustee may request changes to this compensation structure by filing a notice with the Bankruptcy Court and providing an objection deadline of not less than 14 days to parties in interest.  Any Trust Professionals or agents retained or utilized by the Liquidating Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred.  After the Effective Date, the payment of the fees and expenses of the Liquidating Trustee and its agents, financial advisors, attorneys, consultants, independent contractors, representatives and other Trust Professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.  Any successor Liquidating Trustee shall receive such reasonable compensation and reimbursement of expenses in the same manner as the initial Liquidating Trustee.

Section 5.7      <u>Indemnification; Limitation of Liability etc</u>.

(a)      The Liquidating Trust shall indemnify and hold harmless each of (i) the Liquidating Trustee and (ii) the Trust Professionals, and its/their heirs, legal representatives and permitted assigns (collectively, the "<u>Indemnified Parties</u>"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust Agreement, the Estate or the implementation or administration of the Plan, except to the extent it is finally determined by a final and non-appealable order from a federal court with competent jurisdiction within the Southern District of Iowa that such Indemnified Party was grossly negligent or acted in bad faith or in a manner whereby such Indemnified Party knew or should have known to be not in, or opposed to, the best interests of the Beneficiaries, or, with respect to any criminal action or proceeding, had reasonable cause to believe its conduct was unlawful.  To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of the claims giving rise to the right of indemnification shall be paid from the Liquidating Trust Assets.

(b)      Each of the Indemnified Parties, whether or not acting upon the advice of counsel, shall incur no liability because of any error of law or fact, mistake of judgment or any matter or thing done or omitted under this Liquidating Trust Agreement except to the extent it is finally determined by a final and non-appealable order from a federal court with competent jurisdiction within the Southern District of Iowa that such Indemnified Party was grossly negligent or acted in bad faith or in a manner whereby such Indemnified Party knew or should have known to be not in, or opposed to, the best interests of the Beneficiaries, or, with respect to any criminal action or proceeding, such Indemnified Party had reasonable cause to believe its conduct was unlawful.

(c)      Any Person acting on behalf of Province in capacity as Liquidating Trustee or a Trust Professional shall not be liable for acts or defaults of any other person acting at any other time in any such capacity.  Each Indemnified Party shall be protected and free from liability in acting upon any notice, request, consent, certificate, declaration, guarantee, affidavit

or other paper or document or signature reasonably believed by it to be genuine and to have been signed by the proper party or parties or by the party or parties purporting to have signed the same.

(d)     No provision of this Liquidating Trust Agreement shall require any Indemnified Party to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if they shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to him.

(e)     Notwithstanding anything to the contrary in this Liquidating Trust Agreement, each of the Indemnified Parties shall be entitled to deduct and withhold from the Trust's assets and any amounts otherwise payable to any Beneficiary pursuant to this Liquidating Trust Agreement such amounts as may be owed by the Liquidating Trust or the Beneficiaries to the Indemnified Parties as expenses or other liabilities under Section 5.6 or this Section 5.7.

Section 5.8     <u>Insurance</u>.  The Liquidating Trustee shall be authorized to obtain all reasonably necessary insurance coverage for itself and the Trust Professionals, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of the Liquidating Trust, and (ii) the liabilities, duties and obligations of the Liquidating Trustee and the Trust Professionals (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the Liquidating Trustee, remain in effect for a reasonable period after the conclusion of the Liquidating Trustee's service, and the costs and expenses of such insurance coverage shall be an expense for which the Liquidating Trustee is entitled to reimbursement hereunder.

Section 5.9     <u>Reliance by Liquidating Trustee</u>.  The Liquidating Trustee may rely, and shall be fully protected in acting or refraining from acting, if it relies upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Liquidating Trustee reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, e-mails and telexes, to have been sent by the proper party or parties, and the Liquidating Trustee may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Liquidating Trustee may consult with counsel and other professionals with respect to matters in their area of expertise (and the reasonable fees and expenses of such counsel shall be an expense for which the Liquidating Trustee is entitled to reimbursement hereunder), and any advice of counsel reasonably relief upon shall be full and complete authorization and protection in respect of any action taken or not taken by the Liquidating Trustee.  The Liquidating Trustee shall be entitled to rely upon the advice of such professionals in acting or failing to act, and shall not be liable for any act taken or not taken in reliance thereon.  The Liquidating Trustee shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Liquidating Trust Agreement, the Plan, the Confirmation Order or any other document executed in connection therewith, and the Liquidating Trustee shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon.  The Liquidating Trustee may rely upon the Debtor's filed schedules and statements of financial affairs and all other information provided by the

Debtor or its representatives to the Liquidating Trustee concerning Claims filed against the Debtor, and their reconciliation and documents supporting such reconciliation.

Section 5.10 <u>Reliance by Persons Dealing with the Liquidating Trustee</u>. In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee to act on behalf of the Liquidating Trust and shall have no obligation to inquire into the existence of such authority.

## ARTICLE VI
## BENEFICIARIES

Section 6.1 <u>Beneficial Interest Only</u>. The ownership of a beneficial interest in the Liquidating Trust shall not entitle any Beneficiary under the Liquidating Trust to any title in or to the Liquidating Trust Assets or to any right to call for a partition or division of the Liquidating Trust Assets or to require an accounting, except as specifically provided by this Liquidating Trust Agreement.

Section 6.2 <u>Evidence of Beneficial Interest</u>. Ownership of a beneficial interest in the Liquidating Trust Assets shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

Section 6.3 <u>Registration of Beneficial Interest</u>. The Liquidating Trustee shall cause the Register to be kept at its office or at such other place or places as may be designated by the Liquidating Trustee from time to time. The Register shall reflect the ownership of the beneficial interests of the Beneficiaries.

Section 6.4 <u>Absolute Owners</u>. The Liquidating Trustee may deem and treat the Beneficiaries reflected as the owner of a beneficial interest on the Register as the absolute owner thereof for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever.

Section 6.5 <u>Standing of Beneficiary</u>. Except as expressly provided in the Liquidating Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Liquidating Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Liquidating Trustee) upon or with respect to the Liquidating Trust Assets.

## ARTICLE VII
## TAXES

Section 7.1 <u>Income Tax Treatment</u>. The Debtor, the Liquidating Trustee and the Beneficiaries shall treat the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation § 301.7701-4(d) and any comparable provision of state or local law. For income tax purposes, the Debtor, the Trustee and the Beneficiaries shall treat the transfer of the Liquidating Trust Assets by the Debtor to the respective Beneficiaries, followed by the transfer of such assets by the Beneficiaries to the Liquidating Trust in exchange for their beneficial interests therein. The Beneficiaries shall be treated for tax purposes as the grantors and deemed

owners of their respective shares of the Liquidating Trust Assets, and shall include in their taxable incomes their allocable share of each item of the Liquidating Trust's income, gain, deduction, loss and credit.   All items shall be allocated by the Liquidating Trustee to the Beneficiaries using any reasonable allocation method.

Section 7.2      <u>Valuation of Liquidating Trust Assets</u>.   As soon as reasonably possible after the Effective Date, the Liquidating Trustee shall determine the fair market value of each Liquidating Trust Asset other than Cash based on a good faith determination and the advice of any professional retained by the Liquidating Trustee for such purpose.   The Liquidating Trustee shall then, as soon as reasonably possible after such determination, notify each Beneficiary of the value of such holder's interest in the Liquidating Trust.   The Liquidating Trustee and the Beneficiaries shall use such values consistently for all federal income tax purposes.

Section 7.3      <u>Disputed Claims Reserve</u>.   The Liquidating Trustee may elect to treat the Disputed Claims Reserve as a discrete trust taxed as a "disputed ownership fund" described in Treasury Regulation § 1.468B-9, in which event no item of income, gain, deduction, loss or credit attributable to the Liquidating Trust Assets held in the Disputed Claims Reserve shall be taxed to a Beneficiary unless and until such Beneficiary receives a distribution from the Disputed Claims Reserve.

Section 7.4      <u>Tax Returns</u>.   The Liquidating Trustee shall timely file all tax returns required to be filed by the Liquidating Trust on the basis that the Liquidating Trust is a grantor trust pursuant to Treasury Regulation § 1.671-4(a).   If the Liquidating Trustee elects to treat the Disputed Claims Reserve as a disputed ownership fund, it shall timely file all tax returns required to be filed by a disputed ownership fund.   As soon as reasonably possible after the close of each calendar year, the Liquidating Trustee shall send each Beneficiary a statement setting forth such Beneficiary's share of the Liquidating Trust's income, gain, deduction, loss and credit for the year and shall instruct the holder to report all such items on his, her or its tax return for such year and pay any tax due with respect thereto.

Section 7.5      <u>Tax Withholding</u>.   The Liquidating Trustee shall withhold and pay over to the appropriate taxing authority any amount required to be withheld from any payment made pursuant to this Agreement or the Plan.   Any tax withheld shall be treated as distributed to the Beneficiary for purposes of this Agreement.   The Liquidating Trustee may require that each Beneficiary certify such Beneficiary's taxpayer identification number, and that payments to such Beneficiary are exempt from backup withholding.   The Liquidating Trustee may condition payment to a Beneficiary on prior receipt of such information.

**ARTICLE VIII**
**MISCELLANEOUS PROVISIONS**

Section 8.1      <u>Definitions</u>.   Unless the context otherwise requires, a capitalized term used but not defined herein shall have the meaning given to such term in the Plan.

Section 8.2    Descriptive Headings.   The headings contained in this Liquidating Trust Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Liquidating Trust Agreement.

Section 8.3    Amendment.   After the Effective Date, this Liquidating Trust Agreement may not be amended except by an instrument executed by the Liquidating Trustee with the approval of (a) the Holders of the Class 3 Claims, and (c) the Bankruptcy Court.

Section 8.4    Governing Law.  This Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of Iowa without regard to the rules of conflict of laws of the State of Iowa or any other jurisdiction.

Section 8.5    Counterparts; Effectiveness.  This Liquidating Trust Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement.  This Liquidating Trust Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.

Section 8.6    Severability; Validity.   If any provision of this Liquidating Trust Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of this Liquidating Trust Agreement, and the application of such provision to other persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Liquidating Trust Agreement are agreed to be severable.

Section 8.7    No Waiver by Liquidating Trustee.  No failure by the Liquidating Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

Section 8.8    Preservation of Privilege and Defenses.  In connection with the rights, claims, and Causes of Action that constitute Liquidating Trust Assets and any objections to Disputed Claims prosecuted or resolved by the Liquidating Trustee in accordance with the Plan (including, without limitation, all defenses, counterclaims, setoffs and recoupments belonging to the Debtor), any applicable privilege or immunity of the Debtor, including, without limitation, any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) shall vest in the Liquidating Trust.

Section 8.9    Notices.  Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) the expiration of five (5) Business Days after the day when mailed by registered or certified mail (postage prepaid, return receipt requested), addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

14

If the Liquidating Trustee, to:

Province, LLC, Liquidating Trustee of Cycle Force Creditors Trust
c/o Peter Kravitz and Amanda (Demby) Swift
2360 Corporate Circle, Suite 330
Henderson, Nevada 89074

With a copy to:

Frost Brown Todd LLC
Attn: Ron Gold and A.J. Webb
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 651-6800
rgold@fbtlaw.com
awebb@fbtlaw.com

Section 8.10    <u>Irrevocability</u>. The Liquidating Trust is irrevocable.

Section 8.11    <u>Relationship to Plan</u>.  The Liquidating Trustee shall have full power and authority to take any action consistent with the purposes and provisions of the Plan. However, in the event that the provisions of this Liquidating Trust Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

Section 8.12    <u>Retention of Jurisdiction</u>.  As provided in Article X of the Plan, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan, including, but not limited to, interpreting and implementing the provisions of this Liquidating Trust Agreement.

Section 8.13    <u>Successors or Assigns</u>. The terms of the Liquidating Trust Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and assigns.

*[Remainder of page intentionally left blank. Signature page follows.]*

15

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Liquidating Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized representatives all as of the date first above written.

CYCLE FORCE GROUP, LLC


By: _____
      Nyle H. Nims, President and CEO


and

PROVINCE, LLC, SOLELY IN ITS CAPACITY
AS LIQUIDATING TRUSTEE OF THE CYCLE
FORCE CREDITORS TRUST


By: _____
      Amanda (Demby) Swift, Principal